E. MARTIN ESTRADA
United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
LINDSEY GREER DOTSON (Cal. Bar No. 266973)
THOMAS F. RYBARCZYK (Cal. Bar No. 316124)
Assistant United States Attorneys
Public Corruption and Civil Rights Section
     1500 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-4443/8452
     Facsimile: (213) 894-0141
     E-mail:    lindsey.dotson@usdoj.gov
                thomas.rybarczyk@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 21-00485-DSF-1 |
|---|---|
| Plaintiff, | GOVERNMENT'S MOTION *IN LIMINE* NO. 2 TO EXCLUDE EVIDENCE OF DEFENDANT'S GOOD ACTS PURSUANT TO FEDERAL RULES OF EVIDENCE 403, 405, AND 405; DECLARATION OF ASSISTANT U.S. ATTORNEY LINDSEY GREER DOTSON |
| v. | |
| MARK RIDLEY-THOMAS, | |
| Defendant. | Hearing Date: February 13, 2023<br>Hearing Time: 8:30 a.m.<br>Location:    Courtroom of<br>             the Honorable<br>             Dale S. Fischer |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys Lindsey Greer Dotson and Thomas F. Rybarczyk, hereby files the Government's Motion In Limine No. 2 to Exclude Evidence of Defendant's Good Acts Pursuant to Federal Rules of Evidence 403, 404, and 405.

1    This motion in limine is based upon the attached memorandum of

2    points and authorities, the declaration of Assistant U.S. Attorney

3    Lindsey Greer Dotson and exhibits contained therein filed in support

4    of the government's instant motion, the files and records in this

5    case, and such further evidence and argument as the Court may permit.

6    Dated: January 13, 2023          Respectfully submitted,

7                                     E. MARTIN ESTRADA
                                      United States Attorney
8
                                      SCOTT M. GARRINGER
9                                     Assistant United States Attorney
                                      Chief, Criminal Division
10

11                                       /s/ Lindsey Greer Dotson
                                      LINDSEY GREER DOTSON
12                                    THOMAS F. RYBARCZYK
                                      Assistant United States Attorneys
13
                                      Attorneys for Plaintiff
14                                    UNITED STATES OF AMERICA

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**TABLE OF CONTENTS**

DESCRIPTION                                                                    PAGE

I.    INTRODUCTION................................................................1

II.   STATEMENT OF FACTS..........................................................2

III.  ARGUMENT....................................................................4

      A.    Defendant's "Good Acts" Are Inadmissible Character
            Evidence..............................................................4

      B.    Defendant May Only Offer Evidence of a Pertinent
            Character Trait Through Reputation or Opinion
            Testimony, Not Specific Instances of Conduct..............6

      C.    Defendant's "Good Deeds" Evidence Is Also Irrelevant
            and Inadmissible If Offered to Prove Intent or Lack
            Thereof...............................................................8

      D.    Rule 403 Presents a Further Bar to Defendant's "Good
            Acts" Evidence Because Its Probative Value (If Any)
            Would Be Substantially Outweighed by the Danger of
            Unfair Prejudice, Delay, and the Risk of Misleading
            and Confusing the Jury.................................................11

IV.   CONCLUSION..................................................................12

# TABLE OF AUTHORITIES

DESCRIPTION                                                              PAGE

***Cases***

Arizona v. Elmer,
    21 F.3d 331 (9th Cir. 1994)...................................5

United States v. Bailleaux,
    685 F.2d 1105 (9th Cir. 1982)..............................11

United States v. Barry,
    814 F.2d 1400 (9th Cir. 1987)...............................6

United States v. Burke,
    781 F.2d 1234 (7th Cir. 1985)...............................8

United States v. Chambers,
    800 F. App'x 43 (2d Cir. 2020).........................8, 9, 10

United States v. Charley,
    1 F.4th 637 (9th Cir. 2021).................................7

United States v. Dawkins,
    999 F.3d 767 (2d Cir. 2021)..............................8, 9

United States v. Diaz,
    961 F.2d 1417 (9th Cir. 1992)...............................5

United States v. Dimora,
    750 F.3d 619 (6th Cir. 2014).............................8, 9

United States v. Fattah,
    914 F.3d 112 (3d Cir. 2019).................................8

