DARALYN J. DURIE (SBN 169825)
ddurie@mofo.com
ARTURO J. GONZALEZ (SBN 121490)
agonzalez@mofo.com
GALIA Z. AMRAM (SBN 250551)
gamram@mofo.com
RAMSEY W. FISHER (SBN 334228)
ramseyfisher@mofo.com
JESSICA E. LANIER (SBN 303395)
jlanier@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105-2482
Telephone: 415-268-7000
Facsimile: 415-268-7522

CHRISTINA M. RANDALL (SBN 320125)
crandall@mofo.com
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, California 90017-3543
Telephone: 213-892-5200
Facsimile: 213-892-5454

Attorneys for Defendant
MARK RIDLEY-THOMAS

## IN THE UNITED STATES DISTRICT COURT
### FOR THE CENTRAL DISTRICT OF CALIFORNIA
### WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> MARK RIDLEY-THOMAS, et al., <br><br> Defendants. | Case No. 2:21-cr-00485-DSF <br><br> **DEFENDANT MARK RIDLEY-THOMAS'S NOTICE OF MOTION AND SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION FOR A JUDGMENT OF ACQUITTAL PURSUANT TO FEDERAL RULE OF CRIMINAL PROCEDURE 29** <br><br> Date:       June 26, 2023 <br> Time:      8:30 a.m. <br> Courtroom: 7D <br> Judge:     Hon. Dale S. Fischer |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>NOTICE OF MOTION AND MOTION</u>

PLEASE TAKE NOTICE that on June 26, 2023, at 8:30 a.m. in the courtroom of the Honorable Dale S. Fischer, or as soon thereafter as the matter may be heard, counsel for Defendant Mark Ridley-Thomas will move the Court for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29.  This motion is based on the attached motion, the Declaration of Daralyn J. Durie and exhibits filed concurrently herewith, the Constitution of the United States of America, all applicable statutory and case law, and such argument as the Court will entertain at the motion hearing.

Dated:    May 1, 2023              MORRISON & FOERSTER LLP


By: */s/ Daralyn J. Durie*
          DARALYN J. DURIE

Attorneys for Defendant
MARK RIDLEY-THOMAS

# <u>TABLE OF CONTENTS</u>

**Page**

I.     INTRODUCTION ........................................................................... 1

II.    LEGAL STANDARD ..................................................................... 2

III.   ARGUMENT .................................................................................. 3

    A.   The Government Did Not Present Sufficient Evidence to Sustain a
       Conviction for Mail or Wire Fraud ...................................................... 3

        1.   The government has not shown an official act by Dr.
           Ridley-Thomas .................................................................. 4

        2.   The government has not shown a material act by
           Dr. Ridley-Thomas ............................................................ 8

        3.   The government did not present evidence of a breach of
           fiduciary duty ................................................................... 10

        4.   The government's theory of the "secret funneling" of the
           $100,000 donation of Dr. Ridley-Thomas's campaign
           funds is not a legally permissible basis for an honest
           services conviction ........................................................... 11

        5.   The government did not prove any *quid-pro-quo* .................. 15

    B.   Count 2:  The Evidence Is Insufficient to Sustain a Conviction for
       Bribery............................................................................................. 17

        1.   The government did not prove that the transactions at
           issue in this case involved a thing of value of $5,000 or
           more ................................................................................. 18

           a.   There is a total failure of proof on the $5,000
               jurisdictional requirement ................................. 18

           b.   The statute requires the government to prove that the
                county business, transaction, or series of transactions
                amounts to at least $5,000 ................................. 19

        2.   The government did not show Dr. Ridley-Thomas acted
           corruptly with the intent to be influenced .......................... 23

        3.   The government did not show a benefit linked to an
           official act ........................................................................ 25

    C.   Count 1:  The Government Did Not Present Evidence Sufficient to
       Sustain a Conviction for Conspiracy .................................................. 26

IV.    CONCLUSION ............................................................................. 29

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**CASES**

4

*Arthur Anderson LLP v. United States*,
    544 U.S. 696 (2005) ...................................................................23

5

*Gonzales v. Gipson*,
    701 F. App'x 558 (9th Cir. 2017).......................................3, 16, 25

6

7

*Juan H. v. Allen*,
    408 F.3d 1262 (9th Cir. 2005) ..............................................2, 29

8

*Kelly v. United States*,
    140 S. Ct. 1565 (2020) .............................................................9

9

10

*McCormick v. United States*,
    500 U.S. 257 (1991) ...............................................................15

11

*McDonnell v. United States*,
    579 U.S. 550 (2016) ......................................................*passim*

12

13

*McNally v. United States*,
    483 U.S. 350 (1987) .................................................................9

14

*O'Laughlin v. O'Brien*,
    568 F.3d 287 (1st Cir. 2009) ......................................................3

15

16

*Skilling v. United States*,
    561 U.S. 358 (2010) ......................................................*passim*

17

*United States v. Albertini*,
    472 U.S. 675 (1985) ...............................................................19

18

19

*United States v. Anderson*,
    509 F.2d 312 (D.C. Cir. 1974) ...............................................24

20

*United States v. Bahel*,
    662 F.3d 610 (2nd Cir. 2011) .................................................26

21

22

*United States v. Bruce Weyhrauch*,
    Case No. 3:07-cr-00056-02-JWS, Dkt. 2 ...............................13

23

*United States v. Bryant*,
    885 F. Supp. 2d 749 (D.N.J. 2012).......................................7, 24

24

25

*United States v. Bynum*,
    327 F.3d 986 (9th Cir. 2003) .................................................21

26

*United States v. Cabrera*,
    328 F.3d 506 (9th Cir. 2003) .................................................20

27

28

*United States v. Carpenter*,
  961 F.2d 824 (9th Cir. 1992) .................................................................. 17

*United States v. Choy*,
  309 F.3d 602 (9th Cir. 2002) .................................................................. 28

*United States v. Duvall*,
  846 F.2d 966 (5th Cir. 1988) .................................................................. 20

*United States v. Espinoza-Valdez*,
  889 F.3d 654 (9th Cir. 2018) .................................................................. 27

*United States v. Ford*,
  435 F.3d 204 (2nd Cir. 2006) ................................................................. 26

*United States v. Frega*,
  933 F. Supp. 1536 (S.D. Cal. 1996) ....................................................... 21

*United States v. Goyal*,
  629 F.3d 912 (9th Cir. 2010) .................................................................. 25

*United States v. Graf*,
  610 F.3d 1148 (9th Cir. 2010) .................................................................. 3

*United States v. Henderson*,
  318 F. Supp. 3d 1221 (E.D. Wash. June 27, 2018) ............................... 24

*United States v. Huizar*, et al,
  20:20-cr-00326-JFW, Docket No. 221 .................................................. 26

*United States v. Katakis*,
  800 F.3d 1017 (9th Cir. 2015) ................................................. 10, 19, 25

*United States v. Kidd*,
  752 F. App'x 399 (9th Cir. 2018) ................................................... 10, 19

*United States v. Kincaid-Chauncey*,
  556 F.3d 923 (9th Cir. 2009) .......................................................... 15, 16

*United States v. Lindberg*,
  39 F.4th 151 (4th Cir. 2022) .................................................................. 18

*United States v. Malkus*,
  696 F. App'x 251 (9th Cir. 2017) .......................................................... 15

*United States v. Melchor-Lopez*,
  627 F.2d 886 (9th Cir. 1980) .................................................................. 28

*United States v. Mendoza*,
  25 F.4th 730 (9th Cir. 2022) .................................................................. 28

*United States v. Menendez*,
  291 F. Supp. 3d 606 (D.N.J. 2018) ................................................. 17, 25

*United States v. Milovanovic*,
  678 F.3d 713 (9th Cir. 2012) (en banc) ............................................................... 10

*United States v. Nevils*,
  598 F.3d 1158 (9th Cir. 2010) (en banc) ....................................... 3, 10, 19, 25

*United States v. Phuong Dinh Vo*,
  766 F. App'x 547 (9th Cir. 2019) ......................................................................... 20

*United States v. Powell*,
  469 U.S. 57 (1984) ..................................................................................................... 22

*United States v. Rawwad*,
  807 F.2d 294 (1st Cir. 1986) ................................................................................. 27

*United States v. Richardson*,
  225 F.3d 46 (1st Cir. 2000) ................................................................................... 27