United States v. Geston,
    299 F.3d 1130 (9th Cir. 2002)...............................5

United States v. Giese,
    597 F.2d 1170 (9th Cir. 1979))..............................5

United States v. Gillespie,
    852 F.2d 475 (9th Cir. 1988)................................5

United States v. Hedgecorth,
    873 F.2d 1307 (9th Cir. 1989)...............................5

United States v. Keiser,
    57 F.3d 847 (9th Cir. 1995)..............................5, 7

United States v. Marrero,
    904 F.2d 251 (5th Cir. 1990)................................8

ii

**TABLE OF AUTHORITIES (CONTINUED)**

DESCRIPTION                                                          PAGE

United States v. O'Connor,
        580 F.2d 38 (2d Cir. 1978).......................................8

United States v. Scarpa,
        897 F.2d 63 (2d Cir. 1990)......................................10

United States v. Troutman,
        814 F.2d 1428 (10th Cir. 1987)...................................8

United States v. Walker,
        191 F.3d 326 (2d Cir. 1999).....................................10

United States v. Weber,
        No. CR 21-28-M-DLC, 2022 WL 2463039 (D. Mont. July 6, 2022)....5

*Rules*

Federal Rule of Evidence 403.................................*passim*

Federal Rule of Evidence 404.................................*passim*

Federal Rule of Evidence 405.................................*passim*

*Other Authorities*

1 McCormick on Evid. § 187 (8th ed.)................................7

Mueller & Kirkpatrick, 2 Federal Evidence § 4.44 (4th ed. 2013).....7

Wright & Miller, Federal Practice and Procedure,
        22B Fed. Prac. & Proc. Evid. § 5267 (2d. ed. 2018).............7

1

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2

**I.    INTRODUCTION**

3      Defendant MARK RIDLEY-THOMAS's ("defendant") 406 trial exhibits

4  make clear that he intends to offer evidence (both exhibits and

5  testimony) about his body of work as a public official, alleged

6  noncorrupt votes and official conduct, and purported good works in

7  the community for years prior to the conduct in this case.  (<u>See,

8  e.g.</u>, Declaration of Lindsey Greer Dotson ("Dotson Decl."), Def. Exs.

9  1000, 1009, 1012, 1017, 1019, 1026, 1046.)  For instance, defendant's

10 very first exhibit is a 37-page promotional pamphlet filled with

11 self-serving quotes as well as summaries of his resume and community

12 service related to subjects like public safety, budget reform, and

13 reopening the Martin Luther King, Jr. Hospital, none of which have

14 anything to do with this case.  (Dotson Decl., Def. Ex. 1001.)

15 Separate and apart from anticipated hearsay and other objections as

16 to particular exhibits, this general category of evidence is

17 inadmissible for four independent reasons.

18     <u>First</u>, it is improper character evidence under Federal Rule of

19 Evidence 404(a).  <u>Second</u>, even if some subset constitutes permissible

20 character evidence, Federal Rule of Evidence 405 limits the manner

21 and method of how defendant may offer such evidence.  Rather than

22 offer specific instances of his good deeds, as he intends to do, he

23 can only elicit reputation or opinion evidence as to a pertinent

24 trait of character.  <u>Third</u>, assuming defendant attempts to offer

25 specific instances of his noncorrupt behavior for something other

26 than his character (for example, intent or lack thereof), courts in

27 public corruption cases have consistently excluded such evidence,

28 finding that it fails to meet the other acts exception in Federal

Rule of Evidence 404(b).  Finally, even if admissible, any modicum of probative value would be substantially outweighed by the danger of unfair prejudice and confusion, among other concerns.  Efforts to cast defendant as a good man and devoted public servant as evidenced by years of so-called good deeds in the community is clearly intended to evoke an emotional response in the jury separate and apart from the determination of his guilt or innocence.  Federal Rule of Evidence 403 guards against such jury nullification tactics.

## II.  STATEMENT OF FACTS[1]

In 2017, defendant's son, Sebastian Ridley-Thomas, was a Member of the California State Assembly and, unbeknownst to the public, the subject of a sexual harassment investigation.  Defendant was working behind the scenes to help his son navigate the unfolding crisis in the midst of the #MeToo movement.  To skirt scandal and prevent the sexual harassment allegations from surfacing, Sebastian Ridley-Thomas decided to resign from public office, citing "health concerns."  But with his sudden and premature exit from public life, he needed a career and other landing spots to publicly justify his abrupt resignation and tackle a mounting personal debt.  Defendant was maneuvering for ways to provide his son with those landing spots.