*United States v. Santos*,
  553 U.S. 507 (2008) ................................................................................................. 21

*United States v. Seymour*,
  684 F. App'x 662 (9th Cir. 2017) ............................................................. 9, 10, 19

*United States v. Silver*,
  948 F.3d 538 (2d Cir. 2020) ................................................................................. 26

*United States v. Simas*,
  937 F.2d 459 (9th Cir. 1991) ................................................................. 18, 20, 21

*United States v. Tavares*,
  844 F.3d 46 (1st Cir. 2016) ..................................................................................... 6

*United States v. Tillmon*,
  954 F.3d 628 (4th Cir. 2019) ............................................................................... 20

*United States v. Wetselaar*,
  No. 2:11-cr-00347-KJD-CWH, 2018 WL 2304044 (D. Nev. May 21, 2018) .... 28

*United States v. Weyhrauch*,
  548 F.3d 1237 (9th Cir. 2008) ............................................................................. 13

*United States v. Weyhrauch*,
  623 F.3d 707 (9th Cir. 2010) ................................................................. 9, 13, 14, 15

**STATUTES**

18 U.S.C. § 666 ................................................................................................... *passim*

18 U.S.C. § 1346 ........................................................................................... 9, 12, 13

**OTHER AUTHORITIES**

O'Malley, et al., 2 Fed. Jury Prac. & Instr. § 31:05 (6th ed.) ................................. 27

Fed. R. Crim. P. 29 ........................................................................................*passim*

## I.    INTRODUCTION

The government chose not to call a single witness from the County of Los Angeles and it subpoenaed no documents from the County.  The government's investigating agent, Brian Adkins, testified that he could not recall how the money worked with the key Telehealth Contract at issue.  Agent Adkins also testified that he did not know the specifics of how the county process worked for approval of county items and did not speak to anyone to try to understand it, did not know if the normal process was followed with respect to each of the county items at issue, and instead relied on a review of "some" of Dr. Ridley-Thomas's subpoenaed emails to understand "generally how that may have worked[.]"  The government presented no evidence that the defendant pressured anyone to support any legislative item.  Instead, the government presented evidence that Dr. Ridley-Thomas did not oppose uncontroversial items on a consent calendar—items that the investigating agent admitted were consistent with Dr. Ridley-Thomas's legislative agenda and that the agent knew that Dr. Ridley-Thomas had supported in the past.

The jury convicted on Count One (conspiracy), Count Two (federal programs bribery), Count 5 (honest services mail fraud), and Counts 15, 16, 19, and 20 (honest services wire fraud).  But an examination of the record shows that the government failed to make an evidentiary showing on key elements of those counts.

For honest services fraud, the government failed to show an official act by Dr. Ridley-Thomas.  Rather than call a County witness to testify that the defendant performed such an act, the government proffered Agent Adkins' speculation; the government also presented no evidence that he breached (rather than simply owed) a fiduciary duty to the residents of Los Angeles County when non-controversial county items were approved without objection or that any action he took was material.  The government rested its case on evidence of the "secret funneling" of the $100,000 donation, but that argument was predicated on a supposed conflict of interest in failing to disclose the existence of that donation, and *Skilling v. United*

*States* prohibits honest services fraud convictions based on such a conflict of interest.  561 U.S. 358, 410 (2010).

The government's evidence on federal programs bribery under § 666 was also fatally flawed.  The statute covers only bribes involving county business or transactions valued at $5,000 or more, 18 U.S.C. § 666(a)(1)(B), and the government presented no proof that the county items at issue satisfied that requirement.  The government also presented no evidence that Dr. Ridley-Thomas (or his son) received any financial benefits, that any benefits were linked to an official act, or that he acted corruptly with the intent to be influenced regarding county items.  Speculation and conjecture do not satisfy the government's burden. *Juan H. v. Allen*, 408 F.3d 1262, 1279 (9th Cir. 2005).  Because the underlying substantive counts are insufficient, the conspiracy count must also fail, and the government failed to prove that Dr. Ridley-Thomas entered into an illegal agreement.  The government was required to prove each and every essential element of the counts Dr. Ridley-Thomas was charged with beyond a reasonable doubt, and it failed to do so.

## II.   LEGAL STANDARD

The jury convicted on Count One (conspiracy), Count Two (federal programs bribery), Count 5 (mail fraud), and Counts 15, 16, 19, and 20 (wire fraud).  All of the fraud counts related to the $100,000 transaction in May 2018, and Item 27, the Telehealth Contract amendment, which went before the Board of Supervisors on July 31, 2018.  The jury acquitted Dr. Ridley-Thomas of all counts related to Item 3 (Probation University) and Item 16 (Vermont Street Reentry Center), as well as all counts related to the USC admission, scholarship, and Professor of Practice appointment of his son, former Assemblymember Sebastian Ridley-Thomas.

Federal Rule of Criminal Procedure 29 provides that "the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction . . . .  A motion for judgment of

acquittal is reviewed on a sufficiency-of-the-evidence standard." *United States v. Graf*, 610 F.3d 1148, 1166 (9th Cir. 2010) (quoting *United States v. Stoddard*, 150 F.3d 1140, 1144 (9th Cir. 1998)).  Evidence is insufficient to sustain a conviction unless, viewing the evidence in the light most favorable to the prosecution, "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Nevils*, 598 F.3d 1158, 1163-64 (9th Cir. 2010) (en banc) (emphasis omitted) (quoting *Jackson v. Virginia*, 443 U.S. 307 (1979)).

"More than a 'mere modicum' of evidence is required to support a verdict." *Id.* at 1164 (quoting *Jackson*, 443 U.S. at 320).  As the Ninth Circuit has explained, the court must grant a Rule 29 motion if "the evidence construed in favor of the government [is] insufficient to establish every element of the crime" and "evidence is insufficient to support a verdict where mere speculation, rather than reasonable inference, supports the government's case or where there is a 'total failure of proof of [a] requisite' element." *Id.* at 1167 (internal citation omitted) (quoting *Briceno v. Scribner*, 555 F.3d 1069, 1079 (9th Cir. 2009)); *see also O'Laughlin v. O'Brien*, 568 F.3d 287, 301 (1st Cir. 2009) ("A reviewing court should not give credence to evidentiary interpretations and illations that are unreasonable, insupportable, or overly speculative.") (citation and alterations omitted); *Gonzales v. Gipson*, 701 F. App'x 558, 561 (9th Cir. 2017) (Reversing judgment where conviction "rest[s] on a speculative and weak chain of inferences.").

## III.   ARGUMENT

### A.   The Government Did Not Present Sufficient Evidence to Sustain a Conviction for Mail or Wire Fraud

Honest Services Fraud requires six elements:

1. Defendant devised or knowingly participated in a scheme or plan to deprive the residents of the County of Los Angeles of their right of honest services;

2. The scheme or plan consisted of a bribe in exchange for at

least one official act by defendant, with the jury
agreeing as to which act.  The "exchange" may be express
or may be implied from all the surrounding circumstances;

3. Defendant owed a fiduciary duty to the residents of the
County;

4. Defendant acted with the intent to defraud by depriving
the residents of the County of their right of honest
services;

5. Defendant's act was material; that is, it had a natural
tendency to influence, or was capable of influencing, a
person or entity's acts; and

6. Defendant used, or caused someone to use, the mails to
carry out or to attempt to carry out an essential part of
the scheme or plan.

Dkt. 285 at 25.  Because the government failed to present evidence for five of those
elements, those convictions cannot stand.

### 1.    The government has not shown an official act by Dr. Ridley-Thomas

Honest services fraud requires that the government prove that the scheme to
defraud consist of a bribe in exchange for an "official act."  That burden requires
proof that the defendant "made a decision" or "took an action" involving a formal
exercise of power on a pending question, matter, cause, suit, proceeding, or
controversy. *McDonnell v. United States,* 579 U.S. 550, 573 (2016).  Purely
ministerial or administrative conduct are not "official acts" for purposes of this
count.  "Setting up a meeting, hosting an event, or calling an official (or agreeing to
do so) merely to talk about a research study or to gather additional information,
however, does not qualify as a decision or action on the pending question whether
to initiate the study." *McDonnell*, 579 U.S. at 573.  "[S]ending a subordinate to
such a meeting, event, or call—similarly does not qualify as a decision or action on

the study, as long as the public official does not intend to exert pressure on another official or provide advice, knowing or intending such advice to form the basis for an 'official act.'" *Id.* at 573.