At the same time, co-defendant MARILYN LOUISE FLYNN ("co-defendant FLYNN") had been the Dean of Dworak-Peck School of Social Work ("Social Work School") at the University of Southern California ("USC") for two decades.  Under her leadership, the Social Work School was facing a multimillion-dollar budget deficit.  To salvage

---

[1] For a more fulsome recitation of the facts, please see the Government's Supplemental Brief in Support of the Government's Opposition to Defendant MARK RIDLEY-THOMAS'S Motion to Sever.  (Dkt. 91.)

2

her deanship, the substantial compensation she received on account of her position as Dean, and her reputation within the field of social work, co-defendant FLYNN needed lucrative County contracts for the Social Work School.

Both uniquely positioned to help the other, defendant and co-defendant FLYNN soon came to each other's mutual aid.  In exchange for help securing County contracts and amendments to existing contracts, defendant solicited and demanded from co-defendant FLYNN and USC a variety of benefits primarily intended to help his son. Defendant FLYNN readily obliged, gladly offering any perk and benefit at her disposal to sway defendant in the performance of his official duties.  In exchange for County contracts and amendments to existing contracts, defendant solicited and demanded the following: (1) admission to USC for Sebastian Ridley-Thomas to obtain a master's degree; (2) a full tuition scholarship for Sebastian Ridley-Thomas to attend USC; (3) a paid professorship for Sebastian Ridley-Thomas to teach at USC while he was a student; and (4) the secret funneling of $100,000 from defendant's campaign committee account through USC to a nonprofit Sebastian Ridley-Thomas was spearheading called the Policy, Research & Practice Initiative ("PRPI").

With respect to the $100,000 payment, defendant wanted to donate campaign funds to his son's new nonprofit (PRPI) but needed to do so covertly to ensure the donation's success after a prior, failed attempt (see Indictment, ¶¶ 4-10).  He enlisted co-defendant FLYNN's help funneling the payment through USC.  In May 2018, he directed a $100,000 "donation" from his campaign account to the Social Work School supposedly for the school's good work in the community.  But unbeknownst to USC, defendant already had arranged with co-defendant

FLYNN for USC to make a simultaneous $100,000 donation to PRPI's fiscal sponsor (United Ways of California) for PRPI's benefit.[2]  By funneling the $100,000 payment through USC, defendant and co-defendant FLYNN attempted to disguise the true nature of the payment to make it appear as though USC, not defendant, was the generous benefactor supporting Sebastian Ridley-Thomas and PRPI.  To execute their plan, both concealed material facts and misled USC and United Ways of California to expeditiously funnel the $100,000 through USC to PRPI.

Ultimately, co-defendant FLYNN delivered on each of the requested benefits for defendant's son.  Defendant delivered too. Upon his son receiving the benefit (or at least the promise of it), defendant took official action, including voting on at least three Board of Supervisors agenda items and motions and exerting influence on other public officials.

## III. ARGUMENT

### A. Defendant's "Good Acts" Are Inadmissible Character Evidence

Federal Rule of Evidence 404(a)(1) prohibits the use of a "person's character or character trait" to "prove that on a particular occasion the person acted in accordance with the character or trait."  There is, however, a limited to exception to this blanket prohibition where a defendant's trait of character is pertinent to the charges in a criminal case.  Federal Rule of Evidence 404(a)(2)(A) states that a criminal defendant "may offer evidence of

---

[2] A fiscal sponsor provides support to smaller nonprofit initiatives, like PRPI, and allows the initiative to operate under the sponsor's tax-exempt, 501(c)(3) status.  The fiscal sponsor does not provide funding, however.  In order to operate and pay salaries, the initiative must perform its own fundraising.

the defendant's pertinent trait."  But if such evidence is admitted, "the prosecutor may offer evidence to rebut it."  Fed. R. Evid. 404(a)(2)(A).