An official act has a limited definition, and for good reason: "The basic compact underlying representative government *assumes* that public officials will hear from their constituents and act appropriately on their concerns—whether it is the union official worried about a plant closing or the homeowners who wonder why it took five days to restore power to their neighborhood after a storm." *McDonnell*, 579 U.S. at 575 (emphasis in original). Thus, to show an official act, the government must prove that an official did more than simply set up a meeting, call an official (or agree to do so), or ask a subordinate to do so. *Id.* at 573.

For Item 27 (Telehealth amendment), the Indictment alleged four official acts for the honest services fraud counts: "(1) presenting motions and agenda items for the Board of Supervisors; (2) voting on Board of Supervisors' motions and agenda items; (3) exerting pressure on other members of the Board of Supervisors to present, introduce, and vote on motions and agenda items; and (4) exerting pressure on other County officials to perform official acts with respect to the issuance of, and amendment to, County contracts with the University and Social Work School." (Dkt. 1, Indictment at 30.) The government presented no evidence of (3) and (4). Indeed, the government did not call any Supervisors or County officials as witnesses.

The government also tendered no evidence of (1) presenting motions and agenda items for the Board of Supervisors, because the evidence showed that Item 27, the Telehealth amendment, was a motion brought by Supervisors Barger and Solis, not Dr. Ridley-Thomas. Declaration of Daralyn J. Durie, Ex. A "Trial Tr." at 1810:21-1811:24; DTX-1349 at 4[1].

---

[1] All exhibits cited herein are filed concurrently with the Durie Declaration.

1    In closing, the government argued that Ex. 316, which is a February 2018

2    email from Flynn to Dr. Ridley-Thomas discussing the Telehealth amendment,

3    constituted an official act because Dr. Ridley-Thomas forwarded the email to one of

4    his deputies, Emily Williams.  Trial Tr. at 2854-55 ("Emily Williams has no idea

5    that there's anything nefarious going on here, but he's advising somebody on his

6    staff to do certain things.  That's an official act.").  The government's argument is

7    contrary to the legal standard for what constitutes an official act.

8    In Exhibit 316, Dr. Ridley-Thomas forwarded to Ms. Williams an e-mail

9    from Dean Flynn and stated only "FYI" and, in a subsequent email response to

10   Ms. Williams, "We should have a follow up."  But simply forwarding an email to a

11   deputy with the words "FYI" or suggesting a follow up conversation is insufficient

12   to constitute an official act.  *See United States v. Tavares*, 844 F.3d 46, 57 (1st Cir.

13   2016) (when all the government demonstrates is that an official met with another

14   official concerning a proposed legislative amendment, the evidence is insufficient

15   to show an official act); *McDonnell*, 579 U.S. at 578-579 (asking a subordinate to

16   attend a meeting without an expectation for the subordinate to do anything other

17   than that is not an official act even if governor at the time accepted loans and gifts

18   from company CEO who wanted governor to secure research studies on company

19   product).

20   The only remaining "official act" alleged by the government is the vote in

21   favor of Item 27 (Telehealth amendment).  But the government relied on improper

22   speculation to meet its burden to demonstrate that Dr. Ridley-Thomas took an

23   "official act" regarding Item 27.  The government called no County witness to

24   testify about the voting process.  Instead, the government chose to call only its

25   investigating agent, Brian Adkins, to testify about the county items and Dr. Ridley-

26   Thomas's role with them.  But Adkins only reviewed emails from Dr. Ridley-

27   Thomas's AOL email account (not his county email account) to understand

28   "generally how that may have worked if I recall correctly."  Trial Tr. at 1754:18-22.

Agent Adkins acknowledged that he did not actually know how the county process worked with respect to how agenda items get put forward and approved. Trial Tr. at 1754:14-25-1755:1-2. He acknowledged that Item 27 was brought forward by Supervisor Barger and seconded by Supervisor Solis, not Dr. Ridley-Thomas. Trial Tr. at 1810:21-1811:1. He acknowledged that he did not speak to anyone to understand the county process. Trial Tr. at 1755:3-11 (Q. Now, you don't know because you didn't ask anyone? A. Fair.). Moreover, Agent Adkins testified that the Telehealth amendment did not itself extend the Telehealth Contract but delegated authority to the Department of Mental Health to enter into the contract extension if it so chose. Trial Tr. at 1809:8-16. The government did not call any County witnesses to explain what this meant either, nor if it involved action on the part of Dr. Ridley-Thomas.

Agent Adkins also acknowledged that some items can be approved through a "consent calendar" process and that this means that the item is non-controversial and is approved unanimously. Trial Tr. at 1763:2-5, 1763:18-20; Trial Tr. 1811:4-5; 1805:3-4. When asked about the Telehealth Contract amendment, Agent Adkins acknowledged that Item 27 was approved unanimously and that "[i]t may have been on consent. I don't know." Trial Tr. at 1805:3-4. The government's only witness to testify about the county items therefore failed to provide evidence that Dr. Ridley-Thomas took an action or made a decision involving a formal exercise of governmental power.

It is the government's burden to show that Dr. Ridley-Thomas "made a decision" or "took an action." The government failed to do this. The government relied on speculation and conjecture from a witness who did not understand the county process. Without proof that Dr. Ridley-Thomas took an official act, the honest services fraud conviction cannot stand. *See McDonnell*, 579 U.S. at 573; *United States v. Bryant*, 885 F. Supp. 2d 749, 764-765 (D.N.J. 2012) (where bills were passed unanimously by state senate and without debate by all members of

1    senate, the fact that defendant's votes were consistent with the agenda of the state

2    senate and all other senate members did not lend credence to government's

3    explanation that defendant voted the way he did for an illegal purpose).

4         **2.    The government has not shown a material act by Dr. Ridley-**

5              **Thomas**

6         The jury was instructed that an act is material if it had "a natural tendency to

7    influence, or was capable of influencing a person's or entity's acts."  Dkt. 285 at 27.

8    *Manual of Model Jury Instructions for the Ninth Circuit*, 2022 Edition (last updated

9    March 2022).  The government did not even attempt to provide proof on

10   materiality.  The government chose not to call anyone from the County to state that

11   they were influenced by anything that Dr. Ridley-Thomas did, or to even explain

12   the county process and whether anything Dr. Ridley-Thomas did was capable of

13   influencing anyone.  Perhaps this was because no County witnesses would have

14   supported a showing of materiality since Item 27 was brought by Supervisor

15   Barger, seconded by Supervisor Solis, Trial Tr. at 1810:21-1811:24; DTX-1349 at

16   4, and no one voted against it.  It was non-controversial, passing unanimously on

17   common consent of all Supervisors.  Trial Tr. at 1805:3-6; 1811:4-5.  Agent Adkins

18   acknowledged that Item 27 was consistent with Dr. Ridley-Thomas's legislative

19   agenda, and Dr. Ridley-Thomas's support for Telehealth originated years prior

20   from his work with the Blue Ribbon Commission.  *See, e.g.*, Trial Tr. at 1744:22-25

21   (Adkins knew Dr. Ridley-Thomas supported substance of agenda items); 1745:7-11

22   (each agenda item consistent with Dr. Ridley-Thomas's legislative agenda);

23   1797:18-25, 1792:9-24 (Blue Ribbon Commission's recommendations were origin

24   of Telehealth).  The government failed to present any evidence showing that

25   Dr. Ridley-Thomas did anything that influenced, or could have influenced, another

26   Supervisor or County official with respect to Item 27, or that he performed an

27   action that was material relative to the ultimate passage of the item.

28        Instead, the government summarily argued in closing that Dr. Ridley-

Thomas's "votes" and "advising of other officials" were "material" because
"[e]verything he's doing, it's generating outcomes."  Trial Tr. at 2891:7-10.
Assertion is not evidence, the jury obviously did not accept the assertion that
"everything" Dr. Ridley-Thomas did was unlawful, and such sweeping
generalizations about conduct being material do not satisfy the statute.  *See United
States v. Seymour*, 684 F. App'x 662, 662-63 (9th Cir. 2017) (without evidence
regarding basis for government's assertion, no rational trier of fact could find
essential element of crime).