Here, the type of evidence that defendant appears likely to offer at trial does not pertain to a trait of character, let alone a pertinent one.  He is trying to signal to the jury that he is a good man who cares about his community.  But that is not a pertinent character trait.  "The Ninth Circuit has previously recognized that honesty, truthfulness, law-abidingness, peaceableness, and being 'a violent and angry person' are 'character traits' within the meaning of Rule 404(a)."  United States v. Weber, No. CR 21-28-M-DLC, 2022 WL 2463039, at *2 (D. Mont. July 6, 2022) (citing United States v. Geston, 299 F.3d 1130, 1137–38 (9th Cir. 2002); United States v. Keiser, 57 F.3d 847, 853 (9th Cir. 1995); Arizona v. Elmer, 21 F.3d 331, 334–35 (9th Cir. 1994); United States v. Diaz, 961 F.2d 1417 (9th Cir. 1992); United States v. Hedgecorth, 873 F.2d 1307, 1313 (9th Cir. 1989); United States v. Gillespie, 852 F.2d 475, 479 (9th Cir. 1988); United States v. Giese, 597 F.2d 1170, 1190 (9th Cir. 1979)).  Being a good person, caring about one's community, or acting in noncorrupt ways are not pertinent traits of character within the meaning of Rule 404(a).

From a review of his trial exhibits, defendant clearly plans to go beyond the permissible bounds of his general law-abidingness and offer evidence of his supposed noncorrupt behavior and years of good deeds for his constituents, essentially offering his resume at trial.  Indeed, as discussed above, defendant even proposes to offer a campaign brochure that is for all practical purposes a glossy political resume.  That is a bridge too far.  In United States v.

1     <u>Diaz</u>, the Ninth Circuit held that while a defendant in a narcotics

2     case may offer evidence of his general propensity or lack thereof to

3     commit crimes, he may not venture into the more granular inquiry of

4     propensity to "engage in large scale drug dealing."  961 F.2d 1417,

5     1419-20 (9th Cir. 1992).  Propensity to engage in a specific type of

6     crime is not a character trait.  <u>Id.</u>; <u>Weber</u>, 2022 WL 2463039 at *2

7     ("But the Ninth Circuit has resisted recognizing narrower character

8     traits directly involving the conduct for which a defendant is

9     charged.  The parties correctly identify <u>Diaz</u> as the seminal case on

10     this issue.").  While defendant can offer reputation or opinion

11     testimony as to traits like his honesty or general law-abidingness,

12     as detailed herein, he may not signal to the jury that he is

13     essentially a good man who cares about his community and has acted in

14     noncorrupt ways in the past.  That is not evidence of a pertinent

15     trait of character and violates the seminal principle established in

16     <u>Diaz</u>.

17         **B.**    **Defendant May Only Offer Evidence of a Pertinent Character**

18                 **Trait Through Reputation or Opinion Testimony, Not Specific**

19                 **Instances of Conduct**

20     More importantly, even if defendant's anticipated evidence

21     pertained to a pertinent trait of character, his planned method of

22     offering that evidence plainly violates Rule 405.  Where a trait of

23     character is admissible, Rule 405(a) limits the manner and method of

24     proving that trait.  On direct, only "testimony about the person's

25     reputation or by testimony in the form of an opinion" is permissible.

26     Fed. R. Evid. 405(a); <u>United States v. Barry</u>, 814 F.2d 1400, 1402-03

27     (9th Cir. 1987).  Specific acts evidence is generally prohibited.

28     <u>Id.</u>

1    The only limited exception is where a defendant's trait of

2    character is an "essential elemental of a charge, claim, or defense."

3    Fed. R. Evid. 405(b).  The Advisory Committee Notes to Rule 405 make

4    clear why the limitation on specific acts evidence is narrow: such

5    evidence "possesses the greatest capacity to arouse prejudice, to

6    confuse, to surprise, and to consume time," and "[c]onsequently the

7    rule confines the use of evidence of this kind to cases in which

8    character is, in the strict sense, in issue and hence deserving of a

9    searching inquiry."

10    Here, defendant's trait of character is not an "essential

11    element" of any charge, claim, or defense.  In fact, rarely will a

12    defendant's trait of character ever be an "essential element."  See 1

13    McCormick on Evid. § 187 (8th ed.) (collecting cases); Mueller &

14    Kirkpatrick, 2 Federal Evidence § 4.44 (4th ed. 2013) ("Almost never

15    is character an 'element' of a charge or defense in criminal cases.")