     Nor is it sufficient for the government to point to Dr. Ridley-Thomas's
alleged failure to inform someone at the County about his son's role at USC or the
donation to United Ways of California for the benefit of PRPI.  *See, e.g.*, Trial Tr.
at 3023.  The government presented no evidence that Dr. Ridley-Thomas was
required by his fiduciary duty or any County rule, policy, or law to disclose
information regarding Sebastian Ridley-Thomas's role at USC or the donation to
United Ways of California.  And long-established Supreme Court case law
prohibits using the honest services statute for setting standards of good government
for state and local officials, including for failure to disclose a conflict of interest.
*See McNally v. United States*, 483 U.S. 350, 360 (1987); *Kelly v. United States*, 140
S. Ct. 1565, 1568 (2020) ("The evidence the jury heard no doubt shows
wrongdoing—deception, corruption, abuse of power.  But the federal fraud statutes
at issue do not criminalize all such conduct."); *McDonnell*, 579 U.S. at 577
(quoting *McNally v. United States*, 483 U.S. 350, 360 (1987)); *Skilling v. United
States*, 561 U.S. 358, 410 (2010); *United States v. Weyhrauch*, 623 F.3d 707, 708
(9th Cir. 2010) (*Weyhrauch II*) ("Under *Skilling*, nondisclosure of a conflict of
interest is no longer a basis for prosecution under 18 U.S.C. § 1346.").  Thus, the
government could not meet the materiality standard by arguing that some non-
county witnesses may have desired to know about any conflict of interest.  And the
government called no County witnesses to testify that they would have acted

differently on Item 27 had they known about Sebastian Ridley-Thomas's relationship with USC or the $100,000 transaction.

### 3. The government did not present evidence of a breach of fiduciary duty

Breach of a fiduciary duty, not just the duty itself, is an element of honest services fraud. *United States v. Milovanovic*, 678 F.3d 713 (9th Cir. 2012) (en banc); *see also Skilling*, 561 U.S. at 407 (citation omited) (describing the "solid core" of the honest-services doctrine as involving "offenders who, in violation of a fiduciary duty, participated in bribery or kickback schemes"). The government presented no evidence of breach. While there is a stipulation in evidence that Mark Ridley-Thomas had a fiduciary duty, (Ex. 802), the government presented no evidence that he breached any fiduciary duty to the citizens of Los Angeles County. The government argued that it "seem[ed] crazy" that Dr. Ridley-Thomas complied with state campaign finance requirements in his disclosure of the $100,000 donation, but it presented no evidence to the contrary or made any showing that he had a duty to disclose that transaction to anyone. Trial Tr. at 2878:25-2879:1.

The government also failed to make any argument about what the fiduciary duty required or present any evidence that it was breached. Evidence is insufficient to support a verdict where, as here, "mere speculation, rather than reasonable inference, supports the government's case, or where there is a 'total failure of proof of a requisite element.'" *United States v. Katakis*, 800 F.3d 1017, 1023, 1028 (9th Cir. 2015) (internal citation omitted) (affirming district court's order granting judgment of acquittal where the government "invited the jury to do what *Nevils* forbids: engage in mere speculation on critical elements of proof"); *United States v. Seymour*, 684 F. App'x 662, 662-63 (9th Cir. 2017) (overturning conviction where there was "a total failure of proof of [a] requisite element") (internal quotations and citations omitted) (alteration in original); *United States v. Kidd*, 752 F. App'x 399,

400-01 (9th Cir. 2018) (same).

> **4.    The government's theory of the "secret funneling" of the $100,000 donation of Dr. Ridley-Thomas's campaign funds is not a legally permissible basis for an honest services conviction**

The government argued that part of the scheme to defraud involved a $100,000 donation from Dr. Ridley-Thomas's committee account to USC, which then was further donated to United Ways of California for the benefit of PRPI. But because the evidence showed that the donation was not illegal and that Dr. Ridley-Thomas gained no monetary benefit from the donation, the government relied on a failure to disclose theory to sustain a conviction for honest services fraud. This is contrary to established case law that a defendant cannot be convicted for honest services fraud based on a conflict of interest. *Skilling*, 561 U.S. at 408, 410.

While the government initially characterized the $100,000 donation as being the bribe itself, its theory shifted to the bribe being the "secret funneling" of the $100,000. *Cf.* Indictment *with* Trial Tr. at 2881:15-18. The government's characterization of the $100,000 donation shifted during the case for good reason: it had no evidence that the donation was a bribe. The government in closing stated repeatedly that Dr. Ridley-Thomas "monetized" his position as a public official. *See, e.g.*, Trial Tr. at 2891:11-12; 2996:18-19. But the evidence at trial showed that the source of the $100,000 donation was Dr. Ridley-Thomas's campaign account— not USC or Marilyn Flynn. The government did not dispute that Dr. Ridley-Thomas received no money from the arrangement. Dr. Ridley-Thomas's adult son, Sebastian Ridley-Thomas, also received no money from the arrangement.[2] And the government presented no evidence that the donation itself was illegal.

With no evidence of a monetary benefit to Dr. Ridley-Thomas or Sebastian

---

[2] The project Sebastian Ridley-Thomas ran, the Policy, Research and Practice Institute (PRPI), received funding that was held by United Ways of California outside of his control. *See* Trial Tr. at 2053:16-20 (discussing fiscal sponsorship).

Ridley-Thomas, the government argued in its closings that the "secret[] funneling" was to avoid disclosing a conflict of interest related to his son's relationship with USC:

> He's just voting for this like no big deal.  Yeah, I know my son has an application.  I know I've been talking to Dean Marilyn Flynn, the dean of that school, about him getting into that school.  But I still feel comfortable voting in a way that is financially beneficial to that school as a result of a request specifically from that dean.
>
> ***That is called a conflict of interest.***

Trial Tr. at 3023:12-19 (emphasis added).[3]

Recognizing that the honest services statute raises due process concerns because of its lack of clarity on what conduct is barred under the statute,[4] the Supreme Court in *Skilling v. United States* limited reading of the honest services

---

[3] *See also* Trial Tr. at 2878:21-25-2879:2-5 ("There was a reason that the defendant only publicly discloses this.  He doesn't want anybody to know that the money was routed through USC, and that's why he writes just USC, the School of Social Work here."); *Id*. at 3010 (arguing that Dr. Ridley-Thomas would know that it would be a conflict of interest to offer Sebastian Ridley-Thomas a thing of value while he was still in the Assembly); *Id.* at 3023-24; *Id*. at 3025:1-3 ("So he votes on this item. No problem. It's okay to vote for contractors and people who are -- who have some impact on family members who are close to you."); 3045:4-8 ("No paper trail whatsoever. No paper trail that the Defendant funneled the money or sent it to USC. No paper trail, according to Ann Ravel, that USC reported it. And paper trail in the same way in the context of a campaign disclosure, a campaign donation disclosure."); *Id*. at 3056:5-10 ("And the real reason is because the Defendant didn't want -- he understood now that there would be political optics around funneling or sending $100,000 to an organization that impacted his son. And the other thing is, maybe no one would do it. Community Partners wouldn't do it."); Trial Tr. 1396:19-23, 1562:14-20 (Adkins testimony of "optics" concerns); *Id*. at 2857 (closing argument discussing "red flags" about donation because of son serving as director of AACEP), *Id*. at 2858:24-2859:1 ("There won't be a trace, publicly anyways, that this money was going from the defendant's campaign account to Sebastian Ridley-Thomas."); *Id*. at 2859:15-17 ("So all of this is to deceive United Ways just as much as it is to deceive the public, and that's how you do it. You funnel the money through USC.").

[4] The defendant there argued that the statute did not adequately define what behavior it barred and failed to provide a definition of the right whose deprivation it prohibited.  *See Skilling,* 561 U.S. at. at 424 (Scalia, J. concurring) (explaining that the Court should "reverse Skilling's conviction under § 1346 on the ground that it fails to define the conduct it prohibits.").  Similarly, the jury here, which submitted eight notes seeking clarification on the Court's instructions to the jury, asked in Jury Note 10 "Can we get a definition for honest services please?"  Dkt. 295.

statute to reach "bribes and kickbacks."  561 U.S. at 408.  *Skilling* also expressly rejected prosecutions involving conflict of interest cases and honest services convictions for "some schemes of non-disclosure and concealment of material information."  *Id.* at 410 ("we conclude that a reasonable limited construction of § 1346 must exclude this amorphous category of cases.").  Thus, a conviction for honest services fraud cannot stand if it is based on conflicts of interest or a failure to disclose theory.  *Weyhrauch II*, 623 F.3d at, 708.