16    (emphasis in original); Wright & Miller, Federal Practice and

17    Procedure, 22B Fed. Prac. & Proc. Evid. § 5267 (2d. ed. 2018).  "The

18    relevant question should be: would proof, or failure of proof, of the

19    character trait by itself actually satisfy an element of the charge,

20    claim, or defense?  If not, then character is not essential and

21    evidence should be limited to opinion or reputation."  Keiser, 57

22    F.3d at 856; United States v. Charley, 1 F.4th 637, 646 (9th Cir.

23    2021) (affirming the Keiser test for whether a trait of character

24    constitutes an "essential element").  Here, no trait of character is

25    an essential element of any charge, claim, or defense because proof,

26    or failure of proof, would not by itself satisfy any element.

27    Accordingly, any evidence of a pertinent character trait must be

28

1   limited to reputation or opinion testimony on direct and not offered
2   by way of a laundry list of specific instances of conduct.

3   **C.   Defendant's "Good Deeds" Evidence Is Also Irrelevant and**
4   **Inadmissible If Offered to Prove Intent or Lack Thereof**

5   Defendant may claim that he does not plan to offer his past good
6   deeds and history of serving the community as evidence of a character
7   trait but, instead, as evidence of his intent under Federal Rule of
8   Evidence 404(b).  That too is prohibited.  Courts have consistently
9   denied defendants' attempts to offer evidence of their own good deeds
10  or noncorrupt acts in public corruption and white collar cases.  See,
11  e.g., United States v. Dimora, 750 F.3d 619, 630 (6th Cir. 2014);
12  United States v. Dawkins, 999 F.3d 767, 792-93 (2d Cir. 2021); United
13  States v. Chambers, 800 F. App'x 43, 46 (2d Cir. 2020); United States
14  v. Fattah, 914 F.3d 112, 175-76 (3d Cir. 2019); United States v.
15  Marrero, 904 F.2d 251, 259-60 (5th Cir. 1990); United States v.
16  Troutman, 814 F.2d 1428, 1454 (10th Cir. 1987); United States v.
17  Burke, 781 F.2d 1234, 1243 (7th Cir. 1985); United States v.
18  O'Connor, 580 F.2d 38, 43 (2d Cir. 1978).

19  For instance, in United States v. Dimora, a public official "had
20  hoped to present evidence of other 'good acts' -- that on several
21  occasions he helped constituents 'without asking for ... or receiving
22  anything of value.'"  750 F.3d at 630.  In affirming the district
23  court's exclusion of such evidence, the Sixth Circuit explained:
24  "Rule 404(b) precludes the use of other-acts evidence to 'prove a
25  person's character,' but it allows such evidence for other purposes,
26  such as proving intent.  Before admitting other-acts evidence for
27  such a non-character purpose, however, the district court must decide
28  whether the evidence is probative of that limited purpose."  Id.  The

Sixth Circuit said defendant's "evidence does not hit the target."
Id. "All it would have shown is that, in situations unrelated to the
charges, Dimora did favors for people who did not pay him bribes.
For the same reason that prior 'bad acts' may not be used to show a
predisposition to commit crimes, prior 'good acts' generally may not
be used to show a predisposition not to commit crimes."  Id.

Similarly, in United States v. Dawkins, the Second Circuit
affirmed a district court's exclusion of evidence that a defendant
had not bribed other public officials in similar situations,
rejecting defendant's claim that the good acts showed his lack of
specific intent to commit the charged offenses.  999 F.3d at 792.  A
defendant may not attempt to establish his innocence "through proof
of the absence of criminal acts on specific occasions."  Id.
(internal quotations and citation omitted).  "No less than evidence
of a defendant's prior 'bad acts' used to show that he committed the
crime charged, such 'good acts' evidence is only relevant if we
assume that a defendant acted in conformity with those prior good
acts -- i.e., if we make the exact propensity inference Rule
404(b)(1) is designed to prohibit."  Id.