In *Weyhrauch*, the government alleged that a state legislator committed honest services mail fraud by soliciting future legal work from an oil field services company in exchange for voting on the oil tax legislation as the company instructed, maneuvering the legislation favorably for the company, and reporting information about proposed legislative changes to company executives.  *United States v. Weyhrauch*, 548 F.3d 1237, 1239 (9th Cir. 2008) (*Weyhrauch I*).[5]  The first appeal was taken prior to the Supreme Court's decision in *Skilling v. United States*.  In the first appeal, the court noted that the allegations "describe an undisclosed conflict of interest and could also support an inference of a quid pro quo arrangement to vote for the oil tax legislation in exchange for future remuneration in the form of legal work."  *Id.* at 1247.  Thus, under *Weyhrauch I*, evidence that an undisclosed conflict of interest was part of the quid pro quo agreement was sufficient to sustain a conviction under honest services fraud.  *See id.*  After *Skilling*, a second appeal was taken.  *Weyhrauch II*, 623 F.3d at 708.  There, the Ninth Circuit noted that in light of *Skilling*, "nondisclosure of a conflict of interest is no longer a basis for prosecution under 18 U.S.C. § 1346."  *Id.*  The case was remanded and later dismissed against the defendant.  *Id.*; *see United States v. Bruce Weyhrauch*, Case No. 3:07-cr-00056-02-JWS, Dkt. 498.

---

[5] Weyhrauch was charged with honest services mail fraud, federal programs bribery under § 666(a)(1)(B), extortion, and conspiracy.  *United States v. Bruce Weyhrauch*, Case No. 3:07-cr-00056-02-JWS, Dkt. 2.

Here, the government's "secret funneling" theory was an impermissible conflicts of interest argument. The government repeatedly argued that the point of the "funneling" of the money through USC was to hide the source of the money to avoid the appearance of "nepotism." The government called witnesses from Community Partners to argue this point,[6] and repeatedly questioned non-county witnesses about whether they would have wanted to know the source of the funds.[7] But this testimony from non-County witnesses did not establish the scope of duties owed to the County, much less a breach of duty. As in *Weyhrauch*, the government's argument was that the donation presented an undisclosed conflict of interest and that part of the *quid pro quo* arrangement was to avoid disclosure of this conflict. Both *Skilling* and the Ninth Circuit prohibit this as a basis for an

---

[6] Dunn Berry Testimony, Trial Tr. at 910:4-16 (Q. Now, in addition to the concerns you've expressed, did you eventually come to have optics concerns with the hiring of Sebastian Ridley-Thomas as the executive director of AACEP? A. Yes, but -- Q. Can you explain that? A. -- it had nothing to do with the sexual harassment allegations, which I did not connect with Sebastian Ridley-Thomas at the time. For me, it was strictly about funds from his father's campaign going to support -- it was more about nepotism, going to support his -- potentially his son's employment.); Trial Tr. at 2857:20-25 ("this is a man [Vandeventer] who would do almost anything for this man sitting here. But there were red flags. Remember Sheri Dunn Berry? She talked about how it just seemed nepotistic. It put the reputation of the organization – it wasn't illegal but it just didn't feel right.").

[7] John Clapp Testimony, Trial Tr. at 460:17-25-461:1 (Q. Would you have wanted to know before you expedited any benefit for Sebastian Ridley-Thomas, whether there had been any agreement between Mark Ridley-Thomas and Marilyn Flynn related to county business? A. Yes. Q. Why would you have wanted to know that before you went to work providing these benefits for Sebastian Ridley-Thomas? A. I would have been concerned that it was a potential conflict of interest.); Trial Tr. 545:18-23 ("if that were true and if you had learned about it at this time, what would you have done?"); Maryrose McMahon Testimony, Trial Tr. at 2024:22-2025:1-3 (Q. Had you known that the hundred thousand dollars coming from USC was actually to onboard an employee as opposed to a sponsorship for a survey, would you have put that in your invoice? A. If it was understood to me that I was asked to deliver false information, then no, I would not have created an invoice.); Peter Manzo Testimony, Trial Tr. at 2061:8-17; 2082 (asking if Manzo would have wanted to know about Community Partners donation and source of USC donation); 2109-11 (asking if Manzo was told about the source of funds from USC); Gonzalez Testimony, Trial Tr. at 1363:7-9 (Q. If you had known that information, would have you have handled this differently? A. Yeah. Yes.).

1  honest services conviction.[8]  *Skilling*, 561 U.S. at 410; *Weyhrauch*, 623 F.3d at 708.

2        **5.**      **The government did not prove any *quid-pro-quo***

3        "Before a defendant may be convicted of honest services fraud, the

4  government must prove that the defendant committed or agreed to commit an

5  'official act' in exchange for something of value." *United States v. Malkus*, 696 F.

6  App'x 251, 252 (9th Cir. 2017) (internal quotations and citation omitted).  But

7  because even that description criminalizes too much lawful conduct—and leaves

8  too much of the remainder uncertain—the Supreme Court has further limited every

9  element of the *quid-pro-quo* exchange.  *McDonnell* held that the official action

10  targeted by the bribe must be "specific and focused," capable "by law [of being]

11  brought before" an official, and involve a "formal exercise of governmental

12  power." *McDonnell*, 579 U.S. at 574; *see also United States v. Kincaid-Chauncey*,

13  556 F.3d 923, 943 (9th Cir. 2009) ("This requirement [of a quid pro quo] is

14  necessary to ensure that the defendant had the requisite intent to defraud and to

15  avoid convicting people for having the 'mere intent to curry favor.'" (quoting

16  *United States v. Kemp*, 500 F.3d 257, 281-82 (3d Cir. 2007))); *McCormick v.*

17  *United States*, 500 U.S. 257, 272 (1991) ("Serving constituents and supporting

18  legislation that will benefit the district and individuals and groups therein is the

19  everyday business of a legislator.").

20        The government failed to present evidence showing that Item 27 was part of

21  a *quid pro quo*.  Instead, the government relied on a hearsay statement from Dean

22  Flynn to John Clapp, the interim dean of the School of Social Work, saying she had

23

24  _____

[8] Consistent with *Skilling* and *Weyhrauch*, this Court noted its concerns about the
government's theory:

25  THE COURT:  And just because there was so much discussion of omission, as I
indicated, I do not think an omission is a means of violating the honest services

26  statute if that's the right way to say it. It couldn't be a bribe or a kickback. That
does not mean that an omission isn't relevant or can't be proof of a crime or part of

27  the proof of a crime; just so there's no objection if you start talking about omissions
in the proper context.  Trial Tr. at 2780:6-14.

28

to "do a favor" to obtain the Telehealth amendment, and on a USC lobbying report from Flynn.  As to the first piece of evidence, Clapp acknowledged on cross-examination that he did not ask Flynn what the favor was, or for **whom** the favor was.  Trial Tr. at 648:15-23.  Without a link establishing that Flynn's statement referred to a specific agreement to "secretly funnel" the donation in exchange for Dr. Ridley-Thomas's vote on the Telehealth amendment, or even that Flynn was speaking of Dr. Ridley-Thomas, this evidence is entirely speculative and fails to satisfy the government's burden of proof.  *Gipson*, 701 F. App'x at 561-62 ("mere suspicion or speculation cannot be the basis for creation of logical inferences") (citations omitted).

In its closing, the government focused on the second piece of evidence it used to establish a *quid pro quo*:  Flynn's lobbying report listing a communication with Dr. Ridley-Thomas on April 26, 2018.  Ex. 187.  But Exhibit 187 wholly fails to establish a *quid pro quo*.  The document includes a description of Flynn's activity with city and county officials on various topics.  Flynn's description of the April 26, 2018 meeting does not mention Telehealth and instead mentions that she spoke to Dr. Ridley-Thomas about the county process.  The description further states "I also met with him to discuss a gift agreement," with no further information.  *See* Ex. 187.  "Without a link between the item of value received and an understanding that the public official receiving it is to perform official acts on behalf of the payor when called upon, there is no discernible way to distinguish between an elected official responding to legitimate lobbying and a corrupt politician selling his votes to the highest bidder."  *Kincaid-Chauncey*, 556 F.3d at 943; *see also McDonnell*, 579 U.S. at 574-75 (citing "significant constitutional concerns," cautioning against an expansive reading of "official act" and explaining that "conscientious public officials arrange meetings for constituents, contact other officials on their behalf, and include them in events all the time.").