As the Second Circuit too made clear in United States v.
Chambers, a defendant cannot offer specific instances of noncorrupt
behavior under the guise that it undermines criminal intent.  800 F.
App'x at 46.  In Chambers, defendant, a former attorney, was
convicted of the same charges at issue in this case -- conspiracy,
bribery, and honest services fraud -- for providing benefits to a
public official to secure preferential treatment in his clients'
cases.  Id. at 45.  The trial court excluded evidence that, during a
meeting with an undercover agent, defendant never offered a bribe or

otherwise engaged in any illegal behavior.  Id.  In affirming the trial court's exclusion of this evidence, the Second Circuit said, "This Court has long recognized that '[a] defendant may not seek to establish his innocence...through proof of the absence of criminal acts on specific occasions.'"  Id. at 46 (citing United States v. Scarpa, 897 F.2d 63, 70 (2d Cir. 1990)).  "The reasoning behind this rule is straightforward: A single occurrence of lawful conduct is 'simply irrelevant' to other occurrences of unlawful conduct."  Id. (citing United States v. Walker, 191 F.3d 326, 336 (2d Cir. 1999)). To that point, the Second Circuit expressly rejected defendant's argument that evidence of his noncorrupt behavior was relevant to his intent.  "[Defendant's] argument that his running of a legitimate law practice makes it less likely that he had corrupt intent to bribe [the public official] is precisely the type of propensity inference that Rule 404(b)(1) is intended to prohibit."  Id.  The same is true here.  The fact that defendant may have voted in noncorrupt ways previously or had even honest dealings with co-defendant FLYNN in the past, notably before his son's troubles emerged and years prior to his conduct in this case, cannot be offered to establish his lack of criminal intent to commit the 19 charged offenses here.

For these reasons, defendant cannot offer evidence of his own good acts, noncorrupt behavior, or even prior votes on matters pertaining to USC that he claims were not secured by bribery or fraud.  Rule 404(b) does not give leeway to defendant to skirt the protections of Rule 404 by inundating the jury with specific instances of good behavior under the guise of offering evidence of intent or lack thereof.

**D. Rule 403 Presents a Further Bar to Defendant's "Good Acts" Evidence Because Its Probative Value (If Any) Would Be Substantially Outweighed by the Danger of Unfair Prejudice, Delay, and the Risk of Misleading and Confusing the Jury**

Finally, even if the Court finds some probative value to defendant's evidence, the Court should still exclude it under Federal Rule of Evidence 403. Under Rule 403, courts may exclude evidence, even if it is otherwise admissible, where its probative value is "substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Evidence is unfairly prejudicial if it "provokes an emotional response in the jury" or otherwise can affect the jury's attitude toward the defendant separate and apart from "its judgment as to his guilt or innocence of the crime charged." United States v. Bailleaux, 685 F.2d 1105, 1111 (9th Cir. 1982), overruled on other grounds, Huddleston v. United States, 485 U.S. 681 (1988).

Here, although the government does not have full visibility into defendant's trial strategy, his trial exhibits make one plan of attack perfectly clear: he intends to portray himself as a dutiful public servant who, for years prior to the conduct at issue, acted nobly and ethically for the good of the community. There is no question that this kind of evidence is intended to pull at the jury's heartstrings with suggestions that he is an honorable man who does not have it in him to commit the charges crimes. Such evidence is why the Federal Rules empowered this Court with Rule 403. If admitted, there is no question that a parade of the defendant's good

deeds will significantly and substantially result in unfair prejudice, confusion as to the issues, misleading the jury, and undue delay.  For these reasons, even if probative in some way, this evidence must be excluded under Rule 403.

## IV.   CONCLUSION

For the foregoing reasons, the government respectfully requests that this Court exclude evidence of defendant's body of work as a public official, alleged noncorrupt votes and official conduct, and purported good works in the community for years prior to the conduct in this case under Rules 403, 404, and 405.[3]

---

[3] Although this evidence should be excluded in its entirety, should the Court admit evidence of defendant's good acts, the government intends to offer evidence to rebut it as permitted by Rule 404(a)(2)(A) and any other applicable provisions of the Federal Rules of Evidence.  Moreover, should defendant open the door to the defendant's character through reputation and opinion testimony, the government will inquire about relevant, specific instances of bad conduct as part of its rebuttal case.  Id.; Michelson v. United States, 335 U.S. 469, 479 (1948) ("The price a defendant must pay for attempting to prove his good name is to throw open the entire subject which the law has kept closed for his benefit and to make himself vulnerable where the law otherwise shields him.").