The government offered insufficient evidence to establish that Flynn offered

Dr. Ridley-Thomas things of value *in exchange for* official acts.  Accordingly, the government failed to present sufficient evidence on this element and Dr. Ridley-Thomas should be acquitted of the honest services convictions.  *See United States v. Carpenter*, 961 F.2d 824, 827 (9th Cir. 1992) ("[T]he quid pro quo be clear and unambiguous, leaving no uncertainty about the terms of the bargain. . ."); *United States v. Menendez*, 291 F. Supp. 3d 606, 623-35 (D.N.J. 2018) (granting Rule 29 on campaign-contribution bribery counts where government introduced evidence of strong temporal connection, escalation, concealment, and a pattern of corrupt activity but failed to show that defendant entered into an explicit *quid pro quo* with full clarity about its terms).

### B.    Count 2:  The Evidence Is Insufficient to Sustain a Conviction for Bribery

The Court's instruction to the jury on federal programs bribery required the government to prove four elements beyond a reasonable doubt:

> 1. Defendant was an agent of a State or local government, or any agency thereof -- namely, the County of Los Angeles (County);
>
> 2. Defendant solicited, demanded, accepted, or agreed to accept a thing of value from a person for the benefit of any person;
>
> 3. Defendant acted corruptly, that is, intending to be influenced or rewarded in connection with any business, transaction, or series of transactions of the County involving anything of value of $5,000 or more; and
>
> 4. The County received benefits in excess of $10,000 under a Federal program involving a grant, contract, subsidy, loan, guarantee, insurance, or other form of Federal assistance in any one-year period.

Dkt. 285 at 23.  The government failed to prove two of these elements: Dr. Ridley-Thomas's corrupt intent and that the county business, transaction, or series of transactions were valued at $5,000 or more.  Accordingly, Dr. Ridley-Thomas should be acquitted on this count.

1

### 1. The government did not prove that the transactions at issue in this case involved a thing of value of $5,000 or more

2

3    Federal programs bribery under § 666 does not cover every alleged bribe,

4  only those involving county business valued at $5,000 or more. *See United States*

5  *v. Lindberg*, 39 F.4th 151, 174 (4th Cir. 2022) (quoting *United States v. Marmolejo*,

6  89 F.3d 1185, 1193-94 (5th Cir. 1996)) ("the $5,000 triggering provision ensures

7  the statute reaches acts of bribery involving transactions of substantial value.").

8  Thus, to sustain a conviction, the government was required to prove that the county

9  items at issue were valued at $5,000 or more. *See United States v. Simas*, 937 F.2d

10  459, 463 (9th Cir. 1991). Because the government failed to establish that the

11  county business that formed the subject of the bribe was valued at $5,000 or more,

12  the government failed to prove an element of the statute.

### a. There is a total failure of proof on the $5,000 jurisdictional requirement

13

14

15    The government presented no evidence for the jury to find that the County

16  items at issue were worth over $5,000. The government presented no evidence on

17  either the value of the Probation University or Vermont Street Reentry Center

18  motions. Nor could it because the Probation University and Reentry Center

19  motions were ***not*** contracts for services—they were studies calling for a report

20  back. *See* Trial Tr. at 1757:22-1758:7 (report back on best practices for training

21  probation officers); Ex. 573 at 3-4 (report back on Probation University); Ex. 570 at

22  4-5 (report back on creation of development plan for Reentry Center). And though

23  the government argued in closing that the Telehealth Contract was "the half

24  million-dollar contract, and the amendments to the contract are more money for

25  USC," (Trial Tr. at 2880:4-7), no record evidence supported that assertion and the

26  investigating agent admitted that he could not recall how the money worked with

27  the Telehealth Contract at issue. Trial Tr. at 1801:3-5; 1803:8-24.

28    The evidence instead showed that the original Telehealth Contract had a cap

of $547,500 over the life of the contract.  Trial Tr. at 1801:6-1802:5; DTX-1081 at 85-86.  The evidence also showed that the amended Telehealth Contract had that same cap.  Trial Tr. at 613:7-614:18; Ex. 576 at 49.  The government presented no evidence whether there was over $5,000 remaining in the Telehealth Contract at the time the amendment was passed in 2018, nor any evidence of what, if anything, was paid under the contract during the extension period.

To the contrary, John Clapp testified that the maximum amount of money USC could get from the Telehealth amendment remained the same, and that if USC had already been paid that maximum contract amount, they would not get any additional money from the contract amendment.  Trial Tr. at 613:7-614:18; 647:25-648:3.  In his words, he did not have any basis for testifying that the amendment to the Telehealth Contract generated a single dollar of revenue for USC.  Trial Tr. at 647:25-648:3; *see also* 612:21-23 (Q. In fact, the amendment that was passed didn't give USC any money at all, did it? A. I don't know.).  This total failure of proof requires acquittal on this count because the jury had to rely only on speculation in finding this essential element.  *See Katakis*, 800 F.3d at 1023, 1028 (affirming district court's order granting judgment of acquittal where the government "invited the jury to do what *Nevils* forbids: engage in mere speculation on critical elements of proof"); *Seymour*, 684 F. App'x at 662-63 (overturning conviction where there was "a total failure of proof of [a] requisite element") (internal quotations and citations omitted) (alteration in original); *Kidd*, 752 F. App'x at 400-01 (same).

  **b.** **The statute requires the government to prove that the county business, transaction, or series of transactions amounts to at least $5,000**

The government claims that the $5,000 threshold may be met by looking at the value of the benefits received.  The Court should decline to adopt that approach.  In interpreting a criminal statute, courts "generally must follow the plain and unambiguous meaning of the statutory language."  *United States v. Albertini*, 472 U.S. 675, 680 (1985).  18 U.S.C. § 666(a)(1)(B) includes a requirement that the

government prove that the official was "intending to be influenced or rewarded in connection with any business, transaction, or series of transactions of *such organization, government, or agency* involving any thing of value of $5,000 or more." (emphasis added).

Dr. Ridley-Thomas is aware of *United States v. Phuong Dinh Vo*, 766 F. App'x 547, 550 (9th Cir. 2019), which explained that "[p]recedent in this circuit interprets § 666(a) to require the 'bribe [to] exceed $5,000,' not the 'business' or 'transaction' exchanged." *Vo* cites *United States v. Cabrera*, 328 F.3d 506, 509 (9th Cir. 2003) and *United States v. Simas*, 937 F.2d 459, 461 (9th Cir. 1991). But *Cabrera* involved theft from a program receiving federal funds, not bribery. *Cabrera*, 328 F.3d at 508. And in *Simas*, the Court did consider the value of the subject matter of the bribe (a stair cleaning contract that defendant, a manager of a local government agency, issued in exchange). *Simas*, 937 F.2d at 463 ("The evidence established that the stair-cleaning project involved a sum in excess of $5,000."). There is thus no binding precedent in this Circuit that the $5,000 threshold can be met by the value of the benefit and not the value of the county business.

Other Circuits have held that the plain language of 18 U.S.C. § 666(a)(1)(B) means what it says, and required that the county business must be worth over $5,000. *United States v. Duvall*, 846 F.2d 966, 976 (5th Cir. 1988) ("From simply reading the statute, it is clear that the $5,000 figure qualifies the transactions or series of *transactions that the __recipient__ of the bribe carries out* in exchange for receiving 'anything of value.'" (emphasis added)); *United States v. Tillmon*, 954 F.3d 628, 645 (4th Cir. 2019) (explaining that "the Government's evidence must bear on the value of the subject matter of the bribe, and that obligation is not satisfied with evidence of something 'to which the subject matter of the bribe is tangentially related.'" (internal citation omitted)) (finding that § 666 bribery counts could not stand where no evidence that agent's services had a value of $5,000 or

1    more).

2         Courts in the Ninth Circuit have held the same.  *United States v. Frega*, 933

3    F. Supp. 1536, 1541, 1543 (S.D. Cal. 1996) (dismissing charge of § 666(a)(1)(B)

4    against state judge where indictment charged that briber intended to influence cases

5    judge presided over but failed to allege that the cases were valued at $5,000 or

6    more); *see also Simas*, 937 F.2d at 463 (considering whether contracts issued by

7    manager of the Power and Mechanical Division for the Bay Area Rapid Transit

8    District, a local government agency, were valued at $5,000 or more); *United States*

9    *v. Bynum*, 327 F.3d 986, 991 (9th Cir. 2003) ("(i) the defendant must be an agent of

10   a government agency receiving $ 10,000 or more in federal funding annually, and

11   (ii) ***the [proscribed] transaction . . . must exceed $ 5,000.***") (alterations in

12   original) (emphasis added) (citing *United States v. Cabrera*, 328 F.3d 506, 509 (9th

13   Cir. 2003)).

14        A contrary interpretation would violate the rule of lenity and make the statute

15   unconstitutionally vague, as persons would think the statute proscribed one thing

16   (being influenced in business worth at least $5,000) when really it proscribed

17   another (being influenced in *de minimis* business as long as the benefit is worth

18   $5,000).  *See United States v. Santos*, 553 U.S. 507, 514 (2008) ("The rule of lenity

19   requires ambiguous criminal laws to be interpreted in favor of the defendants

20   subjected to them."); *Skilling*, 561 U.S. at 410.  There is a big difference between a

21   politician receiving a $10,000 campaign donation from a local non-profit and then

22   being influenced to give the non-profit a certificate celebrating the non-profit's

23   tenth anniversary, and the politician accepting a $10,000 campaign donation from a

24   local non-profit with the intent of being influenced to get the non-profit a contract

25   worth $10,000.  The latter is clearly proscribed by Section 666.  The former should

26   not be, but is under the Government's interpretation.

27          **c**.      **Even when the value of the bribe is considered, the**

28              **government failed to prove the $5,000 threshold amount**

The government's failure of proof on the $5,000 threshold amount is fatal. But even assuming *arguendo* that the statute allows the government to use the value of the **bribes** the official receives as a basis for meeting the threshold amount, the government failed to meet its burden.

The jury acquitted on the fraud counts predicated on Sebastian Ridley-Thomas's positions with USC and convicted only on counts relating to the $100,000 donation.[9]   The evidence at trial showed that in summer 2017 Sebastian Ridley-Thomas met with the chair of the Masters of Social Work Program, who was eager to enroll him.  *See* Ex. 6.  Sebastian both the social work and the public policy graduate programs and was admitted with a scholarship.  The government introduced no evidence showing that Sebastian Ridley-Thomas was not qualified for the positions.  *Cf.* Trial Tr. 1907:8-25-1908:1-25 (no document showing anyone from USC told Sebastian he was unqualified for his positions).  In fact, Michael Nichol, the Vice Dean for Faculty Affairs, (Trial Tr. at 655:8-9), testified that he considered Sebastian to be qualified for his position as Professor of Practice.  *See* Trial Tr. at 750:12-17 (Q. Would you consider him, in view of these credentials that are set forth, to have been an unusual candidate? A. Yes. Q. And, in fact, you also thought that he was qualified for the position that he got at Price, right? A. Yes.).  Sebastian Ridley-Thomas's admission, scholarship, and professorship were not free hand-outs:  they were contingent on the maintenance of a certain grade point average and his work duties as assigned by Nichol and other USC officials.  *See* Trial Tr. at 618:14-21 (scholarship was conditioned on his maintaining a B grade point average, which was "standard language").  The government also failed to establish what that value represented to Dr. Ridley-Thomas, the official receiving the bribe, rather than Sebastian.  The jury acquitted on counts pertaining to

---

[9] While the Supreme Court has stated that inconsistent verdicts may not be overturned on sufficiency basis, *see United States v. Powell,* 469 U.S. 57, 67 (1984), here the defense is arguing the verdicts should be interpreted consistently.

1    Sebastian's positions at USC while convicting on otherwise identical counts

2    pertaining to the $100,000 donation, making clear that the jury rejected the

3    government's arguments regarding the former.  And, even if the evidence

4    pertaining to the scholarship and the faculty position were to be considered in view

5    of the acquittals, the government relied on a sweeping generalization that Dr.

6    Ridley-Thomas received monetary benefits from the positions offered to his son

7    without actual proof demonstrating a monetary benefit over $5,000.

8         As discussed earlier in Section III.B.4., the $100,000 donation to USC itself

9    was not a thing of value over the $5,000 threshold amount.  That money came from

10   Dr. Ridley-Thomas's officeholder committee account and resulted in no monetary

11   gain—it resulted in a loss of money for Dr. Ridley-Thomas.  Instead, the

12   government's theory at trial was that the thing of value was the "secret funneling"

13   of the donation.  But the government never even tried to place a value on the act of

14   "secret funneling" because no such value could be ascribed.  The total failure of

15   proof on this element requires acquittal.

16              **2.    The government did not show Dr. Ridley-Thomas acted**
                       **corruptly with the intent to be influenced**
17

18        To sustain a conviction for federal programs bribery, the government had to

19   prove that Dr. Ridley-Thomas acted "corruptly."  The government's case against

20   Dr. Ridley-Thomas relied solely on speculation for proving corrupt intent.  The

21   term "corruptly" does not cover innocent conduct.  *See Arthur Anderson LLP v.*

22   *United States*, 544 U.S. 696, 697-98 (2005).  The Court instructed the jury that:

23   "An act is done 'corruptly' if it is performed voluntarily, deliberately, and

24   dishonestly, for the purpose of either accomplishing an unlawful end or result or of

25   accomplishing some otherwise lawful end or lawful result by an unlawful method

26   or means."  Dkt. 285 at 24.  The government presented insufficient evidence on this

27   requirement.

28        First, the government had no evidence showing that Dr. Ridley-Thomas,

rather than Flynn, had a corrupt intent. The government repeatedly argued that Flynn's intent and statements indicated Dr. Ridley-Thomas's intent. But "the payment and the receipt of a bribe are not interdependent offenses" and the government had no evidence to separately establish Dr. Ridley-Thomas's state of mind. *See United States v. Anderson*, 509 F.2d 312, 332 (D.C. Cir. 1974) ("obviously the donor's intent may differ completely from the donee's. Thus the donor may be convicted of giving a bribe despite the fact that the recipient had no intention of altering his official activities, or even lacked the power to do so."); *see also Bryant*, 885 F. Supp. 2d at 761 (noting that although evidence tended to prove motivation behind briber's actions, that intent could not be imputed to the official in a bribery context and government had to separately establish the official's own intent).

Second, the jury was instructed explicitly that it had to find that Dr. Ridley-Thomas acted "dishonestly," but the government failed to prove this at trial. It presented evidence that Dr. Ridley-Thomas did not disclose the source of the $100,000 donation to United Ways of California for the benefit of PRPI. But it presented no evidence that there was a duty to disclose this information, and it acknowledged that the donation was lawful.[10] Even if the government believed that the donation had "red flags," and that it was "crazy" that the donation could be legal, an assertion that the law is "crazy" does not render an intention to comply with the law corrupt. *See, e.g., McDonnell*, 579 U.S. at 580-81 ("distasteful" conduct is insufficient alone for prosecution under bribery statute); *United States v.*

---

[10] *See, e.g.*, Trial Tr. at 1864:16-18, 1865:9-16 (no evidence found in investigation contradicting Kaufman legal memorandum); *id.* at 930:18 (Dunn Berry testifying that donation of campaign funds to project run by son was "not illegal"); *id.* at 953:19-25, 955:1-22 (Community Partners determined that the donation was legal; concern was about optics); Dkt. 128 at 13-14 (Gov. Mtn to Exclude Ann Ravel) ("The government has never argued that defendant's donation from his Committee to USC violates campaign finance law. . . . The entire point is that, instead of donating directly, he chose the secreted, circuitous route through USC to circumvent perceptions of nepotism and the risk that United Ways would reject the donation based upon those optics.")

*Henderson*, 318 F. Supp. 3d 1221, 1243 (E.D. Wash. June 27, 2018) (granting

motion for judgment of acquittal where "the jury would have had to rely on

speculation to reach the conclusions that would satisfy the intent element").

Similarly, the government relied on insufficient evidence and speculation that

Dr. Ridley-Thomas must have known that Flynn was trying to influence him.

Under Ninth Circuit precedent, this speculation is insufficient.  *Nevils*, 598 F.3d at

1167 (The evidence must support a "reasonable inference" by the jury, rather than

"mere speculation"); *Gipson*, 701 F. App'x at 561 (Reversing judgment where

conviction "rest[s] on a speculative and weak chain of inferences"); *Katakis*, 800

F.3d at 1028 (affirming district court's order granting judgment of acquittal where

"there was no evidence to support the Government's theory, only speculation that

relied heavily on evidence of [defendant's] intent while absolving the Government

of its obligation to prove the act.")*; see also United States v. Goyal*, 629 F.3d 912,

919 (9th Cir. 2010) ("[W]here there is a total failure of proof" of the required

mental state, we cannot affirm a conviction . . . The government's failure to offer

any evidence supporting even an inference of willful and knowing deception

undermines its case.") (citations omitted); *Menendez*, 291 F. Supp. 3d at 623-35

(granting Rule 29 on campaign-contribution bribery counts where government

introduced evidence of strong temporal connection, escalation, concealment, and a

pattern of corrupt activity but failed to show that defendant entered into an explicit

*quid pro quo* with full clarity about its terms).

### 3.    The government did not show a benefit linked to an official act

To prevent prosecutors from reverse-engineering "bribes" *post-hoc* based on

the mere existence of a benefit and an official act, the Supreme Court has held that

there must be proof of an agreement to perform a specific and focused official act

"at the time" the benefit is conferred.  *McDonnell*, 579 U.S. at 572-75.  Conversely,

if a benefit is accepted without that discrete and conditional understanding, it is not

a federal crime. *Id*. at 579 ("[S]everal of Governor McDonnell's subordinates testified that he asked them to attend a meeting, not that he expected them to do anything other than that. If that testimony reflects what Governor McDonnell agreed to do ***at the time he accepted the loans and gifts*** from Williams, [he did not commit a crime]") (emphasis added); *United States v. Silver* ("*Silver II*"), 948 F.3d 538, 577 (2d Cir. 2020) ("An official who merely accepts a thing of value in an otherwise-legal manner . . . has not committed a crime. If that official later acts to the benefit of the payor, [the official] still has not committed a crime. It is only upon a showing that, at the time the official accepted the payment, [the official] understood it to be a payment in exchange for official influence on some specific, focused, and concrete matter involving the formal exercise of governmental power that the Government has met its burden."); *United States v. Huizar*, et al, 20:20-cr-00326-JFW, Docket No. 221, Govt. Opp. to Deft. Lee and 940 Hill's Mtn. to Compel, at 15 (arguing that a lobbyist "'suspected of engaging in illicit activities' such as taking PLUM committee members on deep-sea fishing trips . . . (without more, is not a crime)").

Dr. Ridley-Thomas recognizes that Section 666 does not explicitly contain an "official act" requirement. He notes, however, that other circuits have held that Section 666 requires a bribe be given or received with the intent to influence the public official in an official act. *See, e.g.*, *United States v. Bahel*, 662 F.3d 610, 637 (2nd Cir. 2011); *United States v. Ford*, 435 F.3d 204, 212 (2nd Cir. 2006)) ("The government was also required to prove beyond a reasonable doubt that Ford accepted Bynum's services 'intending to be influenced' in her official duties."). To the extent that this Court finds that Section 666 requires a showing of an official act, the bribery conviction fails for the same reasons discussed in Section III.B1.

**C.    Count 1:  The Government Did Not Present Evidence Sufficient to Sustain a Conviction for Conspiracy**

To convict for conspiracy, the government must prove that the defendant (1)

agreed to accomplish an illegal objective, and (2) had the intent to commit the underlying offense.  *United States v. Espinoza-Valdez*, 889 F.3d 654, 656 (9th Cir. 2018) (citing *United States v. Moe*, 781 F.3d 1120, 1124 (9th Cir. 2015)).  The government failed to present sufficient evidence on these elements.  The government did not show that Dr. Ridley-Thomas agreed or had the intent to commit the underlying bribery and honest services fraud offenses.  For the reasons stated above, the government presented no evidence that Dr. Ridley-Thomas allegedly conspired to agree to be influenced in connection with some business, transaction, or series of transactions involving a thing of a value of $5,000 or more. For the reasons stated above, the government also presented no evidence that Dr. Ridley-Thomas allegedly conspired to agree to exchange a material and official act or to violate a fiduciary duty.

The government also presented ***no*** evidence of a meeting of the minds.[11] The closest evidence it introduced to present this is Agent Adkins's improper testimony suggesting the motivations of Dr. Ridley-Thomas by discussing the timing of events.  But the government has cherry-picked events to create a timeline that is misleading.  And it cannot escape its glaring omission:  there is no evidence

---

[11] Mere association is also not enough.  O'Malley, et al., 2 Fed. Jury Prac. & Instr. § 31:05 (6th ed.) (requiring evidence to show beyond a reasonable doubt that Defendant knew the purpose or goal of the agreement or understanding and then deliberately entered into the agreement intending, in some way, to accomplish the goal or purpose by this common plan or joint action. . . Merely associating with others and discussing common goals, mere similarity of conduct between or among such persons, merely being present at the place where a crime takes place or is discussed, or even knowing about criminal conduct does not, of itself, make someone a member of the conspiracy or a conspirator.), modified to fit facts of the case; *United States v. Rawwad*, 807 F.2d 294, 296 (1st Cir. 1986) (affirming instruction that "membership of any defendant in a conspiracy must be established on the basis of the evidence as to what he himself did and what he himself said."); Sand et al., Modern Federal Jury Instructions (Crim.), Inst. 19-6 (2022); First Circuit Pattern Criminal Jury Instruction 4.18.371(1); *United States v. Richardson*, 225 F.3d 46, 53 (1st Cir. 2000) ("The [ ] language from the pattern instruction . . . is a correct statement of the law. A conspiracy conviction requires that a defendant's membership in the conspiracy be proved on the basis of his own words and actions (not on the basis of mere association or knowledge of wrongdoing).") (citation omitted).

1    of a meeting of the minds. "The line between conspiracy and an unexercised

2    opportunity to join a conspiracy may be difficult to draw, but it must be drawn

3    where the existence of an agreement is absent." *United States v. Melchor-Lopez*,

4    627 F.2d 886, 891 (9th Cir. 1980). Suspicion or surmise may not replace "the

5    essential analysis of the qualitative nature of the acts in question." *Id.*

6        The government has, at best, introduced evidence of exploratory and

7    inconclusive discussions with Dr. Ridley-Thomas. Without more this is, as a

8    matter of law, insufficient to meet the government's requirement of proving a

9    meeting of the minds. *Melchor-Lopez*, 627 F.2d at 891 ("there can be no

10   conviction for guilt by association, and it is clear that mere association with

11   members of a conspiracy, the existence of an opportunity to join a conspiracy, or

12   simple knowledge, approval of, or acquiescence in the object or purpose of the

13   conspiracy, without an intention and agreement to accomplish a specific illegal

14   objective, is not sufficient to make one a conspirator."); *United States v. Wetselaar*,

15   No. 2:11-cr-00347-KJD-CWH, 2018 WL 2304044, at *2-3 (D. Nev. May 21, 2018)

16   ("knowledge of the illegal objective is key . . . [that] Defendant acting in a way that

17   did not hinder the conspiracy does not equate to him having knowledge that he was

18   doing so."); *United States v. Mendoza*, 25 F.4th 730, 737, 740 (9th Cir. 2022)

19   (finding evidence insufficient for conspiracy conviction, explaining that "we cannot

20   give those conversations meaning that their words do not bear.").

21       Moreover, because the government failed to present sufficient evidence to

22   sustain convictions on honest services fraud or federal programs bribery, there can

23   be no conviction for conspiracy. *See United States v. Choy*, 309 F.3d 602, 605 (9th

24   Cir. 2002) ("Where substantive offenses underlying a conspiracy conviction are

25   successfully challenged, the reason for reversal affects the viability of the

26   conspiracy conviction.").

27

28

1

## IV.    CONCLUSION

Although deference is owed to the trier of fact, the deference is not without limit. *Juan H.*, 408 F.3d at 1275.  For the reasons stated above, the evidence was insufficient to support the verdicts because it relied on speculation, conjecture, or a total failure of proof.  The Court should grant Dr. Ridley-Thomas's motion for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29.

Dated:    May 1, 2023                          MORRISON & FOERSTER LLP


By: */s/ Daralyn J. Durie*
                          DARALYN J. DURIE

                          Attorneys for Defendant
                          MARK RIDLEY-THOMAS

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on May 1, 2023, the within document was filed with the Clerk of the Court using CM/ECF which will send notification of such filing to the attorneys of record in this case.

*/s/ Daralyn J. Durie*
DARALYN J. DURIE