1

UNITED STATES DISTRICT COURT

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

**THE HONORABLE DALE S. FISCHER, JUDGE PRESIDING**


**UNITED STATES OF AMERICA,** )
)
                    **Plaintiff,** )
)
        **vs.** ) **NO. CR 21-485-DSF**
)
**MARK RIDLEY-THOMAS,** )
)
                    **Defendant.** )
_____)


**REPORTER'S TRANSCRIPT OF PROCEEDINGS**


**Los Angeles, California**

**Monday, August 28, 2023, 10:02 A.M.**


**Sentencing Hearing**


**PAT CUNEO CSR 1600**
**Official Reporter**
**First Street Courthouse**
**350 West 1st Street**
**Room 4311**
**Los Angeles, CA 90012**
**213-894-1782**
**patcuneo1600@gmail.com**
**www.patcuneo.com**

2

APPEARANCES:

FOR THE PLAINTIFF:       E. MARTIN ESTRADA
                         UNITED STATES ATTORNEY
                         BY:   LINDSEY GREER DOTSON
                         AND   THOMAS F. RYBARCZYK
                         AND   MICHAEL J. MORSE
                         ASSISTANT UNITED STATES ATTORNEYS
                         United States Courthouse
                         312 North Spring Street
                         Los Angeles, California   90012
                         lindsey.dotson@usdoj.gov
                         thomas.rybarczyk@usdoj.gov
                         michael.morse@usdoj.gov


FOR THE DEFENDANT:       MORRISON & FOERSTER LLP
                         BY:   GALIA Z. AMRAM, ATTORNEY AT LAW
                         AND   RAMSEY W. FISHER, ATTORNEY AT LAW
                         AND   CHRISTINA RANDALL, ATTORNEY AT LAW
                         AND   MIMA KIAEY, ATTORNEY AT LAW
                         425 Market Street
                         San Francisco, California   94105-2482
                         415-268-7020
                         ramseyfisher@mofo.com
                         gamram@mofo.com

**LOS ANGELES, CALIFORNIA; MONDAY, AUGUST 28, 2023; 10:02 A.M.**

-oOo-

THE CLERK:  All rise and face the flag.

In the presence of the flag of our country, emblematic of the Constitution and remembering the principles for which it stands, this United States District Court is again in session, the Honorable Dale S. Fischer, United States District Judge presiding.

Please be seated and come to order.

Calling Item No. 2, Case No. CR 21-485-DSF, United States of America v. Mark Ridley-Thomas.

Counsel, please state your appearances.

MS. DOTSON:  Good morning, Your Honor. Lindsey Greer Dotson on behalf of the United States.  With me at counsel table are Assistant US Attorneys Tom Rybarczyk and Michael Morse.  Also with us at counsel table is FBI Special Agent Brian Adkins.

THE COURT:  Good morning.

SPECIAL AGENT ADKINS:  Good morning, Your Honor.

MS. AMRAM:  Good morning, Your Honor.  Galia Amram on behalf of Mark Ridley-Thomas who is present and out of custody.  With me at counsel table is Ramsey Fisher, Christina Randall, and Mima Kiaey.  Thank you.

THE COURT:  Good morning.

First, I want to remind everyone who can see or

hear this proceeding, including those of you in the overflow courtroom, that pursuant to the Federal Rules of Criminal Procedure and the Central District's Local Rules, you are ordered not to photograph, broadcast, rebroadcast, or record the proceedings in any way.

You are ordered to turn off all cellphones and other mobile devices.  There is to be no talking during the proceeding.  If you want to talk to someone, you need to leave the courtroom.  I don't want people walking in and out constantly, please.

This is the time set for sentencing.  I have read and considered the presentence report and the addendum.  I have also read and considered the position papers filed by the parties as well as the many very supportive letters submitted by the defense and the letter submitted by former Council-member and LAPD Chief Bernard Parks and a letter filed by the defense yesterday; that the letter from Mr. Parks had copies of seals on it had no impact on me at all.

Ms. Amram, have you had enough time to read all the relevant documents and reviewed them with Dr. Ridley-Thomas?

MS. AMRAM:  Yes, Your Honor.

THE COURT:  Did you explain their contents to him?

MS. AMRAM:  Yes, Your Honor.

5

THE COURT:  Do you have any concerns about his ability to understand them?

MS. AMRAM:  No, Your Honor.

THE COURT:  Dr. Ridley-Thomas, did you get those documents?

THE DEFENDANT:  Yes, Your Honor.

MS. DOTSON:  Did you read them?

THE DEFENDANT:  *(Nods head up and down.)*

THE COURT:  I can't hear you.

THE DEFENDANT:  Yes.

THE COURT:  Do you need any more time to read them?

THE DEFENDANT:  I do not, Your Honor.

THE COURT:  Did your attorneys explain them to you?

THE DEFENDANT:  They did, Your Honor.

THE COURT:  Did you understand them?

THE DEFENDANT:  I did.

THE COURT:  Ms. Amram, do you want to contest or change anything in the presentence report other than what you've submitted in writing?

MS. AMRAM:  No, Your Honor.

THE COURT:  Do you have any further argument or anything you want to say in mitigation or otherwise present on behalf of Dr. Ridley-Thomas?

6

MS. AMRAM:  Yes, Your Honor.

THE COURT:  Would you approach the lectern, please.

(Pause in the proceedings.)

MS. AMRAM:  Thank you, Your Honor.

There have been a number of cases in this district lately about public corruption.  A few of them are still pending.

In one of them, Paul Paradis took -- I think it was $30 million in a -- was part of a $30-million scheme in which he personally took $2 million related to corruption at the Department of Water and Power; and for that case, the government has recommended an 18-month sentence.

For Mitch Englander, who took bags of cash in Las Vegas totaling $15,000 two times in the casino bathroom, as well as received escorts in his room paid for by codefendants, he received a sentence of 14 months from a judge in this courthouse.

We're here today for a very different type of case.  Whatever you think about what Dr. Mark Ridley-Thomas did and what the jury found, this is unequivocally a very different case.

It is, first and foremost, a novel application of the federal bribery law in which a person was bribed with their own money in which it is undisputed that the item that

was at issue passed unanimously on a consent calendar with no objections or controversy after having gone through the full process at the Board of Supervisors without any process -- part of that process skipped in which the staffers who vetted the proposal approved it and were enthusiastic about it and in which the government presented no evidence, not a single witness of any pressure by Dr. Ridley-Thomas.

So we are here today in this unusual case with the two sides asking for a very different result.  We have the government asking for six years, a very long time in prison for a man who is almost 70 when this same office requested 18 months and far less for Paul Paradis and far less for Mitch Englander.

We have situation in which probation, a neutral fact-finder, requested a dramatic downward departure from guidelines of 97 to 121 to 18 months.

THE COURT:  They recommend.  They don't request.

MS. AMRAM:  Recommend.  I apologize, Your Honor.

And we have a situation in which that neutral fact-finder, probation, found that Dr. Ridley-Thomas was -- conduct was equivalent to his codefendant Marilyn Flynn who this Court sentenced to probation at the government's request.

So why are we here with the government asking for

six years for Dr. Mark Ridley-Thomas?

They spell it out quite explicitly in their brief because he has -- and I quote -- refused to accept responsibility.  They say that over and over again, multiple times in their initial filing, on the first page of their response to our sentencing memo.

They said -- and it's worth quoting -- "Defendant has completely failed to accept any modicum of responsibility and, worse, has undermined the public's faith in the judicial process all to preserve his image."

They also said:  "To this day, even after the jury's verdict, defendant has conveyed zero acceptance of responsibility.  Defendant cannot bring himself to acknowledge any wrongdoing whatsoever."

Dr. Mark Ridley-Thomas has not said a single word during this entire case.  He has sat there at counsel table next to me for 20 months and said nothing.  He has said nothing in this Court.  He has said nothing to the press.

So why does the government think that he has conveyed zero acceptance of responsibility; that he has failed to acknowledge any wrongdoing whatsoever?

The only thing he did was go to trial.

What distinguishes Mark Ridley-Thomas from Marilyn Flynn, from Paul Paradis, from Mitch Englander, is that he went to trial as he is constitutionally allowed to

9

do, as any defendant is allowed to do in even a weak case and even a case where there is a videotape of the person committing the crime.

This was not that case.  It was a novel application of the federal bribery statute.  It is perfectly understandable that Dr. Mark Ridley-Thomas would go to trial.

Now, does the government say it is because he went to trial that we are asking for six years?

No.  They say he failed to accept responsibility. They say it over and over and over again.

He is already punished in the guidelines for the fact that he did not plead guilty by losing a three-point reduction in the guidelines.

So why, again, does the government keep saying he refused to accept responsibility, he refused to accept responsibility, when he has said nothing?

What the government says in black and white, quite shockingly in their sentencing memo, is two things.  One, they reference defendant's post-trial litigation and, two, they reference Twitter posts by third parties.

As to the Twitter posts, both third parties obviously have a First Amendment right to say that.  There is no basis whatsoever to attribute those to Mark Ridley-Thomas; to say that he feels as they do or to say

that he can be punished for a third party exercising their First Amendment rights.

As to his post-trial litigation, we filed three things post-trial:  A motion under Federal Rule of Criminal Procedure 29, a motion under Federal Rule of Criminal Procedure 33, and objections to the presentence report in addition to the filings that are before the Court today on the sentencing memorandum.

So at the time that the government wrote this, they typed out that Mark Ridley-Thomas should receive a higher sentence because of his post-trial litigation.

The only things that we as his lawyers had done were file post-trial briefing, permitted under the federal rules, and presentence report objections that we are required to file.

THE COURT:  I didn't pay any attention to that, Ms. Amram.

MS. AMRAM:  Thank you.

But I do think the Court should consider how much it should take into account the government sentencing recommendation, when it puts in black and white that his sentence should be increased because his lawyer -- we are constitutionally obligated to defend him -- filed very standard filings that happen post-conviction.

The other reason why the Court should question the

government's sentencing recommendation is that the government, when Marilyn Flynn pled, the government put proposed sentencing guidelines in that plea agreement with Marilyn Flynn.

Those sentencing guidelines used a hundred thousand dollars as the loss amount under 2C1.1.  When the government and Marilyn Flynn presented that plea agreement to Your Honor, they had a duty of candor to you, to this Court.

Those sentencing guidelines that they recommended to you are supposed to be accurate.  They are not supposed to do sentencing guidelines that they do not believe are correct as part of some sort of fact-bargaining in a plea and there is case law on that.

The fact that when probation then recommended a different way to calculate loss amount, the government responds by saying:  Probation is correct.  The higher amount should prevail because they knew then that that's what would apply to Mark Ridley-Thomas.

That's a problem.  Both sentencing guidelines were based on the Telehealth Contract.  There is no basis to calculate Mark Ridley-Thomas's sentencing guideline, the loss amount for the Telehealth Contract differently for Mark Ridley-Thomas than there is for Marilyn Flynn.

The government cannot calculate a sentencing

guideline differently based on a defendant who went to trial versus a defendant who pled, not when that sentencing guideline is based on the same conduct and the same set of facts.

We're still here talking about the Telehealth Contract.  It's either 530- or it's a 100K or it's nothing.  But whatever it is, it cannot vary between Mark Ridley-Thomas and Marilyn Flynn.

And if the government believed that a hundred thousand dollars was the proper way to calculate those guidelines when it presented Marilyn Flynn's plea agreement to the Court, it is ethically obligated to say the same thing for Mark Ridley-Thomas.

The guidelines did not change between when Marilyn Flynn pled and Mark Ridley-Thomas was convicted at trial.  The commentary to those guidelines listing out how the loss amount should be calculated did not change between those two events either.

Now -- and just one other point on that.  In their presentation to Your Honor on Marilyn Flynn's sentencing asking for this Court to dramatically depart downward to give her a sentence from about -- from over four years to probation, the government repeatedly said that Marilyn Flynn had profuse acceptance of responsibility above and beyond the normal plea.

13

That is not accurate.  She did not plead early. She pled almost a year into the case and only after the government made a no-time recommendation and after she had filed motions.

This is not a situation in which someone cooperated, did a pre-indictment plea, pled early before litigation.  It was a fairly last-minute plea.

I now want to turn to how the loss amount should be calculated.  Probation and the government are advocating for using the full value of the Telehealth Contract at $530,000.

That is incorrect under both binding precedent and the United States Sentencing Guidelines.  Would like to note first that the government in its response to the defense sentencing memorandum addressed at least one Ninth Circuit case, *White Eagle*, not very well, but they addressed it.

They ignored completely the commentary to the guidelines, 2C1.1, in which the United States Sentencing Commission explains how loss amount is calculated under 2C1.1, specifically, that it has to be the net benefit and that in a contract that was obtained corruptly, if you have a $150,000 contract and a 20K profit, that the correct loss amount would be 20K.

That is stated in the sentencing guidelines commentary and there is case law that case the guidelines

14

commentary is controlling and authoritative on the Court. The government has addressed none of that ever in any of its filings.

So even if this Court found the *White Eagle* case to not be dispositive for some reason -- and it's squarely on point -- there has been no response whatsoever from the government on that commentary in the guidelines that specifically outlines this contract, this exact situation, a contract that was obtained and you have to look at what the net profit is.

So how would one do that?

In the Telehealth Contract, if you actually look at the exhibit -- I believe it's 476 -- on pages 45 and 49 of that contract, it spells out the ways in which USC was supposed to be reimbursed.

There's conditions about how to submit invoices. They are capped at 60,000.  It talks about the expenses.

So how the government actually want to make the showing that they're required to make under 2C1.1, they would have had to contact USC and present to this Court evidence -- documentary evidence or witness testimony -- about what USC actually received on the contract and what the costs were on it.

So what did USC bill on it?  What did they receive?  And what were the costs that they spent doing the

work on the contract?  That net profit could be considered loss under 2C1.1.  The government did not do that.

There is no authority whatsoever for using a total contract amount when it was an actual legitimate contract where work was done on it, which this was, as using that for the loss amount.

If this was a case under 2B1.1, then the Court can use intended loss but there is no provision under 2C1.1 for bribery for intended loss.

The words "intended loss" do not appear in that guideline and the Court is required to base it on what is the net profit on the contract which the government has presented no evidence.

So we'll talk to-- about whether or not in a little bit about whether or not it should be clear and convincing or preponderance of the evidence.

But it doesn't really matter because the government presented no evidence whatsoever so they cannot meet a preponderance standard.

Now, in addition under *White Eagle*, the Ninth Circuit has said that the Court must take into account the benefits that would have been received in any event absent any corruption.

Here, because Telehealth was on the consent calendar, passed unanimously, it would have passed even if

16

supervisor Ridley-Thomas had exempted himself from the vote.

There is no evidence whatsoever -- and it is the government's burden -- to show that the Telehealth Contract would not have passed absent any of whatever happened between Marilyn Flynn and Dr. Mark Ridley-Thomas.

So this Court has no basis for saying that the Telehealth Contract amount, the total amount of $530,000, is loss amount under that contract.

The government in some ways concedes as much in its filing to the -- in its filing that was -- or response or sentencing memo in which it says -- then gives all the reasons why a hundred thousand dollars would be the proper amount.

And we briefed this extensively and so I'm not going to go on and on about this but, Your Honor, this was not a situation in which a person handed, from their own -- from their own money a hundred thousand dollars to Mark Ridley-Thomas.

That's what happened in Mitch Englander's case when he got a paper bag full of cash.  That's not what happened here.

The Court knows the facts.  The Court sat in the trial.  But this was money that came from Mark Ridley-Thomas's Ballot Committee account to USC and then to a nonprofit.  So this is not the typical bribery

case.

There is no authority one way or another about whether or not the money originates from the defendant that that can somehow be used as the benefit to the defendant in a bribery case.

The closest analogue we found was in the college admissions cases where money passed between codefendants so it was the parents own money, for example, that went to a codefendant; and the Court there found that that was not a loss and that the guidelines could not be increased for loss amount.

Now, on just briefly on the clear and convincing versus preponderance standard, because I know the Court requested additional briefing on that, the Ninth Circuit has said quite a few times that it's a totality of the circumstances test.

It then says in particular, in cases in which the conduct is related to the crime of conviction, you can use preponderance but it is not a requirement.

And there are cases in which the conduct appears to be part of the crime of conviction in which the Court has nevertheless required the clear-and-convincing standard.

The case on 1326, I believe it was the *Valley* case, is an example of this.  The government states it was about the drug quantity.  It was not.  It was about how long

18

the defendant had had continuous presence in the United States which is part of the crime of conviction and the Ninth Circuit found that that needed to be a clear-and-convincing standard.

In the *Lonich* case, which was recently decided in 2022 by the Ninth Circuit, the Ninth Circuit said that that needed to be clear and convincing evidence.  That was a case in which a bank and outsiders had basically had arranged a number of fraudulent loans and the bank collapsed.

And so in determining the loss amount, the Ninth Circuit said that there needed to be a clear-and-convincing standard applied as to whether or not the defendant was responsible for the collapse of the bank.

Here we have an unusual situation.  On the one hand, it would seem that the amount of the Telehealth Contract would be related to the crime of conviction except the amount that the government is trying to use is not the amount of the contract amendment but the amount of the underlying contract which was not charged in the Indictment.

And as in *Lonich*, there are significant issues of causation in terms of whether or not Mark Ridley-Thomas was responsible for the fact that USC obtained the contract when it was on a consent calendar and passed unanimously.

So for that reason the Court has discretion.  The Court always has discretion as to whether or not to use a

clear-and-convincing standard or a preponderance-of-the-evidence standard.

The Ninth Circuit has certainly not mandated a preponderance-of-the-evidence standard in a case where the facts relate to the crime of conviction if that's even the situation we have here.

But as I said before, because the government has presented no evidence whatsoever, we don't find it dispositive what particular standard the Court uses; and it is admittedly an extremely confusing body of case law.

The last thing I would like to discuss are the 3553 factors that apply to Mark Ridley-Thomas.  Over a hundred-thirty people wrote letters to this Court.  The government says that's because he's a politician and a public servant and he can get people to write letters.

The Court has seen more cases than I have.  There are a lot of high powerful people who come in here.  I don't know if any of them have letters quite like that.

It wasn't just letters from people who are powerful.  It wasn't just letters about what he's done in his job.  It was letters from all sorts of people.

To me the most powerful letter of all was from the woman who had the garbage that kept being dumped in the alley behind her house and she kept calling and calling and calling and calling and calling and calling, trying to get

20

it cleaned up and nobody ever came to clean up and she got the runaround.

And as anybody who's lived in the city knows -- I live in a city -- that's what happens; and then Mark Ridley-Thomas gets elected and the next day the garbage is gone.

It was the letter about how he would ride around and drive around his district visiting all the parks and then calling the person who was in charge of the parks to say: This is the park that needs to get fixed and having that person come and find on a Sunday afternoon to look at the park that needed to get fixed.

It was his employees who have to live with the shame of this case as much as he does and are still writing publicly filed letters talking about how much he supported them, how much he inspired them, how much he mentored them.

It's about his family who talked about what he is like as a grandfather and as a husband.

Your Honor, Mark Ridley-Thomas had a very, very, very hard childhood; and you and I and other people who do this job and are in courtrooms like this all the time have seen people with those childhoods come before judges, you and other judges like you.

Almost all the time their life story does not take the arc that Mark Ridley-Thomas's did. The trauma that they

endured as children defined them, the poverty they grew up with defined them, and they come before you having made mistake, mistake, mistake, crime after crime after crime, bad decision, after bad decision, after bad decision.

They are often not devoted husbands of 44 years and devoted fathers.  They are often not people who have led lives of service for 30 years.

When you look at Mark Ridley-Thomas's childhood growing up in a very impoverished neighborhood with a father who was addicted and absent, with a mother who died of cancer at nine years old, basically orphaned, raised by his blind grandmother after his beloved grandmother died -- grandfather died just a few months after his mother did.

That is not a story that normally ends with how Mark Ridley-Thomas's story has gone.  He took what happened and he made an extraordinary life for himself and for the people that he has served.

And his achievements, the government diminishes them by saying, well, that's what public servants are supposed to do, not like this, not MLK hospital.

This is a level of exemplary public service that goes beyond what people oftentimes expect from public servants, whether they should or should not.  This is above and beyond.  MLK hospital is above and beyond.

What we are asking is that the Court recognize

22

that that story, that those decades of service, that childhood, all of it, that is mitigating, not as the government seems to suggest, aggravating.

We ended our sentencing memo with a quote from a recent Supreme Court case about how this Court, when it views Mr. Ridley-Thomas today, Dr. Ridley-Thomas today, must view him not just on this day but through his whole life and we ask that you do that.

Thank you.

THE COURT:  Thank you.

Dr. Ridley-Thomas, is there anything you would like to say before I sentence you?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Would you approach the lectern, please.

(Pause in the proceedings.)

THE DEFENDANT:  I'd like to say good morning, Your Honor, again to you.

THE COURT:  Good morning.

THE DEFENDANT:  And I want to thank you for the opportunity to address the Court.

I've had a full and intense 20 months to reflect on the circumstance in which I find myself.  It is true that I have chosen to exercise my constitutional rights as a citizen to offer the best possible defense for myself.

But I feel it's very important, Your Honor, to make clear to you that I in no way want to convey anything but respect for you and for this Court.

Further, I want to assure you that when this is completed, I will accept the outcome of this judicial process and give full and respectful compliance in accordance with the law.

Your Honor, I believe it's fair to say that this case exists somewhere between what is clearly legal conduct on one end and clearly illegal conduct on the other.

In between, there's a line that distinguishes actions that are illegal and actions that may be ill-advised but not illegal.

While I definitely disagree as to whether I crossed that line into illegal conduct, I acknowledge with clarity where I belonged was at the end of the spectrum where there would be little, if any question, of even the appearance of unlawfulness.

The very perception that I deviated from proper conduct in this matter is truly distressing as well as harmful and, Your Honor, I deeply regret it.

My actions and the fallout from those actions have hurt my family beginning with my wife of 44 years who should never have had to go through an ordeal like this.  I apologize to her with every breath and with my whole heart.

24

And I apologize to my sons, my daughter-in-law, my grandchildren, as well as other family members whose lives have been disrupted and traumatically impacted.

Additionally, the anguish that I feel causes me to say I'm so sorry to all of my constituents, colleagues, and employees who have believed in me for many years but who now have doubts.

I sincerely apologize to them not only for playing a role in bringing about those doubts but also for no longer being able to be there for them in service.

I can only trust and believe that the future will afford me the opportunities to continue to find ways to serve them and their families, to remove doubt and to restore faith.

Your Honor, I give you and my former constituents and all those here today my pledge that I will find a way to continue to learn from this devastating experience, to emerge from it as a more conscientious person and to go forward once this is behind us with humility, with renewed commitment to service, and with undaunted hope for a purposeful life dedicated to the communities who rightfully expect and deserve the very best of me.

Your Honor, I thank you.

THE COURT:  Thank you.

From the government?

25

(Pause in the proceedings.)

MS. DOTSON:  Thank you, Your Honor.

May I proceed?

THE COURT:  Yes.

MS. DOTSON:  I'd like to start by answering defense counsel's question:  Why are we here with the government asking for six years?

We are here because one of the most powerful politicians in Los Angeles corrupted his elected office.  He leaned on Marilyn Flynn when he knew that Marilyn Flynn was desperate for county contracts and his assistance.  He used his position of power as a bargaining chip to get personal private gain for himself and his family.

Contrary to what the defense has said throughout this case and in its sentencing positions, monetizing one's position is a crime.  Going around with your hand out making anyone think that your vote on a matter or your help with government business is contingent on that person giving you or your family any sort of perk or benefit is a crime and it's a really serious crime.

It's a crime that breeds skepticism about our government leaders.  It's a crime that undermines the public's trust in government and that's why the guidelines are calculated the way they are in this case.

Probation properly calculates the guidelines at 97

to 121 months, and the government is fully prepared to support the defendant's request for minus two for zero criminal history points assuming, of course, that the amendments to the guidelines will go into effect provided, of course, that the defendant doesn't come before the Court four, five, six months from now and asks for even greater leniency once those amendments take effect.

But even giving the defendant that benefit, the guidelines are still 78 to 97 months.

I'd like to address the guidelines and start with the standard of evidence in this case for the 12-level enhancement.  It is not clear and convincing evidence and I'd like to point out one thing.

Since the government filed its reply to the defendant's sentencing position, in the Lucas case the Ninth Circuit has actually granted *en banc* review to the issue of whether or not the clear-and-convincing standard is ever appropriate in a post-*Booker* advisory guidelines regime. The government's position is certainly that it is not.

But even taking the law as it is, the standard of clear and convincing evidence is not appropriate here where the enhancement is based on the offense of conviction; and the value of the Telehealth Contract is certainly based on the offenses of conviction.  It's central to them.

Because of that, the standard is and always has

27

been preponderance of the evidence.  I am happy to address the Court if the Court has any concerns about the standard but the standard is preponderance and the government filed a lengthy response on this issue.

If the Court doesn't have any questions about the standard, the facts here support the 12-level enhancement for the value of the Telehealth Contract; and that's the enhancement that the Court applied in Marilyn Flynn's sentencing on the same facts and it's what probation has recommended even in spite of the arguments counsel just made.

If the Court has any questions about the evidentiary sufficiency for the 12-level enhancement, I'm happy to address the Court.

THE COURT:  I've read your papers.  Unless you have something to add, I don't need anything further.

MS. DOTSON:  No, Your Honor.  Thank you.

Your Honor, in this case the defendant is somebody who knew right from wrong and he chose wrong over right repeatedly; and I say "repeatedly" intentionally because throughout the course of a year with Marilyn Flynn the Court saw it in emails and documents and witness testimony, he continued to lean on her.  He continued to use his position of power, his public service as a bargaining chip to get her to jump, to get her to deliver benefits for his son and

really himself.

I say "repeatedly" also because his conduct was in no way aberrant.  The conduct with Marilyn Flynn was not the only conduct in this case.

As the government pointed out in its sentencing position, as the government filed exhibits and emails from the defendant and his son, the government has pointed out in an entirely separate instance, separate and apart from Marilyn Flynn, the defendant again monetized his position.

When a lobbyist came to him representing a company that didn't like a particular motion that Supervisor Sheila Kuehl had put forth, was bad for business in the short-term rental market, the lobbyist told the defendant: We need an amendment to this motion.  I'm going to call you.

Three days later, that lobbyist sends the defendant language for the amendment to the motion.  The defendant then copies and pastes that language verbatim and sends it to a high-level county official.

And instead, of course, saying that the language came from a lobbyist representing Company A, as we're calling the company in public filings, he presents it as his own:  You know, I just been thinking about when we were discussing this motion, that this amendment would be good.

Then just a few days later, all of a sudden, his son Sebastian Ridley-Thomas is having a meeting with a

29

high-level executive from Company A with that lobbyist to propose a $50,000 partnership between that company and PRPI.

And the defendant can't say he wasn't aware of it. Not only is it clear he orchestrated it, but the lobbyist in emails is keeping him updated on the progress of that partnership.

For the defendant to stand here today and suggest that his conduct was aberrant; that it was on some sliding scale between legal and illegal and this was just a one-off bad mistake is just not the case.

Your Honor, the defense has called this a different type of case and I agree with that. It is a different type of case.

There are two types of corruption in this world. There's the back alley corruption and there's the boardroom corruption. The kind that's seedy that happens with cash in paper bags and then the kind that happens by sophisticated powerful people like the defendant who use their public service as a bargaining chip to get their way, to get personal perks and benefits.

And the latter kind, the polite kind, the sophisticated kind, is very hard to root out. The government cannot police all corrupt actors but what this Court can do is send a powerful deterrent message for corrupt actors to police themselves and that -- that is why

30

the government is asking for the sentence in this case.

The guidelines, whether they're 97 to 121 or 78 to 97, the government still is asking for a downward variance. A downward variance for a defendant who went to trial and he has not accepted fully responsibility for the conduct in this case.

The government recognizes that this defendant has done a lot for the community and asks the Court in its sentencing position papers to consider that. But the difference is that that service to the community is not worth an 80 percent downward variance in the guidelines range.

That's because all politicians, particularly the most powerful among us, are people who have served the community. That's how you get elected and that's how you stay in power. It's how you build a reputation and stature in the community.

A politician acts for the good of the community. It serves his own personal interest as much as it does the community and the public. An 80 percent downward variance in the guidelines range sends an anti-deterrent message, sends a message that white-collar defendants, powerful defendants, get a slap on the wrist. Boardroom corruption needs more.

Your Honor, one other thing that the defense has

mentioned today is the sentences of Paul Paradis and Mitch Englander and the government's recommendations in those cases.  I'd like to address each of those.

Paul Paradis is somebody who pre-indictment, long before the government even had a case related to DWP, cooperated.  He's somebody -- there are hundreds of recordings in that case that the defendant made.  This is a cooperator who has accepted responsibility.  In no way, shape, or form is that conduct in any way similar to the defendant's here.

Same thing with Mitch Englander.  Somebody who cooperated, pled pre-indictment.  In no way, shape, or form are these cases similarly situated and neither are the defendant and Marilyn Flynn's.

Look, Marilyn Flynn is not a victim.  Marilyn Flynn jumped eagerly and willingly when the defendant had his hand out because she was desperate and she needed those county contracts.

But she wasn't the public official, she wasn't the originator or creator of this corrupt scheme.  And at times Marilyn Flynn felt immense pressure to serve the defendant, pressure to the point that she worries about getting in trouble with him if she doesn't move that 100K through USC.

She's also somebody who accepted responsibility.  She's somebody who pled pre-indictment.  She's somebody who

32

provided government information it did not know about the wrongdoing and her own criminal conduct in this case.  They are not similarly situated at this point in time.

Your Honor, unless the government has anything further, the government would ask this Court for significant sentence in this case, not just to punish but to send a powerful deterrent message that no one, no matter how powerful you are, is above the law.

Thank you.

THE COURT:  Ms. Dotson, I'll address the defense objections concerning victims in a few minutes but has the government provided notice of the proceedings to the victims that it asserts?

MS. DOTSON:  Yes.

THE COURT:  Is there anyone here, a victim or a victim representative, who wishes to be heard?

MS. DOTSON:  No, Your Honor.

THE COURT:  Thank you.

MS. DOTSON:  Thank you.

THE COURT:  Did you want to respond briefly, Ms. Amram?

MS. AMRAM:  Your Honor, if the -- just brief response on the Company A issue.

I don't know how persuasive the Court found that but I did want to just point out two things.  One, under the

33

current Ninth Circuit law, that would need to be resolved by clear and convincing evidence because that is beyond dispute, not part of the crime of conviction.

THE COURT:  The Court is not going to consider that.

MS. AMRAM:  Thank you.

Nothing further, Your Honor.

THE COURT:  The defense objects to the presentence report asserting that Dr. Ridley-Thomas should receive a two-level reduction based on the proposed new Section 4C1.1 of the sentencing guidelines.

This is not a proper objection to the presentence report as the probation officer certainly should not have applied a reduction to the guidelines offense level based on a proposed amendment.

The probation officer did recommend a significant variance based in part on Dr. Ridley-Thomas's lack of criminal history.

It is not certain that the proposed amendment will be approved.  However, the commission announced just last week that it had voted for delayed retroactive application.

There's no dispute that Dr. Ridley-Thomas would be eligible for the reduction if it were in effect today.  The government has no objection to application of a two-level variance pursuant to *Ruiz-Apolonio* if Dr. Ridley-Thomas

34

agrees that he will not later seek a further reduction based on the proposed amendment.

Does Dr. Ridley-Thomas agree to that, Ms. Amram?

MS. AMRAM:  Yes, Your Honor.

THE COURT:  Is that correct, Dr. Ridley-Thomas?

THE DEFENDANT:  It is, Your Honor.

THE COURT:  Then I will apply a two-level variance based on the proposed amendment and relying on Dr. Ridley-Thomas's agreement not to seek a further reduction related in any way to the proposed amendment.

The defense also objects that there is no victim of the offense.  I agree with the government's response. There are two separate issues.

First, whether there was a victim and, second, whether any victim should be awarded restitution.  First and most obviously, the entire community has been victimized by defendant's crimes as the community always is when the trust placed in a public official has been betrayed.

If there were any doubt, the letter from Bernard Parks, a former public official himself, asserts that it is not only the community that suffers when elected officials are involved in self-dealing but also their colleagues and other elected officials.

I agree that each time a public official is found to have acted corruptly, especially one as well-known and

35

well-respected as Dr. Ridley-Thomas, the public's view of its elected officials as a group suffers and its trust in their integrity is eroded.  This problem becomes more obvious with every news cycle.

Both USC and United Ways have also been injured in various ways perhaps most notably by the time, inconvenience, and expense involved in connection with this matter.

Because no restitution has been requested, I do not need to make any findings as to restitution.

In the objections in the sentencing position, the defense argues that the 12-level enhancement under Guideline Section 2C1.1(b)(2) does not apply.

The offense level for these crimes is to be determined pursuant to Guideline Section 2C1.1.  Under Section 2C1.1(b)(2), I am to determine whether and in what amount to increase the offense level based on the value of the payment, the benefit received or to be received in return for the payment or the value of anything obtained or to be obtained by the public official.

The parties agree that the government has the burden of establishing the relevant amount but disagree about what the burden is.

The defense argues that the clear-and-convincing standard applies when an enhancement would have "an

extremely disproportionate" effect on the sentence relative to the offense of conviction.

The government argues in its position paper, response to objections in response to the defense sentencing position, that the preponderance-of-the-evidence standard applies because there is no heightened burden when the enhancement is based on the offense of conviction as it is here.

I agree with the government's analysis based on the Ninth Circuit cases it cites.  The government also discusses *U.S. v. Valensia* which established factors to be used in determining whether an enhancement has a disproportionate effect.

I again agree with the government's conclusion that only the fifth and sixth *Valensia* factors would suggest that the clear-and-convincing standard should be used here. Therefore, the preponderance-of-the-evidence standard applies.

To preserve the issue, the government also argues that cases imposing a clear-and-convincing standard are no longer valid in any context and cites the partial concurrence in an unpublished decision, *U.S. v. Buchan*, that relied on the fact that post-*Booker*, the guidelines are no longer mandatory and mentioned the *Lucas* case here.

I do not need to address that issue.

37

The defense argument that there was no value at all or that there's no possible way to determine the value simply ignores the evidence.

There is no doubt that the Telehealth Contract itself had a stated value in excess of $530,000.  I agree with the government that there was an expectation of substantial profit from and related to the amendment even far in excess of the face amount of the contract.

Dean Flynn expected millions of dollars to flow to the School of Social Work if the contract were amended.  I adopt the government's analysis of the facts and evidence on this issue.  The government's position is supported by documentary evidence and testimony.

Dean Flynn believed that the amendment would basically save USC's social work program.  Had the amendment not had substantial value to USC, it could not have been used as a bargaining chip in what the government refers to as a shakedown.

Dean Flynn's desperate efforts to obtain the amendment and her evaluation of the funds it would bring to USC, as well as the significant risk she was taking, her expressed concern about the trouble she would be in if she did not comply with Dr. Ridley-Thomas's demands, and her joy and relief when she believed she had achieved that goal are evidence of the substantial value the amendment had in

38

addition to the other evidence the government describes in its filings.

The value in excess of $250,000 was established by at least a preponderance of the evidence.

Dr. Ridley-Thomas's seeming argument that the amended Telehealth Contract had little or no value is also belied by the fact that so much time and effort were spent in accomplishing the amendment both by Dr. Ridley-Thomas, the Board of Supervisors and their staff, other county employees, and Dean Flynn.

In addition, the amendment passed with each of the expanded terms Dean Flynn requested from Dr. Ridley-Thomas to achieve that result.

I agree with the government that the 12-level enhancement is proper based on the Telehealth Contract amendment.  The defense objection is overruled.

The government also refers to the $100,000 payment and the other benefits to be provided to Sebastian Ridley-Thomas.  It notes that the $100,000 payment, that on its face was being funneled to USC pursuant to the bribe, was actually to be funneled immediately to United Ways instead.

I agree with the government that this payment establishes a $100,000 value by any standard.  Contrary to the false narrative created by Dr. Ridley-Thomas, the money

was not to be used by USC as it saw fit.

He obtained a commitment by Dean Flynn that it would immediately be sent to United Ways to benefit Sebastian Ridley-Thomas, and he gave her a strict deadline. And there was abundant evidence that the money would have benefited Sebastian Ridley-Thomas directly or indirectly. That was the entire purpose of the sham contribution to USC.

The defense contends that Dr. Ridley-Thomas didn't take money. He lost it. He certainly did not receive a bag of cash but to say he lost money is a gross mischaracterization and not the relevant analysis. He didn't lose any money at all.

Dr. Ridley-Thomas was desperate to obtain benefits directly or indirectly for his son, including to get $100,000 to some entity where it could benefit his son to somehow help distract from the claims of sexual harassment that were likely about to be revealed.

He had tried to do so earlier with a contribution directly to PRPI without a cover-up of a contribution to USC, but that effort was unsuccessful.

Largely because of the nepotistic optics, he had to accomplish his goal some other way. The contribution needed to assist Sebastian Ridley-Thomas, even if legal, simply could not be accomplished without fraudulently funneling it through USC.

40

The defense argument that there was no value is simply wrong.  The value was unquestionably the $100,000 that ended up exactly where Dr. Ridley-Thomas needed it to go to help his son but by a surreptitious process that masked its source violated USC's rules and policies and would not have been approved by that institution.

Dean Flynn deceived her employer and funneled $100,000 to United Ways in exchange for Dr. Ridley-Thomas's vote on the Telehealth Contract amendment.

Government also argues that the full scholarship, salary, and benefits that Dean Flynn was arranging to provide for Sebastian Ridley-Thomas should be considered as part of the conspiracy charge for which Dr. Ridley-Thomas was convicted and, therefore, the value of those added to the $100,000 also justifies the 12-level enhancement.

The defense disagrees and cites the probation officer's conclusion that "There appears to be insufficient information that these items were in connection with a bribe."

But the probation officer did not attend the trial.  Both the defense and the probation officer are clearly wrong.

Even if those benefits are considered acquitted conduct rather than conduct of which Dr. Ridley-Thomas had been convicted under the conspiracy count and if the

41

government, therefore, had to prove the value by clear and convincing evidence under *Hymas* or *Treadwell*, it has done so.

As case law makes clear, acquitted conduct can be considered in determining a defendant's sentence but to do so under the circumstances of this case would cast doubt on the fairness of the proceedings and I decline to do so.

I find the report to be accurate and correct in all material respects except as I state during these proceedings.  I otherwise adopt the report and the calculation of the advisory sentencing guidelines.

The advisory guidelines are the starting point and the initial benchmark in the Court's analysis.  I am consulting and taking into account the current edition of the guidelines.

The total offense level is 30.  The criminal history category is I.  The guideline range for custody is 97 to 121 months.  The guideline range for supervised release is one to three years.

The guideline range for the fine is $30,000 to $250,000, and the special assessment to the Crime Victims Fund is $700.

In making an individualized determination based on the facts, I'm also considering the factors described in 18 United States Code, 3553(a), especially but not

42

exclusively the nature and circumstances of the offense and the history and characteristics of the defendant; the need for the sentence to reflect the seriousness of the offense, to promote respect for the law and provide just punishment; to afford adequate deterrence for criminal conduct and to protect the public from further crimes of the defendant.

I'm also considering the kinds of sentence available and the need to avoid unwarranted sentence disparities among defendants with similar records who have been convicted of similar offenses.

Unlike the vast majority of cases, the nature and circumstances of the offense here are established not merely by a brief description in a plea agreement or statements and other evidence gathered by law enforcement and prosecutors and provided to the probation officer.

The facts here were presented to a jury in substantial detail over twelve days of trial, through documentary evidence and testimony before this Court.

They are as summarized by the government in its sentencing position and I adopt those facts as supported by the evidence.

Dr. Ridley-Thomas claims that we are here because he supported the Telehealth Contract amendment.  That is not true.  We are here because over the course of many months Dr. Ridley-Thomas convinced Dean Flynn that unless she did

43

his bidding by way of providing things that would benefit his son Sebastian, he would not support the amendment.

That might have been a lie because he intended to support it anyway.  But Dean Flynn was sufficiently convinced that she was willing to risk prison and the end of her own career.

We are here because the evidence proved beyond a reasonable doubt that Dr. Ridley-Thomas used his position and power to bribe the Dean of USC School of Social Work not for bags of cash but for benefits for his son who was under scrutiny for claims of sexual harassment while serving as a member of the California State Assembly, a position he had resigned claiming health concerns.

The government asserts that this potential problem at the height of the #MeToo Movement was not only a threat to Sebastian but, by association, a threat to Dr. Ridley-Thomas.

After all, the government argued, Dr. Ridley-Thomas was a career politician whose power, livelihood, and stature were tied to his elected office which rested on his reputation.

The government referred to the Ridley-Thomas political brand and Dr. Ridley-Thomas's then plans to run for Mayor of Los Angeles.

Dr. Ridley-Thomas himself now claims that with the

loss of his political career he faces a desperately uncertain financial future.  Even if true, that is a natural consequence suffered by most convicted felons and their families.

I don't know whether the jury agreed that Dr. Ridley-Thomas was protecting his own brand but there were certainly overwhelming evidence that both Dr. Ridley-Thomas and Sebastian Ridley-Thomas feared that the allegations were potential career-ending and reputation-destroying problems for Sebastian and that Dr. Ridley-Thomas was personally focusing a great deal of time, effort, and funds to divert attention from those problems.

Whether he committed these offenses for the benefit of his own reputation and career or his son's or both is not particularly relevant.

As the jury found beyond a reasonable doubt, he committed conspiracy, bribery, and honest services mail and wire fraud in pursuit of that goal.

I agree with the defense that this case is not typical.  The form of the *quid pro quo* was unusual.  The defense argues apparently correctly that Dr. Ridley-Thomas intended to vote for the Telehealth Contract amendment even without a bribe and that the Telehealth Program benefited the community.

I assume these facts to be true for this purpose, though Dean Flynn obviously was not at all certain that the amendment was a sure thing and she unquestionably believed she needed to provide whatever Dr. Ridley-Thomas demanded of her in order to get the amendment passed on her desired terms.

If she had thought otherwise, there would have been no reason to have spent the extraordinary amount of time and effort that she did, much less risk prison to obtain it.

That Dr. Ridley-Thomas apparently was in favor of the amendment anyway is not a particularly mitigating factor.  It was his job to support anything that would help the community he was elected to serve but he used his support as a bargaining chip to get benefits for his son.

Nevertheless and notwithstanding that I find the 12-level enhancement to be proper, I acknowledge that the nature and circumstances of the crimes here are unique compared to most bribery and honest services cases.

The facts on both sides of the bribe are unusual. The determination of the value of the Telehealth Contract amendment is arguably complicated and, as counsel noted, the cases are confusing and there appears to be no question that Dr. Ridley-Thomas intended to vote for the amendment.  But to some degree that makes Dr. Ridley-Thomas's conduct in a

46

shakedown even more troubling.

I'm also considering that in the plea agreement with Dean Flynn the government agreed to a sentence range that reflected an enhancement based on the $100,000 payment as the value of the bribe and argued for that calculation at her sentencing.

Though I'm not necessarily accepting the defense description, I find that because of the unique circumstances of this case, it is more appropriate to focus on the more general nature of the conduct rather than a precise number.

Considering all of these facts, I find the nature and circumstances of the offense to be somewhat mitigating compared to the calculated range.

As for the history and characteristics of the defendant and references to his age and health, I note that a not insignificant portion of the Bureau of Prisons' population is the same age as Dr. Ridley-Thomas or older.

Based on testimony I have received in other cases and medical evidence submitted, especially in connection with recent requests for compassionate release under The First Step Act, I find that many inmates have conditions as significant as his and even more serious and are being ably treated for those conditions.

Neither his age nor his health are significant or serious enough to convince me that Dr. Ridley-Thomas should

47

receive a variance based on those factors.

There is no question that Dr. Ridley-Thomas's incarceration will have an impact on his family.  He has a loving wife, children, and other family members who will miss him.

But his family is far more fortunate than most families of the many thousands of felons that are sentenced to prison every year.  Many of these families had difficulty making ends meet even while the breadwinner was not incarcerated.

Loss of a father, husband, or son often is financially as well as emotionally devastating.  In many cases, the defendants are not around to see their children grow up and to help raise them.

It happens here almost every Monday.

Despite the defense assertion that he faces an uncertain financial future, the information in the presentence report indicates that Dr. Ridley-Thomas's family will be much better off than most families of persons whose crimes result in incarceration.

That his family and friends may suffer while he is serving his sentence is simply the natural consequence of his commission of several federal felonies and not grounds for a variance.

I agree with the defense that neither the letters

48

I received nor Dr. Ridley-Thomas himself are typical.  His early years were filled with family tragedy but to a significantly lesser degree than the majority of defendants who appear before us.

He had a loving family and suffered no physical or emotional abuse.  Despite the loss of beloved family members, he became a leader even in high school.

As the government points out, Dr. Ridley-Thomas was one of the most formidable politicians in Los Angeles.  The letters I have received, the reported contributions, and the crowds these proceedings have drawn illustrate the extraordinary level of support he maintains despite these charges and convictions.

The government concedes and I agree that he has dedicated himself to improving the lives of his continents and helping his community in numerous ways.

I have read all of the letters many of which describe in detail the tremendous good Dr. Ridley-Thomas has done for the community.

Others describe in heartfelt terms how he has impacted their lives with his friendship and guidance.  But being a very good friend, mentor, and family member is not deserving of a variance.

In this job, judges see a lot of very good people who inexplicably do very bad things.  Dr. Ridley-Thomas is

49

one of them.  Even the government does not assert that Dr. Ridley-Thomas is a bad person but he has been convicted of doing bad things.

I agree with the government that Dr. Ridley-Thomas betrayed his office and his constituents to serve the needs of at least of his son if not for himself and his own ambition.

This was not a mistake.  He engaged in the conduct over a number of months.  He has a Ph.D. in social ethics as he pointed out during the trial.  He knew it was wrong.

The defense argues for a variance noting that courts should consider whether the conduct at issue was aberrant.  Under the guidelines, courts may grant a departure for aberrant conduct only if the conduct was committed without significant planning and was of limited duration.  Those factors are not present here.  I agree that a variance is the more appropriate consideration.

Although it does raise some concerns, I decline to consider, as I said, the government's reference to the alleged previous pay-to-play conduct in determining Dr. Ridley-Thomas's sentence.

Dr. Ridley-Thomas has done an enormous amount of good for this community and for that he has been rewarded with a loving family, true and faithful friends, and even apparently a portion of the population that refuses to

50

accept the verdict of guilty.

That Dr. Ridley-Thomas has served the community well is what he was elected to do.  To a large degree that is what allowed him to keep being elected.

Nevertheless, the many letters I received show that his service to the community has been truly extraordinary and I agree that his extraordinary service is a mitigating factor deserving of a variance.

Even the government concedes that some modest variance may be appropriate although it conditions its agreement on the Court calculating a guidelines range of 97 to 121 months.  Obviously, that's not binding on me.

But the arguably mitigating factors and 3553(a)(1) do not come close to justifying a probationary sentence or even the 18-month custodial sentence proposed by probation.

Dr. Ridley-Thomas has committed serious crimes, has not accepted responsibility and has not shown remorse for those crimes.  Only a significant prison sentence will adequately address the 3553(a) factors and the purposes of sentencing.

The most critical factors here and the ultimate goal of sentencing is for the sentence to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment, and to afford adequate deterrence to criminal conduct.

As Congress and the courts have noted, deterring others from committing similar offenses is particularly important in public corruption and other white-collar crimes.  That is because the crimes are usually premedicated and the risk can be evaluated along with the expected reward.

Dr. Ridley-Thomas's conduct here illustrates that.

The conduct occurred over a substantial period of time and involved many moving parts:  Texts or emails, meetings, negotiations, et cetera.

There were many times that Dr. Ridley-Thomas could have advised Dean Flynn that he supported the amendment because it was good for the community and he asked nothing in return for that support but he did the opposite.

Perhaps he assessed the risk and concluded he would not be caught or that despite his crimes, his years of service and reputation in the community would result only in a probationary sentence that he now asks for.

He was wrong.

Hardly a week passes that we don't learn of another instance of some public official having been involved in some corrupt act.  It occurs regularly at nearly every level of government.

I cannot comment more eloquently and convincingly on the need for a significant sentence than the words of my

52

colleague Judge Walter who noted that and I'm quoting: "Political corruption is a unique and infectious crime with rippling and enormous consequences to society.  Keeping political corruption in check has been a matter of public urgency throughout our nation's history.  The crushing weight of corruption on the integrity of every democratic element of our government has been and will continue to be a constant concern."

In addition to promoting respect for any corruption laws and deterring individuals in positions of political clout, strict sentences also serve to protect the public from further harm.

Judge Castillo of the Northern District of Illinois also aptly described how important it is to address the devastating harm of public corruption with serious sentences.  He wrote, "We need not resign ourselves to the fact that corruption exists in government.  Unlike some criminal justice issues, the crime of public corruption can be deterred by significant penalties that hold all offenders properly accountable.  The only way to protect the public from the ongoing problem of public corruption and to promote respect for the rule of law is to impose strict penalties on all defendants who engage in such conduct.  Public corruption demoralizes and unfairly stigmatizes the dedicated work of honest public servants.  It undermines the

essential confidence in our democracy and must be deterred if our country and district is ever to achieve the point where the rule of law applies to all."

Judge Castillo made that statement in 2006 but obviously politicians and other public servants are still willing, perhaps even more willing, to engage in corrupt conduct.  Or perhaps it is just that society has become more intolerant and, because of that, law enforcement has become more vigilant, establishing entire sections or units of law enforcement personnel and prosecutors to specialize in uncovering and prosecuting this criminal and inexcusable conduct.

Deterrence is an extremely important factor in this case despite the unique circumstances.  There is simply no justification for monetizing a public office even if the benefit received is not cash in a bag or expensive gifts.

A sentence of probation or anything other than a significant amount of time in prison would be an invitation to other public servants to betray the trust the public places in them, not a deterrent.

Nor is the shame of his conviction sufficient punishment.  As Dr. Ridley-Thomas and some of his supporters suggest, some have suggested that loss of his reputation and his career are sufficient punishment and that a period of home confinement and perhaps community service are an

54

appropriate sentence.

But as the cases cited by the government establish, reputational harm is not a valid consideration. Most criminals lose their jobs and livelihood and the respect of people who believed in them.

These things are a natural consequence of Dr. Ridley-Thomas's deliberate conduct, though they seem to be much less so here than in most cases.

In any event, they are not punishment and certainly not sufficient punishment.

I agree with the comments of my colleague in the Southern District of New York who said that it is not possible to justify the notion that public humiliation and other forms of nonjudicial punishment should be an occasion for lenience not given to a defendant who has never had the opportunity to reach the same heights in the community.

Sadly, doctors, accountants, corporate officers, lawyers, and public officials appear in our courts with increasing frequency. Most are appearing for the first time and many have had opportunities and backgrounds similar to those of Dr. Ridley-Thomas.

The concept of equal justice requires that I not rely completely on this particular defendant's personal and professional accomplishments and the somewhat unique collateral consequences his own conduct has caused.

55

Here, too, Dr. Ridley-Thomas is not the first and, unfortunately, he won't be the last to be tempted to engage in illegal and unethical conduct.

Only a significant custodial sentence will reflect the seriousness of the offenses, promote respect for the law, provide just punishment, and send the appropriate message to those considering the possibility of misusing their positions in the future and serve as a general deterrent.

I do agree that Dr. Ridley-Thomas is unlikely to commit a similar offense in the future.  In any event, it is unlikely, though not impossible, that he will be in a position where he would have the ability to do so.

I've also considered the kinds of sentences available and I recognize that I have the legal authority to sentence Dr. Ridley-Thomas to probation, home detention, or community.

However, an analysis of the 3553(a) factors and an individualized assessment here establish that neither the defense request nor the probation officer's recommendation come close to adequately addressing the 3553(a) factors.

I also agree that a substantial fine is appropriate.  The purpose of fines is punitive, not remedial, and the amount of the fine should always be sufficient taken together with other sanctions to be

56

punitive.

I reject the defense argument that in considering Section 3553(a)(6) I should compare Dr. Ridley-Thomas to Dean Flynn and the probationary sentence the government recommended and I imposed for her.

First, that factor requires courts to avoid unwarranted sentence disparities among defendants with similar records who have been convicted of similar offenses.

More importantly, Congress's primary goal with this factor was to support national uniformity rather than uniformity among codefendants in the same case or in the same district as pointed out by the Ninth Circuit in *Jaycox*, *Saeteurn*, and *Green*.

Contrary to Dr. Ridley-Thomas' assertion and despite Dean Flynn's probationary sentence, a sentence for Dr. Ridley-Thomas involving multiple years of imprisonment giving appropriate consideration to the guidelines range and the 3553(a) factors is definitely neither excessive nor disproportionate.

The defense relies on paragraph 67 of the presentence report to argue that there is little rationale for a vastly disparate sentence between Dr. Ridley-Thomas and Dean Flynn.

But this paragraph involves an analysis of any potential role adjustment and does not apply to comparing

the relationship between Dean Flynn and Dr. Ridley-Thomas in determining unwarranted disparity here at all.

The probation officer did not attend the trial. To the extent the defense or the probation officer suggest Dr. Ridley-Thomas and Dean Flynn are equally culpable, that is simply wrong.

Dr. Ridley-Thomas clearly was the moving force in this scheme, soliciting Dean Flynn for a *quid pro quo* in exchange for something she desperately wanted and needed for the benefit of the community and USC.

There are also significant differences between Dean Flynn and Dr. Ridley-Thomas.  Most notably, Dean Flynn accepted responsibility for her actions and, as the government stated, had provided information about her own conduct that even the government was not aware of.

Dr. Ridley-Thomas persists in his denial of criminal conduct.  Based on her plea, Dean Flynn was convicted of only a single charge of bribery.

While her motive for the crime was not completely altruistic, Dr. Ridley-Thomas's motive was purely to help his son and himself despite defense counsel's vociferous arguments to the contrary; and he was willing to betray the trust placed in him by this community to do so.

The suggestion that Dr. Ridley-Thomas is being penalized for exercising his right to jury trial is

factually and legally incorrect.

As the Ninth Circuit has indicated in *Narramore* and reiterated in *Armstead*, incentives for plea bargaining are not unconstitutional and failure to afford leniency to those who have not demonstrated those attributes on which leniency is based is "unequivocally proper."

A harsher sentence for a defendant who goes to trial is not retaliatory nor are the other cases described by the defense technically helpful.  The *Varsity Blues* cases are not relevant at all so I won't discuss them.

Only four potentially relevant cases are cited; and counsel, as excellent as defense counsel here, have surely selected the ones best suited to make their point.

But four convictions doesn't even crack the surface of the plague of bribery and honest services fraud by public officials.

In any event, Paradis has not yet been sentenced and the government's recommendation is not a 3553(a) factor. Paradis was not a public official.  He pleaded guilty and provided substantial assistance.

Englander also pleaded guilty but not to any of the charges Dr. Ridley-Thomas was convicted of.

Dr. Ridley-Thomas describes the nature and circumstances of the offenses in these four cases but provides no information as to the other 3553(a) factors.

Even if a mere four cases were sufficient to evaluate Section 3553(a)(6) -- and they are not -- I do not have sufficient information to do so here.

Of course, the government has also selected only a few examples that support its proposed sentence. Those serve perhaps to counter-balance the defense position but otherwise are not particularly helpful for other reasons.

What is relevant are the statistics provided by the government in Exhibit B to the government's response to Dr. Ridley-Thomas's sentencing position.

Especially the statistics that exclude defendants who have received the benefit of a reduction for cooperation with the government or acceptance of responsibility.

Dr. Ridley-Thomas should be compared only to others who, like him, either cooperated nor accepted responsibility.

Although I must start with a properly calculated guidelines range, I find that range to be too high to appropriately address the purposes of sentencing and the 3553(a) factors in this unique case.

As I indicated, I will vary downward by two levels based on Dr. Ridley-Thomas's complete lack of criminal history and relying on Dr. Ridley-Thomas's agreement not to seek a further reduction related in any way to the appropriate amendment for C1.1.

60

Based on the unique and ultimately mitigating history and characteristics of the defendant and the nature and circumstances of the offense but also considering the critical importance of deterrence, I conclude a downward variance is appropriate.

I will now state the sentence but counsel will have a final chance to make legal objections before sentence is imposed.

Does either counsel know of any reason why sentence should not now be imposed?

MS. DOTSON:  No, Your Honor.

MS. AMRAM:  No, Your Honor.

THE COURT:  I find that the following sentence is reasonable and is sufficient but is no greater than necessary to comply with the purposes of 18 United States Code, Section 3553(a).

It is ordered that the defendant shall pay to the United States a special assessment of $700 which is due immediately.

It's ordered that the defendant shall pay to the United States a total fine of $30,000.  The fine shall be paid -- the fine and the assessment shall be paid in full immediately.

The defendant shall comply with Second Amended General Order 20-04.

Pursuant to the Sentencing Reform Act of 1984, it's the judgment of the Court that the defendant Mark Ridley-Thomas is hereby committed on Counts 1, 2, 5, 15, 16, 19, and 20 of the Indictment to the custody of the Bureau of Prisons for a term of 42 months.

This term consists of 42 months on each of Counts 1, 2, 5, 15, 16, 19, and 20 of the Indictment, all to be served concurrently.

On release from imprisonment, the defendant shall be placed on supervised release for a term of three years. This term consists of three years on each of Counts 1, 2, 5, 15, 16, 19, and 20 of the Indictment.  Such terms to run concurrently under the following terms and conditions:

1.  The defendant shall comply with the rules and regulations of the United States Probation and Pretrial Services Office and Second Amended General Order 20-04.

2.  During the period of community supervision, the defendant shall pay the special assessment and fine in accordance with this judgment's orders pertaining to such payment.

3.  The defendant shall apply all monies received from income refunds, lottery winnings, inheritance, judgments, and other financial gains to the court-ordered financial obligation.

4.  The defendant shall cooperate in the

collection of a DNA sample from the defendant.

The drug testing condition mandated by statute is suspended based on the Court's determination that the defendant poses a low risk of future substance abuse.

Does the government have any objection to my allowing the defendant to self-surrender?

MS. DOTSON:  No, Your Honor.

THE COURT:  Based on the government's position, the nature of the offense, and the lack of danger to the community and the fact that the defendant has made all of his appearances and is not likely to flee, I will allow the defendant to surrender himself.

Dr. Ridley-Thomas, all of the conditions of your release remain in effect and failure to report for service of your sentence is a criminal offense.

Is there a requested date for surrender, Ms. Amram?

MS. AMRAM:  Your Honor, just out of an abundance of caution, we'd ask for two months.  I don't know what the Bureau of Prisons' timeline is.  The Court might have more up-to-date information than I do on what is going on in the Central District but that's what we request.

THE COURT:  How about November 6?

MS. AMRAM:  That's fine, Your Honor.  And I would also ask if the Court is willing to include in the judgment

63

a recommendation that Dr. Ridley-Thomas be designated to Lompoc.

THE COURT:  I will make that recommendation.  My recommendations are not binding on the Bureau of Prisons.

It's ordered that the defendant surrender himself to the institution designated by the Bureau of Prisons at or before 12:00 noon on November 6, 2023.

In the absence of such designation, the defendant shall report on or before that date and time to the United States Marshal located on the third floor of this building, 350 West First Street, Los Angeles, California.

Does either counsel have anything further?

MS. DOTSON:  No, Your Honor.  Thank you.

MS. AMRAM:  Your Honor, I forgot and I apologize that November 6 is Dr. Ridley-Thomas's birthday.  Can we possibly have an extra week?

THE COURT:  November 13?

MS. AMRAM:  Thank you.

THE COURT:  All right.

You're ordered to report no later than November 13 at noon in accordance with my instructions.

The statement of reason shall be included in the Commitment Order and Judgment and shall be provided to the probation office, the Sentencing Commission, and the Bureau of Prisons.

A complete copy of the presentence report shall be provided to the Bureau of Prisons and the Sentencing Commission.  Any other copies of the report and related materials shall remain confidential.

If an appeal is taken, counsel on appeal shall have access to the report.

Dr. Ridley-Thomas, you have a right to appeal your conviction and your sentence.  With few exceptions a Notice of Appeal must be filed within 14 days of judgment being entered.

Do you understand that, sir?

THE DEFENDANT:  I do, Your Honor.

THE COURT:  Sir, if you're unable to afford a transcript of the record in this case, one will be provided at government expense.

If you are unable to pay the cost of an appeal or a filing fee, you may apply for leave to appeal *In Forma Pauperis*.

If you do not have counsel to act on your behalf and if you request it, the Clerk of the Court will prepare and file a Notice of Appeal on your behalf.

You must make that are request within 14 days.

The Notice of Appeal must designate the judgment or order appealed from and the fact that you're appealing to the Court of Appeals.

65

It should designate the portion of the proceedings not already on file that you deem necessary for the reporter to include.

Any bail posted will be exonerated at the time of surrender.

Anything further?

MS. DOTSON:  No, Your Honor.

MS. AMRAM:  No, Your Honor.

THE COURT:  All right.  Thank you.

THE CLERK:  All rise.

Court is in recess.

*(At 11:40 a.m., proceedings were concluded.)*

-oOo-

**CERTIFICATE**

I, PAT CUNEO, CSR 1600, hereby certify that pursuant to Section 753, Title 28, United States Code, the foregoing is a true and correct transcript of the stenographically reported proceedings held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.

Date:  August 28, 2023

/s/_____

**PAT CUNEO, OFFICIAL REPORTER**
**CSR NO. 1600**

{PLAINTIFF} v.
{DEFENDANT}

{WITNESSNAME}
{DATE}

**MS. AMRAM: [18]** 3/20 4/23 4/25 5/3 5/22 6/1 6/5 7/19 10/18 32/22 33/6 34/4 60/12 62/18 62/24 63/14 63/18 65/8

**MS. DOTSON: [12]** 3/13 5/7 25/2 25/5 27/17 32/14 32/17 32/19 60/11 62/7 63/13 65/7

**SPECIAL AGENT ADKINS: [1]** 3/19

**THE CLERK: [2]** 3/3 65/10

**THE COURT: [36]** 3/18 3/24 4/24 5/1 5/4 5/9 5/11 5/14 5/17 5/19 5/23 6/2 7/18 10/16 22/10 22/14 22/19 24/24 25/4 27/15 32/10 32/15 32/18 32/20 33/4 33/8 34/5 34/7 60/13 62/8 62/23 63/3 63/17 63/19 64/13 65/9

**THE DEFENDANT: [11]** 5/6 5/8 5/10 5/13 5/16 5/18 22/13 22/17 22/20 34/6 64/12

**$**

**$100,000 [8]** 38/17 38/19 38/24 39/15 40/2 40/8 40/15 46/4
**$15,000 [1]** 6/15
**$150,000 [1]** 13/22
**$2 [1]** 6/11
**$2 million [1]** 6/11
**$250,000 [2]** 38/3 41/21
**$30 [2]** 6/10 6/10
**$30 million [1]** 6/10
**$30,000 [2]** 41/20 60/21
**$30-million [1]** 6/10
**$50,000 [1]** 29/2
**$530,000 [3]** 13/11 16/7 37/5
**$700 [2]** 41/22 60/18

**-**

**-oOo [2]** 3/2 65/14

**/**

**/s [1]** 66/15

**0**

**04 [2]** 60/25 61/16

**1**

**100K [2]** 12/6 31/23
**10:02 [2]** 1/17 3/1
**11:40 [1]** 65/12
**12-level [7]** 26/11 27/6 27/13 35/12 38/14 40/15 45/17
**121 [5]** 7/17 26/1 30/2 41/18 50/12
**12:00 [1]** 63/7
**13 [2]** 63/17 63/20
**1326 [1]** 17/23
**14 [3]** 6/17 64/9 64/22
**15 [3]** 61/4 61/7 61/12
**16 [3]** 61/4 61/7 61/12
**1600 [3]** 1/21 66/3 66/16
**1782 [1]** 1/24
**18 [3]** 7/13 7/17 60/15
**18 United [1]** 41/25
**18-month [2]** 6/13 50/15
**19 [3]** 61/4 61/7 61/12
**1984 [1]** 61/1
**1st [1]** 1/23

**2**

**20 [5]** 8/17 22/22 61/4 61/7 61/12
**20-04 [2]** 60/25 61/16
**2006 [1]** 53/4
**2022 [1]** 18/6
**2023 [4]** 1/17 3/1 63/7 66/10
**20K [2]** 13/22 13/23
**21-485-DSF [1]** 1/8
**213-894-1782 [1]** 1/24
**2482 [1]** 2/12
**28 [4]** 1/17 3/1 66/4 66/10
**29 [1]** 10/5
**2B1.1 [1]** 15/7
**2C1.1 [9]** 11/6 13/18 13/20 14/19 15/2 15/8 35/13 35/15 35/16

**3**

**30 [2]** 21/7 41/16
**312 [1]** 2/5
**33 [1]** 10/6
**350 [2]** 1/23 63/11
**3553 [13]** 19/12 41/25 50/13 50/19 55/18 55/21 56/3 56/18 58/18 58/25 59/2 59/20 60/16

**4**

**415-268-7020 [1]** 2/12
**42 [2]** 61/5 61/6
**425 [1]** 2/11
**4311 [1]** 1/23
**44 [2]** 21/5 23/23
**45 [1]** 14/13
**476 [1]** 14/13
**49 [1]** 14/13
**4C1.1 [1]** 33/10

**5**

**530 [1]** 12/6

**6**

**60,000 [1]** 14/17
**67 [1]** 56/20

**7**

**70 [1]** 7/12
**7020 [1]** 2/12
**753 [1]** 66/4
**78 [2]** 26/9 30/2

**8**

**80 percent [2]** 30/11 30/20

**9**

**90012 [2]** 1/24 2/6
**94105-2482 [1]** 2/12
**97 [7]** 7/17 25/25 26/9 30/2 30/3 41/18 50/11

**A**

**a.m [3]** 1/17 3/1 65/12
**aberrant [4]** 28/3 29/8 49/13 49/14
**ability [2]** 5/2 55/13
**able [1]** 24/10
**ably [1]** 46/22
**about [34]** 5/1 6/7 6/20 7/6 12/5 12/22 14/16 14/17 14/22 15/14 15/15 16/15 17/2 17/25 17/25 19/20 20/7 20/15 20/17 20/17 22/5 24/9 25/21 27/2 27/5 27/12 28/22 31/22 32/1 35/23 37/22 39/17 57/14 62/23
**above [5]** 12/24 21/23 21/24 32/8 66/7
**above-entitled [1]** 66/7
**absence [1]** 63/8
**absent [3]** 15/22 16/4 21/10
**abundance [1]** 62/18
**abundant [1]** 39/5
**abuse [2]** 48/6 62/4
**accept [7]** 8/3 8/8 9/10 9/16 9/16 23/5 50/1
**acceptance [4]** 8/12 8/20 12/24 59/13
**accepted [6]** 30/5 31/8 31/24 50/17 57/13 59/15
**accepting [1]** 46/7
**access [1]** 64/6
**accomplish [1]** 39/22
**accomplished [1]** 39/24
**accomplishing [1]** 38/8
**accomplishments [1]** 54/24
**accordance [3]** 23/7 61/19 63/21

**account [4]** 10/20 15/21 16/24 41/14
**accountable [1]** 52/20
**accountants [1]** 54/17
**accurate [3]** 11/11 13/1 41/8
**achieve [2]** 38/13 53/2
**achieved [1]** 37/24
**achievements [1]** 21/18
**acknowledge [4]** 8/14 8/21 23/15 45/17
**acquitted [2]** 40/23 41/4
**act [4]** 46/21 51/22 61/1 64/19
**acted [1]** 34/25
**actions [5]** 23/12 23/12 23/22 23/22 57/13
**actors [2]** 29/23 29/25
**acts [1]** 30/18
**actual [1]** 15/4
**actually [5]** 14/12 14/18 14/22 26/16 38/21
**add [1]** 27/16
**added [1]** 40/14
**addendum [1]** 4/12
**addicted [1]** 21/10
**addition [5]** 10/7 15/20 38/1 38/11 52/9
**additional [1]** 17/14
**Additionally [1]** 24/4
**address [10]** 22/21 26/10 27/1 27/14 31/3 32/10 36/25 50/19 52/14 59/19
**addressed [3]** 13/15 13/16 14/2
**addressing [1]** 55/21
**adequate [2]** 42/5 50/24
**adequately [2]** 50/19 55/21
**adjustment [1]** 56/25
**Adkins [1]** 3/17
**admissions [1]** 17/7
**admittedly [1]** 19/10
**adopt [3]** 37/11 41/10 42/20
**advised [2]** 23/12 51/12
**advisory [3]** 26/18 41/11 41/12
**advocating [1]** 13/9
**afford [5]** 24/12 42/5 50/24 58/4 64/13
**after [11]** 7/2 8/11 13/2 13/3 21/3 21/3 21/4 21/4 21/12 21/13 43/18
**afternoon [1]** 20/11
**again [7]** 3/7 8/4 9/11 9/15 22/18 28/9 36/14
**age [3]** 46/15 46/17

**46/24**
**Agent [1]** 3/17
**aggravating [1]** 22/3
**agree [19]** 29/12 34/3 34/12 34/24 35/21 36/9 36/14 37/5 38/14 38/23 44/20 47/25 48/14 49/4 49/16 50/7 54/11 55/10 55/22
**agreed [2]** 44/5 46/3
**agreement [8]** 11/3 11/7 12/11 34/9 42/13 46/2 50/11 59/23
**agrees [1]** 34/1
**all [36]** 3/3 4/6 4/19 4/20 8/10 16/11 19/21 19/22 20/8 20/21 20/24 22/2 24/5 24/16 28/24 29/23 30/13 37/2 39/12 41/9 43/18 45/2 46/11 48/17 52/19 52/23 53/3 57/2 58/10 61/7 61/21 62/10 62/13 63/19 65/9 65/10
**allegations [1]** 44/9
**alleged [1]** 49/20
**alley [2]** 19/24 29/15
**allow [1]** 62/11
**allowed [3]** 8/25 9/1 50/4
**allowing [1]** 62/6
**almost [4]** 7/12 13/2 20/24 47/15
**along [1]** 51/5
**already [2]** 9/12 65/2
**also [27]** 3/16 4/13 8/11 24/9 28/2 31/24 34/11 34/22 35/5 36/10 36/19 38/6 38/17 40/10 40/15 41/24 42/7 46/2 52/11 52/14 55/14 55/22 57/11 58/21 59/4 60/3 62/25
**although [3]** 49/18 50/10 59/17
**altruistic [1]** 57/20
**always [4]** 18/25 26/25 34/17 55/24
**am [3]** 27/1 35/16 41/13
**ambition [1]** 49/7
**amended [4]** 37/10 38/6 60/24 61/16
**amendment [30]** 9/23 10/2 18/18 28/14 28/16 28/23 33/15 33/19 34/2 34/8 34/10 37/7 37/14 37/15 37/20 37/25 38/8 38/11 38/16 40/9 42/23 43/2 44/23 45/3 45/5 45/12 45/22 45/24 51/12 59/25
**amendments [2]** 26/4 26/7

Case 2:21-cr-00485-DSF    Document 414    Filed 08/30/23    Page 68 of 79    Page ID
#:11121

{PLAINTIFF} v.
{DEFENDANT}

{WITNESSNAME}
{DATE}

**A**

**AMERICA [2]**  1/6 3/11
**among [4]**  30/14 42/9 56/7 56/11
**amount [27]**  11/6 11/16 11/18 11/23 12/17 13/8 13/19 13/23 15/4 15/6 16/7 16/7 16/8 16/13 17/11 18/10 18/15 18/17 18/18 18/18 35/17 35/22 37/8 45/8 49/22 53/18 55/24
**AMRAM [8]**  2/9 3/20 4/20 5/19 10/17 32/21 34/3 62/17
**analogue [1]**  17/6
**analysis [6]**  36/9 37/11 39/11 41/13 55/18 56/24
**Angeles [8]**  1/16 1/24 2/6 3/1 25/9 43/24 48/9 63/11
**anguish [1]**  24/4
**announced [1]**  33/20
**another [2]**  17/2 51/21
**answering [1]**  25/5
**anti [1]**  30/21
**anti-deterrent [1]**  30/21
**any [40]**  4/5 5/1 5/11 5/23 7/3 7/7 8/8 8/14 8/21 9/1 10/16 14/2 15/22 15/23 16/4 19/18 23/17 25/19 27/2 27/5 27/12 31/9 34/10 34/15 34/19 35/10 36/21 38/24 39/12 52/9 54/9 55/11 56/24 58/17 58/21 59/24 60/9 62/5 64/3 65/4
**anybody [1]**  20/3
**anyone [2]**  25/17 32/15
**anything [11]**  5/20 5/24 22/11 23/2 27/16 32/4 35/19 45/13 53/17 63/12 65/6
**anyway [2]**  43/4 45/12
**apart [1]**  28/8
**apologize [5]**  7/19 23/25 24/1 24/8 63/14
**Apolonio [1]**  33/25
**apparently [3]**  44/22 45/11 49/25
**appeal [8]**  64/5 64/5 64/7 64/9 64/16 64/17 64/21 64/23
**appealed [1]**  64/24
**appealing [1]**  64/24
**Appeals [1]**  64/25
**appear [3]**  15/10 48/4 54/18
**appearance [1]**  23/18
**appearances [3]**  2/1

3/12 62/11
**appearing [1]**  54/19
**appears [3]**  17/20 40/17 45/23
**application [4]**  6/23 9/5 33/21 33/24
**applied [3]**  18/12 27/8 33/14
**applies [4]**  35/25 36/6 36/18 53/3
**apply [7]**  11/19 19/12 34/7 35/13 56/25 61/21 64/17
**approach [2]**  6/2 22/14
**appropriate [11]**  26/18 26/21 46/9 49/17 50/10 54/1 55/6 55/23 56/17 59/25 60/5
**appropriately [1]**  59/19
**approved [3]**  7/5 33/20 40/6
**aptly [1]**  52/14
**arc [1]**  20/25
**arguably [2]**  45/22 50/13
**argue [1]**  56/21
**argued [2]**  43/18 46/5
**argues [7]**  35/12 35/24 36/3 36/19 40/10 44/22 49/11
**argument [5]**  5/23 37/1 38/5 40/1 56/2
**arguments [2]**  27/10 57/22
**Armstead [1]**  58/3
**around [4]**  20/7 20/8 25/16 47/13
**arranged [1]**  18/8
**arranging [1]**  40/11
**as [85]**
**ask [4]**  22/8 32/5 62/19 62/25
**asked [1]**  51/13
**asking [9]**  7/10 7/11 7/25 9/9 12/21 21/25 25/7 30/1 30/3
**asks [3]**  26/6 30/8 51/18
**Assembly [1]**  43/12
**assert [1]**  49/1
**asserting [1]**  33/9
**assertion [2]**  47/16 56/14
**asserts [3]**  32/13 34/20 43/14
**assessed [1]**  51/15
**assessment [5]**  41/21 55/19 60/18 60/22 61/18
**assist [1]**  39/23
**assistance [2]**  25/11 58/20
**ASSISTANT [2]**  2/4

3/15
**association [1]**  43/16
**assume [1]**  45/1
**assuming [1]**  26/3
**assure [1]**  23/4
**at [43]**  2/9 2/10 2/10 2/11 3/15 3/16 3/22 4/18 6/11 7/1 7/3 7/23 8/16 10/9 12/15 13/10 13/15 14/9 14/13 14/17 20/11 21/8 21/11 23/16 25/25 31/20 32/3 37/1 38/4 39/12 43/15 45/2 46/5 49/6 49/12 51/22 57/2 58/10 63/6 63/21 64/15 65/4 65/12
**attend [2]**  40/20 57/3
**attention [2]**  10/16 44/12
**ATTORNEY [5]**  2/2 2/9 2/10 2/10 2/11
**attorneys [3]**  2/4 3/15 5/14
**attribute [1]**  9/24
**attributes [1]**  58/5
**August [3]**  1/17 3/1 66/10
**authoritative [1]**  14/1
**authority [3]**  15/3 17/2 55/15
**available [2]**  42/8 55/15
**avoid [2]**  42/8 56/6
**awarded [1]**  34/15
**aware [2]**  29/3 57/15

**B**

**back [1]**  29/15
**backgrounds [1]**  54/20
**bad [8]**  21/4 21/4 21/4 28/12 29/10 48/25 49/2 49/3
**bag [3]**  16/20 39/9 53/16
**bags [3]**  6/14 29/17 43/10
**bail [1]**  65/4
**balance [1]**  59/6
**Ballot [1]**  16/24
**banc [1]**  26/16
**bank [3]**  18/8 18/9 18/13
**bargaining [7]**  11/13 25/12 27/24 29/19 37/17 45/15 58/3
**base [1]**  15/11
**based [24]**  11/21 12/1 12/3 26/22 26/23 33/10 33/14 33/17 34/1 34/8 35/17 36/7 36/9 38/15 41/23 46/4 46/18 47/1 57/17 58/6 59/22 60/1 62/3 62/8
**basically [3]**  18/8

21/11 37/15
44/17
**basis [3]**  9/24 11/21 16/6
**bathroom [1]**  6/15
**be [79]**
**became [1]**  48/7
**because [28]**  8/3 9/8 10/11 10/22 11/18 15/17 15/24 17/13 19/7 19/14 25/8 26/25 27/20 28/2 30/13 31/17 33/2 35/9 36/6 39/21 42/22 42/24 43/3 43/7 46/8 51/4 51/13 53/8
**become [2]**  53/7 53/8
**becomes [1]**  35/3
**been [24]**  6/6 14/6 15/22 24/3 27/1 28/22 34/16 34/18 35/5 35/9 37/16 40/6 40/25 42/10 43/3 45/8 49/2 49/23 50/6 51/21 52/4 52/7 56/8 58/17
**before [13]**  10/7 13/6 19/7 20/22 21/2 22/12 26/5 31/5 42/18 48/4 60/7 63/7 63/9
**beginning [1]**  23/23
**behalf [5]**  3/14 3/21 5/25 64/19 64/21
**behind [2]**  19/24 24/19
**being [8]**  19/23 24/10 38/20 46/22 48/22 50/4 57/24 64/9
**belied [1]**  38/7
**believe [5]**  11/12 14/13 17/23 23/8 24/11
**believed [6]**  12/9 24/6 37/14 37/24 45/3 54/5
**belonged [1]**  23/16
**beloved [2]**  21/12 48/6
**benchmark [1]**  41/13
**benefit [12]**  13/20 17/4 25/19 26/8 35/18 39/3 39/15 43/1 44/15 53/16 57/10 59/12
**benefited [2]**  39/6 44/24
**benefits [9]**  15/22 27/25 29/20 38/18 39/13 40/11 40/23 43/10 45/15
**Bernard [2]**  4/16 34/19
**best [3]**  22/25 24/22 58/13
**betray [2]**  53/19 57/22
**betrayed [2]**  34/18 49/5
**better [1]**  47/19
**between [12]**  12/7 12/14 12/17 16/5 17/7 23/9 23/11 29/2 29/9 56/22 57/1 57/11
**beyond [7]**  12/24 21/22 21/24 21/24 33/2 43/7

44/17
**bidding [1]**  43/1
**bill [1]**  14/24
**binding [3]**  13/12 50/12 63/4
**birthday [1]**  63/15
**bit [1]**  15/15
**black [2]**  9/18 10/21
**blind [1]**  21/12
**Blues [1]**  58/9
**Board [2]**  7/3 38/9
**boardroom [2]**  29/15 30/23
**body [1]**  19/10
**Booker [2]**  26/18 36/23
**both [9]**  9/22 11/20 13/12 35/5 38/8 40/21 44/7 44/16 45/20
**brand [2]**  43/23 44/6
**breadwinner [1]**  47/9
**breath [1]**  23/25
**breeds [1]**  25/21
**Brian [1]**  3/17
**Brian Adkins [1]**  3/17
**bribe [6]**  38/21 40/19 43/9 44/24 45/20 46/5
**bribed [1]**  6/24
**bribery [9]**  6/24 9/5 15/9 16/25 17/5 44/18 45/19 57/18 58/15
**brief [3]**  8/2 32/22 42/13
**briefed [1]**  16/14
**briefing [2]**  10/13 17/14
**briefly [2]**  17/12 32/20
**bring [2]**  8/13 37/20
**bringing [1]**  24/9
**broadcast [1]**  4/4
**Buchan [1]**  36/22
**build [1]**  30/16
**building [1]**  63/10
**burden [4]**  16/3 35/22 35/23 36/6
**Bureau [7]**  46/16 61/5 62/20 63/4 63/6 63/24 64/2
**business [2]**  25/18 28/12
**but [57]**  10/19 12/7 13/16 15/8 15/17 16/15 16/23 17/19 18/18 19/7 22/7 23/1 23/3 23/13 24/6 24/9 26/8 26/20 27/3 29/4 29/23 30/9 31/19 32/6 32/11 32/25 34/22 35/22 39/10 39/20 40/4 40/20 41/5 41/25 43/4 43/10 43/16 44/6 45/14 45/24 47/6 48/2 48/21 49/2 50/13 51/14 53/4 54/2 56/24 58/14 58/21 58/24 59/6 60/3 60/6 60/14 62/22

## C

**C1.1 [1]** 59/25
**CA [1]** 1/24
**calculate [4]** 11/16 11/22 11/25 12/10
**calculated [6]** 12/17 13/9 13/19 25/24 46/13 59/17
**calculates [1]** 25/25
**calculating [1]** 50/11
**calculation [2]** 41/11 46/5
**calendar [3]** 7/1 15/25 18/23
**CALIFORNIA [7]** 1/2 1/16 2/6 2/12 3/1 43/12 63/11
**call [1]** 28/14
**called [1]** 29/11
**calling [9]** 3/10 19/24 19/24 19/25 19/25 19/25 19/25 20/9 28/21
**came [4]** 16/23 20/1 28/10 28/20
**can [12]** 3/25 10/1 15/7 17/4 17/18 19/15 24/11 29/24 41/4 51/5 52/18 63/15
**can't [2]** 5/9 29/3
**cancer [1]** 21/11
**candor [1]** 11/8
**cannot [6]** 8/13 11/25 12/7 15/18 29/23 51/24
**capped [1]** 14/17
**career [6]** 43/6 43/19 44/1 44/9 44/15 53/24
**career-ending [1]** 44/9
**case [52]** 3/10 6/12 6/20 6/22 7/9 8/16 9/1 9/2 9/4 11/14 13/2 13/16 13/25 13/25 14/4 15/7 16/19 17/1 17/5 17/23 17/24 18/5 18/7 19/4 19/10 20/14 22/5 23/9 25/15 25/24 26/11 26/15 27/18 28/4 29/10 29/12 29/13 30/1 30/6 31/5 31/7 32/2 32/6 36/24 41/4 41/6 44/20 46/9 53/14 56/11 59/20 64/14
**Case No. CR 21-485-DSF [1]** 3/10
**cases [21]** 6/6 17/7 17/17 17/20 19/16 31/3 31/13 36/10 36/20 42/11 45/19 45/23 46/18 47/13 54/2 54/8 58/8 58/9 58/11 58/24 59/1
**cash [6]** 6/14 16/20 29/16 39/10 43/10 53/16

**casino [1]** 6/15
**cast [1]** 41/6
**Castillo [2]** 52/13 53/4
**category [1]** 41/17
**caught [1]** 51/16
**causation [1]** 18/21
**caused [1]** 54/25
**causes [1]** 24/4
**caution [1]** 62/19
**cellphones [1]** 4/6
**central [4]** 1/2 4/3 26/24 62/22
**certain [2]** 33/19 45/2
**certainly [7]** 19/3 26/19 26/23 33/13 39/9 44/7 54/10
**CERTIFICATE [1]** 66/1
**certify [1]** 66/3
**cetera [1]** 51/10
**chance [1]** 60/7
**change [3]** 5/20 12/14 12/17
**characteristics [3]** 42/2 46/14 60/2
**charge [3]** 20/9 40/13 57/18
**charged [1]** 18/19
**charges [2]** 48/13 58/22
**check [1]** 52/4
**Chief [1]** 4/16
**childhood [3]** 20/20 21/8 22/2
**childhoods [1]** 20/22
**children [3]** 21/1 47/4 47/13
**chip [5]** 25/12 27/24 29/19 37/17 45/15
**chose [1]** 27/19
**chosen [1]** 22/24
**CHRISTINA [2]** 2/10 3/23
**Circuit [13]** 13/15 15/21 17/14 18/3 18/6 18/6 18/11 19/3 26/16 33/1 36/10 56/12 58/2
**circumstance [1]** 22/23
**circumstances [10]** 17/16 41/6 42/1 42/12 45/18 46/8 46/12 53/14 58/24 60/3
**cited [2]** 54/2 58/11
**cites [3]** 36/10 36/21 40/16
**citizen [1]** 22/25
**city [2]** 20/3 20/4
**claiming [1]** 43/13
**claims [4]** 39/16 42/22 43/11 43/25
**clarity [1]** 23/16
**clean [1]** 20/1
**cleaned [1]** 20/1
**clear [18]** 15/15 17/12

17/22 18/4 18/7 18/11 19/1 23/2 26/12 26/17 26/21 29/4 33/2 35/24 36/16 36/20 41/1 41/4
**clearly [4]** 23/9 23/10 40/22 57/7
**Clerk [1]** 64/20
**close [2]** 50/14 55/21
**closest [1]** 17/6
**clout [1]** 52/11
**Code [3]** 41/25 60/16 66/4
**codefendant [2]** 7/22 17/9
**codefendants [3]** 6/17 17/7 56/11
**collapse [1]** 18/13
**collapsed [1]** 18/9
**collar [2]** 30/22 51/3
**collateral [1]** 54/25
**colleague [2]** 52/1 54/11
**colleagues [2]** 24/5 34/22
**collection [1]** 62/1
**college [1]** 17/6
**come [8]** 3/9 19/17 20/11 20/22 21/2 26/5 50/14 55/21
**comment [1]** 51/24
**commentary [5]** 12/16 13/17 13/25 14/1 14/7
**comments [1]** 54/11
**commission [5]** 13/19 33/20 47/23 63/24 64/3
**commit [1]** 55/11
**commitment [3]** 24/20 39/2 63/23
**committed [5]** 44/14 44/18 49/15 50/16 61/3
**Committee [1]** 16/24
**committing [2]** 9/3 51/2
**communities [1]** 24/21
**community [25]** 30/8 30/10 30/15 30/17 30/18 30/20 34/16 34/17 34/21 44/25 45/14 48/16 48/19 49/23 50/2 50/6 51/13 51/17 53/25 54/16 55/17 57/10 57/23 61/17 62/10
**company [6]** 28/10 28/20 28/21 29/1 29/2 32/23
**Company A [3]** 28/20 29/1 32/23
**compare [1]** 56/3
**compared [3]** 45/19 46/13 59/14
**comparing [1]** 56/25
**compassionate [1]** 46/20

**complete [2]** 59/22 64/1
**completed [1]** 23/5
**completely [4]** 8/8 13/17 54/23 57/19
**compliance [1]** 23/6
**complicated [1]** 45/22
**comply [4]** 37/23 60/15 60/24 61/14
**concedes [3]** 16/9 48/14 50/9
**concept [1]** 54/22
**concern [2]** 37/22 52/8
**concerning [1]** 32/11
**concerns [4]** 5/1 27/2 43/13 49/18
**conclude [1]** 60/4
**concluded [2]** 51/15 65/12
**conclusion [2]** 36/14 40/17
**concurrence [1]** 36/22
**concurrently [2]** 61/8 61/13
**condition [1]** 62/2
**conditions [6]** 14/16 46/21 46/23 50/10 61/13 62/13
**conduct [37]** 7/22 12/3 17/18 17/20 23/9 23/10 23/15 23/20 28/2 28/3 28/4 29/8 30/5 31/9 32/2 40/24 40/24 41/4 42/5 45/25 46/10 49/8 49/12 49/14 49/14 49/20 50/25 51/7 51/8 52/23 53/7 53/12 54/7 54/25 55/3 57/15 57/17
**Conference [1]** 66/9
**confidence [1]** 53/1
**confidential [1]** 64/4
**confinement [1]** 53/25
**conformance [1]** 66/8
**confusing [2]** 19/10 45/23
**Congress [1]** 51/1
**Congress's [1]** 56/9
**connection [3]** 35/7 40/18 46/19
**conscientious [1]** 24/18
**consent [3]** 7/1 15/24 18/23
**consequence [3]** 44/3 47/22 54/6
**consequences [2]** 52/3 54/25
**consider [5]** 10/19 30/9 33/4 49/12 49/19
**consideration [3]** 49/17 54/3 56/17
**considered [7]** 4/12 4/13 15/1 40/12 40/23 41/5 55/14

**considering [7]** 41/24 42/7 46/2 46/11 55/7 56/2 60/3
**consists [2]** 61/6 61/11
**conspiracy [3]** 40/13 40/25 44/18
**constant [1]** 52/8
**constantly [1]** 4/10
**constituents [3]** 24/5 24/15 49/5
**Constitution [1]** 3/5
**constitutional [1]** 22/24
**constitutionally [2]** 8/25 10/23
**consulting [1]** 41/14
**contact [1]** 14/20
**contends [1]** 39/8
**contents [1]** 4/24
**contest [1]** 5/19
**context [1]** 36/21
**continents [1]** 48/15
**contingent [1]** 25/18
**continue [3]** 24/12 24/17 52/7
**continued [2]** 27/23 27/23
**continuous [1]** 18/1
**contract [33]** 11/21 11/23 12/6 13/10 13/21 13/22 14/8 14/9 14/12 14/14 14/22 15/1 15/4 15/4 15/12 16/3 16/7 16/8 18/16 18/18 18/19 18/22 26/23 27/7 37/4 37/8 37/10 38/6 38/15 40/9 42/23 44/23 45/21
**contracts [2]** 25/11 31/18
**contrary [4]** 25/14 38/24 56/14 57/22
**contribution [4]** 39/7 39/18 39/19 39/22
**contributions [1]** 48/10
**controlling [1]** 14/1
**controversy [1]** 7/2
**convey [1]** 23/2
**conveyed [2]** 8/12 8/20
**convicted [9]** 12/15 40/14 40/25 42/10 44/3 49/2 56/8 57/18 58/22
**conviction [13]** 10/24 17/18 17/21 18/2 18/16 19/5 26/22 26/24 33/3 36/2 36/7 53/21 64/8
**convictions [2]** 48/13 58/14
**convince [1]** 46/25
**convinced [2]** 42/25 43/5
**convincing [15]** 15/16 17/12 17/22 18/4 18/7 18/11 19/1 26/12 26/17

## C

convincing... [6]  26/21 33/2 35/24 36/16 36/20 41/2
convincingly [1]  51/24
cooperate [1]  61/25
cooperated [4]  13/6 31/6 31/12 59/15
cooperation [1]  59/12
cooperator [1]  31/8
copies [3]  4/18 28/17 64/3
copy [1]  64/1
corporate [1]  54/17
correct [6]  11/13 11/17 13/22 34/5 41/8 66/5
correctly [1]  44/22
corrupt [5]  29/23 29/25 31/20 51/22 53/6
corrupted [1]  25/9
corruption [17]  6/7 6/11 15/23 29/14 29/15 29/16 30/23 51/3 52/2 52/4 52/6 52/10 52/15 52/17 52/18 52/21 52/24
corruptly [2]  13/21 34/25
cost [1]  64/16
costs [2]  14/23 14/25
could [6]  15/1 17/10 37/16 39/15 39/24 51/11
Council [1]  4/16
Council-member [1]  4/16
counsel [14]  3/12 3/15 3/16 3/22 8/16 27/10 45/22 58/12 58/12 60/6 60/9 63/12 64/5 64/19
counsel's [2]  25/6 57/21
count [1]  40/25
counter [1]  59/6
counter-balance [1]  59/6
country [2]  3/4 53/2
Counts [3]  61/3 61/6 61/11
county [4]  25/11 28/18 31/18 38/9
course [6]  26/3 26/5 27/21 28/19 42/24 59/4
court [54]  1/1 3/7 7/23 8/18 10/7 10/19 10/25 11/9 12/12 12/21 14/1 14/4 14/20 15/7 15/11 15/21 16/6 16/22 16/22 17/9 17/13 17/21 18/24 18/25 19/9 19/13 19/16 21/25 22/5 22/5 22/21 23/3 26/5 27/2 27/2 27/5 27/8 27/12 27/14

27/21 29/24 30/8 32/5 32/24 33/4 42/18 50/11 61/2 61/23 62/20 62/25 64/20 64/25 65/11
Court's [2]  41/13 62/3
court-ordered [1]  61/23
courthouse [3]  1/22 2/5 6/18
courtroom [2]  4/2 4/9
courtrooms [1]  20/21
courts [5]  49/12 49/13 51/1 54/18 56/6
cover [1]  39/19
cover-up [1]  39/19
CR [2]  1/8 3/10
crack [1]  58/14
created [1]  38/25
creator [1]  31/20
crime [19]  9/3 17/18 17/21 18/2 18/16 19/5 21/3 21/3 21/3 25/16 25/19 25/20 25/21 25/22 33/3 41/21 52/2 52/18 57/19
crimes [10]  34/17 35/14 42/6 45/18 47/20 50/16 50/18 51/4 51/4 51/16
criminal [14]  4/2 10/4 10/5 26/3 32/2 33/18 41/16 42/5 50/25 52/18 53/11 57/17 59/22 62/15
criminals [1]  54/4
critical [2]  50/21 60/4
crossed [1]  23/15
crowds [1]  48/11
crushing [1]  52/5
CSR [3]  1/21 66/3 66/16
culpable [1]  57/5
CUNEO [3]  1/21 66/3 66/16
current [2]  33/1 41/14
custodial [2]  50/15 55/4
custody [3]  3/22 41/17 61/4
cycle [1]  35/4

## D

DALE [2]  1/4 3/7
danger [1]  62/9
date [4]  62/16 62/21 63/9 66/10
daughter [1]  24/1
day [3]  8/11 20/5 22/7
days [5]  28/15 28/24 42/17 64/9 64/22
deadline [1]  39/4
deal [1]  44/11
dealing [1]  34/22
Dean [23]  37/9 37/14

37/19 38/10 38/12 39/2 40/7 40/11 42/25 43/4 43/9 45/2 46/3 51/12 56/4 56/15 56/23 57/1 57/5 57/8 57/12 57/12 57/17
Dean Flynn [20]  37/9 37/14 38/10 38/12 39/2 40/7 40/11 42/25 43/4 45/2 46/3 51/12 56/4 56/23 57/1 57/5 57/8 57/12 57/12 57/17
Dean Flynn's [2]  37/19 56/15
decades [1]  22/1
deceived [1]  40/7
decided [1]  18/5
decision [4]  21/4 21/4 21/4 36/22
decline [2]  41/7 49/18
dedicated [3]  24/21 48/15 52/25
deem [1]  65/2
deeply [1]  23/21
defend [1]  10/23
defendant [51]  1/10 2/9 8/7 8/12 8/13 9/1 12/1 12/2 17/3 17/4 18/1 18/12 26/5 26/8 27/18 28/7 28/9 28/13 28/16 28/17 29/3 29/7 29/18 30/4 30/7 31/7 31/14 31/17 31/21 42/2 42/6 46/15 54/15 58/7 60/2 60/17 60/20 60/24 61/2 61/9 61/14 61/18 61/21 61/25 62/1 62/4 62/6 62/10 62/12 63/5 63/8
defendant's [7]  9/20 26/2 26/15 31/10 34/17 41/5 54/23
defendants [8]  30/22 30/23 42/9 47/13 48/3 52/23 56/7 59/11
defense [34]  4/15 4/17 13/14 22/25 25/6 25/14 29/11 30/25 32/10 33/8 34/11 35/12 35/24 36/4 37/1 38/16 39/8 40/1 40/16 40/21 44/20 44/22 46/7 47/16 47/25 49/11 55/20 56/2 56/20 57/4 57/21 58/9 58/12 59/6
defined [2]  21/1 21/2
definitely [2]  23/14 56/18
degree [3]  45/25 48/3 50/3
delayed [1]  33/21
deliberate [1]  54/7
deliver [1]  27/25
demanded [1]  45/4

demands [1]  37/23
democracy [1]  53/1
democratic [1]  52/6
demonstrated [1]  58/5
demoralizes [1]  52/24
denial [1]  57/16
depart [1]  12/21
Department [1]  6/12
departure [2]  7/16 49/14
describe [2]  48/18 48/20
described [3]  41/24 52/14 58/8
describes [2]  38/1 58/23
description [2]  42/13 46/8
deserve [1]  24/22
deserving [2]  48/23 50/8
designate [2]  64/23 65/1
designated [2]  63/1 63/6
designation [1]  63/8
desired [1]  45/5
desperate [4]  25/11 31/17 37/19 39/13
desperately [2]  44/1 57/9
despite [7]  47/16 48/6 48/12 51/16 53/14 56/15 57/21
destroying [1]  44/10
detail [2]  42/17 48/18
detention [1]  55/16
determination [3]  41/23 45/21 62/3
determine [2]  35/16 37/2
determined [1]  35/15
determining [5]  18/10 36/12 41/5 49/20 57/2
deterred [2]  52/19 53/1
deterrence [4]  42/5 50/25 53/13 60/4
deterrent [5]  29/24 30/21 32/7 53/20 55/9
deterring [2]  51/1 52/10
devastating [3]  24/17 47/12 52/15
deviated [1]  23/19
devices [1]  4/7
devoted [2]  21/5 21/6
did [30]  4/24 5/4 5/7 5/14 5/16 5/17 5/18 6/21 8/22 9/13 12/14 12/17 13/1 13/6 14/24 14/24 15/2 20/25 21/13 32/1 32/20 32/25 33/16 37/23 39/9 40/20 42/25 45/9 51/14 57/3

didn't [4]  10/16 28/11 39/8 39/12
died [3]  21/10 21/12 21/13
difference [1]  30/10
differences [1]  57/11
different [6]  6/19 6/22 7/10 11/16 29/12 29/13
differently [2]  11/23 12/1
difficulty [1]  47/8
diminishes [1]  21/18
directly [3]  39/6 39/14 39/19
disagree [2]  23/14 35/22
disagrees [1]  40/16
discretion [2]  18/24 18/25
discuss [2]  19/11 58/10
discusses [1]  36/11
discussing [1]  28/23
disparate [1]  56/22
disparities [2]  42/9 56/7
disparity [1]  57/2
dispositive [2]  14/5 19/9
disproportionate [3]  36/1 36/13 56/19
dispute [2]  33/3 33/22
disrupted [1]  24/3
distinguishes [2]  8/23 23/11
distract [1]  39/16
distressing [1]  23/20
district [11]  1/1 1/2 3/6 3/8 6/6 20/8 52/13 53/2 54/12 56/12 62/22
District's [1]  4/3
divert [1]  44/12
DIVISION [1]  1/3
DNA [1]  62/1
do [35]  5/1 5/11 5/13 5/19 5/23 9/1 9/1 9/25 10/19 11/12 11/12 14/11 15/2 15/10 20/20 21/20 22/8 29/24 35/9 36/25 39/18 41/5 41/7 48/25 50/3 50/14 55/10 55/13 57/23 59/2 59/3 62/21 64/11 64/12 64/19
doctors [1]  54/17
documentary [3]  14/21 37/13 42/18
documents [3]  4/21 5/5 27/22
does [14]  8/19 9/8 9/15 20/14 20/24 30/19 34/3 35/13 49/1 49/18 56/25 60/9 62/5 63/12
doesn't [5]  15/17 26/5

{PLAINTIFF} v.
{DEFENDANT}

{WITNESSNAME}
{DATE}

## D

**doesn't... [3]**  27/5 31/23 58/14
**doing [2]**  14/25 49/3
**dollars [5]**  11/6 12/10 16/12 16/17 37/9
**don't [9]**  4/9 7/18 19/8 19/17 27/16 32/24 44/5 51/20 62/19
**done [7]**  10/12 15/5 19/20 30/8 41/2 48/19 49/22
**DOTSON [3]**  2/3 3/14 32/10
**doubt [6]**  24/13 34/19 37/4 41/6 43/8 44/17
**doubts [2]**  24/7 24/9
**down [1]**  5/8
**downward [8]**  7/16 12/21 30/3 30/4 30/11 30/20 59/21 60/4
**Dr [4]**  6/20 8/15 16/5 51/11
**Dr. [85]**
**Dr. Mark [1]**  8/1
**Dr. Mark Ridley-Thomas [1]**  9/6
**Dr. Ridley-Thomas [65]**  4/22 5/4 5/25 7/8 7/21 22/6 22/11 33/9 33/22 33/25 34/3 34/5 35/1 38/8 38/12 38/25 39/8 39/13 40/3 40/13 40/24 42/22 42/25 43/8 43/17 43/19 43/25 44/6 44/8 44/11 44/22 45/4 45/11 45/24 46/17 46/25 48/1 48/8 48/18 48/25 49/2 49/4 49/22 50/2 50/16 53/22 54/21 55/1 55/10 55/16 56/3 56/16 56/22 57/1 57/5 57/7 57/12 57/16 57/24 58/22 58/23 59/14 62/13 63/1 64/7
**Dr. Ridley-Thomas' [1]**  56/14
**Dr. Ridley-Thomas's [17]**  33/17 34/9 37/23 38/5 40/8 43/23 45/25 47/2 47/18 49/21 51/7 54/7 57/20 59/10 59/22 59/23 63/15
**dramatic [1]**  7/16
**dramatically [1]**  12/21
**drawn [1]**  48/11
**drive [1]**  20/8
**drug [2]**  17/25 62/2
**DSF [2]**  1/8 3/10
**due [1]**  60/18
**dumped [1]**  19/23
**duration [1]**  49/16
**during [5]**  4/7 8/16

41/9 49/10 61/17
**duty [1]**  11/8
**DWP [1]**  31/5

## E

**each [5]**  31/3 34/24 38/11 61/6 61/11
**eagerly [1]**  31/16
**Eagle [3]**  13/16 14/4 15/20
**earlier [1]**  39/18
**early [3]**  13/1 13/6 48/2
**edition [1]**  41/14
**effect [6]**  26/4 26/7 33/23 36/1 36/13 62/14
**effort [4]**  38/7 39/20 44/12 45/9
**efforts [1]**  37/19
**either [5]**  12/6 12/18 59/15 60/9 63/12
**elected [10]**  20/5 25/9 30/15 34/21 34/23 35/2 43/20 45/14 50/3 50/4
**element [1]**  52/7
**eligible [1]**  33/23
**eloquently [1]**  51/24
**emails [4]**  27/22 28/6 29/5 51/9
**emblematic [1]**  3/5
**emerge [1]**  24/18
**emotional [1]**  48/6
**emotionally [1]**  47/12
**employees [3]**  20/13 24/6 38/10
**employer [1]**  40/7
**en [1]**  26/16
**en banc [1]**  26/16
**end [3]**  23/10 23/16 43/5
**ended [2]**  22/4 40/3
**ending [1]**  44/9
**ends [2]**  21/14 47/9
**endured [1]**  21/1
**enforcement [3]**  42/14 53/8 53/10
**engage [3]**  52/23 53/6 55/2
**engaged [1]**  49/8
**Englander [6]**  6/14 7/14 8/24 31/2 31/11 58/21
**Englander's [1]**  16/19
**enhancement [13]**  26/12 26/22 27/6 27/8 27/13 35/12 35/25 36/7 36/12 38/15 40/15 45/17 46/4
**enormous [2]**  49/22 52/3
**enough [2]**  4/20 46/25
**entered [1]**  64/10
**enthusiastic [1]**  7/6
**entire [4]**  8/16 34/16 39/7 53/9

**entirely [1]**  28/8
**entitled [1]**  66/7
**entity [1]**  39/15
**equal [1]**  54/22
**equally [1]**  57/5
**equivalent [1]**  7/22
**eroded [1]**  35/3
**escorts [1]**  6/16
**especially [4]**  34/25 41/25 46/19 59/11
**essential [1]**  53/1
**establish [2]**  54/3 55/19
**established [3]**  36/11 38/3 42/12
**establishes [1]**  38/24
**establishing [2]**  35/22 53/9
**ESTRADA [1]**  2/2
**et [1]**  51/10
**et cetera [1]**  51/10
**ethically [1]**  12/12
**ethics [1]**  49/9
**evaluate [1]**  59/2
**evaluated [1]**  51/5
**evaluation [1]**  37/20
**even [30]**  8/11 9/1 9/2 14/4 15/25 19/5 23/17 26/6 26/8 26/20 27/10 31/5 37/7 39/23 40/23 44/2 44/23 46/1 46/22 47/9 48/7 49/1 49/24 50/9 50/15 53/6 53/15 57/15 58/14 59/1
**event [4]**  15/22 54/9 55/11 58/17
**events [1]**  12/18
**ever [4]**  14/2 20/1 26/17 53/2
**every [6]**  23/25 35/4 47/8 47/15 51/23 52/6
**everyone [1]**  3/25
**evidence [32]**  7/7 14/21 14/21 15/13 15/16 15/18 16/2 18/7 19/2 19/4 19/8 26/11 26/12 26/21 27/1 33/2 36/5 36/17 37/3 37/11 37/13 37/25 38/1 38/4 39/5 41/2 42/14 42/18 42/21 43/7 44/7 46/19
**evidentiary [1]**  27/13
**exact [1]**  14/8
**exactly [1]**  40/3
**example [2]**  17/8 17/24
**examples [1]**  59/5
**excellent [1]**  58/12
**except [2]**  18/16 41/9
**exceptions [1]**  64/8
**excess [3]**  37/5 37/8 38/3
**excessive [1]**  56/18
**exchange [2]**  40/8 57/9
**exclude [1]**  59/11

**exclusively [1]**  42/1
**executive [1]**  29/1
**exemplary [1]**  21/21
**exempted [1]**  16/1
**exercise [1]**  22/24
**exercising [2]**  10/1 57/25
**exhibit [2]**  14/13 59/9
**exhibits [1]**  28/6
**exists [2]**  23/9 52/17
**exonerated [1]**  65/4
**expanded [1]**  38/12
**expect [2]**  21/22 24/22
**expectation [1]**  37/6
**expected [2]**  37/9 51/5
**expense [2]**  35/7 64/15
**expenses [1]**  14/17
**expensive [1]**  53/16
**experience [1]**  24/17
**explain [2]**  4/24 5/14
**explains [1]**  13/19
**explicitly [1]**  8/2
**expressed [1]**  37/22
**extensively [1]**  16/14
**extent [1]**  57/4
**extra [1]**  63/16
**extraordinary [5]**  21/16 45/8 48/12 50/7 50/7
**extremely [3]**  19/10 36/1 53/13

## F

**face [3]**  3/3 37/8 38/20
**faces [2]**  44/1 47/16
**fact [11]**  7/16 7/21 9/13 11/13 11/15 18/22 36/23 38/7 52/17 62/10 64/24
**fact-bargaining [1]**  11/13
**fact-finder [2]**  7/16 7/21
**factor [6]**  45/13 50/8 53/13 56/6 56/10 58/18
**factors [14]**  19/12 36/11 36/15 41/24 47/1 49/16 50/13 50/19 50/21 55/18 55/21 56/18 58/25 59/20
**facts [12]**  12/4 16/22 19/5 27/6 27/9 37/11 41/24 42/16 42/20 45/1 45/20 46/11
**factually [1]**  58/1
**failed [3]**  8/8 8/21 9/10
**failure [2]**  58/4 62/14
**fair [1]**  23/8
**fairly [1]**  13/7
**fairness [1]**  41/7
**faith [2]**  8/9 24/14
**faithful [1]**  49/24
**fallout [1]**  23/22
**false [1]**  38/25
**families [5]**  24/13 44/4

47/7 47/8 47/19
**family [15]**  20/17 23/23 24/2 25/13 25/19 47/3 47/4 47/6 47/18 47/21 48/2 48/5 48/6 48/22 49/24
**far [4]**  7/13 7/13 37/8 47/6
**father [2]**  21/9 47/11
**fathers [1]**  21/6
**favor [1]**  45/11
**FBI [1]**  3/16
**feared [1]**  44/8
**federal [7]**  4/2 6/24 9/5 10/4 10/5 10/13 47/23
**fee [1]**  64/17
**feel [2]**  23/1 24/4
**feels [1]**  9/25
**felonies [1]**  47/23
**felons [2]**  44/3 47/7
**felt [1]**  31/21
**few [7]**  6/7 17/15 21/13 28/24 32/11 59/5 64/8
**fifth [1]**  36/15
**file [4]**  10/13 10/15 64/21 65/2
**filed [10]**  4/13 4/17 10/3 10/23 13/4 20/15 26/14 27/3 28/6 64/9
**filing [4]**  8/5 16/10 16/10 64/17
**filings [5]**  10/7 10/24 14/3 28/21 38/2
**filled [1]**  48/2
**final [1]**  60/7
**financial [4]**  44/2 47/17 61/23 61/24
**financially [1]**  47/12
**find [12]**  19/8 20/11 22/23 24/12 24/16 41/8 45/16 46/8 46/11 46/21 59/18 60/13
**finder [2]**  7/16 7/21
**findings [1]**  35/10
**fine [8]**  41/20 55/22 55/24 60/21 60/21 60/22 61/18 62/24
**fines [1]**  55/23
**first [14]**  1/22 3/25 6/23 8/5 9/23 10/2 13/14 34/14 34/15 46/21 54/19 55/1 56/6 63/11
**FISCHER [2]**  1/4 3/7
**FISHER [2]**  2/10 3/22
**fit [1]**  39/1
**five [1]**  26/6
**fixed [2]**  20/10 20/12
**flag [2]**  3/3 3/4
**flee [1]**  62/11
**floor [1]**  63/10
**flow [1]**  37/9
**Flynn [38]**  7/22 8/24 11/2 11/4 11/7 11/24 12/8 12/15 12/23 16/5

## F

**Flynn... [28]** 25/10 25/10 27/21 28/3 28/9 31/15 31/16 31/21 37/9 37/14 38/10 38/12 39/2 40/7 40/11 42/25 43/4 45/2 46/3 51/12 56/4 56/23 57/1 57/5 57/8 57/12 57/12 57/17
**Flynn's [6]** 12/11 12/20 27/8 31/14 37/19 56/15
**focus [1]** 46/9
**focusing [1]** 44/11
**FOERSTER [1]** 2/9
**following [2]** 60/13 61/13
**force [1]** 57/7
**foregoing [1]** 66/5
**foremost [1]** 6/23
**forgot [1]** 63/14
**form [3]** 31/9 31/12 44/21
**Forma [1]** 64/17
**format [1]** 66/7
**former [3]** 4/15 24/15 34/20
**formidable [1]** 48/9
**forms [1]** 54/14
**forth [1]** 28/12
**fortunate [1]** 47/6
**forward [1]** 24/19
**found [9]** 6/21 7/21 14/4 17/6 17/9 18/3 32/24 34/24 44/17
**four [6]** 12/22 26/6 58/11 58/14 58/24 59/1
**Francisco [1]** 2/12
**fraud [2]** 44/19 58/15
**fraudulent [1]** 18/9
**fraudulently [1]** 39/24
**frequency [1]** 54/19
**friend [1]** 48/22
**friends [2]** 47/21 49/24
**friendship [1]** 48/21
**full [7]** 7/3 13/10 16/20 22/22 23/6 40/10 60/22
**fully [2]** 26/1 30/5
**Fund [1]** 41/22
**funds [2]** 37/20 44/12
**funneled [3]** 38/20 38/21 40/7
**funneling [1]** 39/25
**further [12]** 5/23 23/4 27/16 32/5 33/7 34/1 34/9 42/6 52/12 59/24 63/12 65/6
**future [6]** 24/11 44/2 47/17 55/8 55/11 62/4

## G

**gain [1]** 25/13
**gains [1]** 61/23
**GALIA [2]** 2/9 3/20
**Galia Amram [1]** 3/20

**gamram [1]** 2/13
**garbage [2]** 19/23 20/5
**gathered [1]** 42/14
**gave [1]** 39/4
**general [4]** 46/10 55/8 60/25 61/16
**get [15]** 5/4 19/15 19/25 20/10 20/12 25/12 27/24 27/25 29/19 29/19 30/15 30/23 39/14 45/5 45/15
**gets [1]** 20/5
**getting [1]** 31/22
**gifts [1]** 53/16
**give [3]** 12/22 23/6 24/15
**given [1]** 54/15
**gives [1]** 16/11
**giving [3]** 25/18 26/8 56/17
**gmail.com [1]** 1/25
**go [7]** 8/22 9/6 16/15 23/24 24/18 26/4 40/4
**goal [5]** 37/24 39/22 44/19 50/22 56/9
**goes [2]** 21/22 58/7
**going [5]** 16/15 25/16 28/14 33/4 62/21
**gone [3]** 7/2 20/6 21/15
**good [14]** 3/13 3/18 3/19 3/20 3/24 22/17 22/19 28/23 30/18 48/18 48/22 48/24 49/23 51/13
**got [2]** 16/20 20/1
**government [88]**
**government's [14]** 7/23 11/1 16/3 26/19 31/2 34/12 36/9 36/14 37/11 37/12 49/19 58/18 59/9 62/8
**grandchildren [1]** 24/2
**grandfather [2]** 20/18 21/13
**grandmother [2]** 21/12 21/12
**grant [1]** 49/13
**granted [1]** 26/16
**great [1]** 44/11
**greater [2]** 26/6 60/14
**Green [1]** 56/13
**GREER [2]** 2/3 3/14
**grew [1]** 21/1
**gross [1]** 39/10
**grounds [1]** 47/23
**group [1]** 35/2
**grow [1]** 47/14
**growing [1]** 21/9
**guidance [1]** 48/21
**guideline [9]** 11/22 12/1 12/3 15/11 35/12 35/15 41/17 41/18 41/20
**guidelines [36]** 7/17

9/12 9/14 11/3 11/5 11/10 11/12 11/20 12/11 12/14 12/16 13/13 13/18 13/24 13/25 14/7 17/10 25/23 25/25 26/4 26/9 26/10 26/18 30/2 30/11 30/21 33/11 33/14 36/23 41/11 41/12 41/15 49/13 50/11 56/17 59/18
**guilty [4]** 9/13 50/1 58/19 58/21

## H

**had [38]** 4/18 4/18 4/20 10/12 11/8 12/24 13/3 14/20 16/1 18/1 18/1 18/8 18/8 19/23 20/19 22/22 23/24 28/12 31/5 31/17 33/21 37/5 37/15 37/16 37/24 37/25 38/6 39/18 39/21 40/24 41/1 43/12 45/7 47/8 48/5 54/15 54/20 57/14
**hand [3]** 18/15 25/16 31/17
**handed [1]** 16/16
**happen [1]** 10/24
**happened [4]** 16/4 16/19 16/21 21/15
**happens [4]** 20/4 29/16 29/17 47/15
**happy [2]** 27/1 27/14
**harassment [2]** 39/16 43/11
**hard [2]** 20/20 29/22
**Hardly [1]** 51/20
**harm [3]** 52/12 52/15 54/3
**harmful [1]** 23/21
**harsher [1]** 58/7
**has [71]**
**have [68]**
**having [5]** 7/2 20/10 21/2 28/25 51/21
**he [87]**
**he's [3]** 19/14 19/20 31/6
**head [1]** 5/8
**health [3]** 43/13 46/15 46/24
**hear [2]** 4/1 5/9
**heard [1]** 32/16
**Hearing [1]** 1/19
**heart [1]** 23/25
**heartfelt [1]** 48/20
**height [1]** 43/15
**heightened [1]** 36/6
**heights [1]** 54/16
**held [1]** 66/6
**help [6]** 25/17 39/16 40/4 45/13 47/14 57/20
**helpful [2]** 58/9 59/7

**helping [1]** 48/16
**her [21]** 12/22 19/24 23/25 27/23 27/24 27/25 32/2 37/20 37/21 37/23 39/4 40/7 43/6 45/5 45/5 46/6 56/5 57/13 57/14 57/17 57/19
**here [36]** 6/19 7/9 7/25 12/5 15/24 16/21 18/14 19/6 19/17 24/16 25/6 25/8 26/21 27/6 29/7 31/10 32/15 36/8 36/16 36/24 42/12 42/16 42/22 42/24 43/7 45/18 47/15 49/16 50/21 51/7 54/8 55/1 55/19 57/2 58/12 59/3
**hereby [2]** 61/3 66/3
**high [5]** 19/17 28/18 29/1 48/7 59/18
**high-level [2]** 28/18 29/1
**higher [2]** 10/11 11/17
**him [10]** 4/24 10/23 22/7 28/10 29/5 31/23 47/5 50/4 57/23 59/15
**himself [13]** 8/13 16/1 21/16 25/13 28/1 34/20 43/25 48/1 48/15 49/6 57/21 62/12 63/5
**his [80]**
**history [8]** 26/3 33/18 41/17 42/2 46/14 52/5 59/23 60/2
**hold [1]** 52/19
**home [2]** 53/25 55/16
**honest [4]** 44/18 45/19 52/25 58/15
**Honor [45]** 3/13 3/19 3/20 4/23 4/25 5/3 5/6 5/13 5/16 5/22 6/1 6/5 7/19 11/8 12/20 16/15 20/19 22/13 22/18 23/1 23/8 23/21 24/15 24/23 25/2 27/17 27/18 29/11 30/25 32/4 32/17 32/22 33/7 34/4 34/6 60/11 60/12 62/7 62/18 62/24 63/13 63/14 64/12 65/7 65/8
**HONORABLE [2]** 1/4 3/7
**hope [1]** 24/20
**hospital [2]** 21/20 21/24
**house [1]** 19/24
**how [22]** 10/19 12/16 13/8 13/19 14/11 14/16 14/18 17/25 20/7 20/15 20/16 20/16 21/14 22/5 30/15 30/15 30/16 32/7 32/24 48/20 52/14 62/23

**However [2]** 33/20 55/18
**humiliation [1]** 54/13
**humility [1]** 24/19
**hundred [5]** 11/5 12/9 16/12 16/17 19/13
**hundred-thirty [1]** 19/13
**hundreds [1]** 31/6
**hurt [1]** 23/23
**husband [2]** 20/18 47/11
**husbands [1]** 21/5
**Hymas [1]** 41/2

## I

**I'd [5]** 22/17 25/5 26/10 26/13 31/3
**I'll [1]** 32/10
**I'm [9]** 16/14 24/5 27/13 28/14 41/24 42/7 46/2 46/7 52/1
**I've [3]** 22/22 27/15 55/14
**if [36]** 4/8 12/9 13/21 14/4 14/12 15/7 15/25 19/5 19/18 23/17 27/2 27/5 27/12 31/23 32/22 33/23 33/25 34/19 37/10 37/22 39/23 40/23 40/25 44/2 45/7 49/6 49/14 53/2 53/15 59/1 62/25 64/5 64/13 64/16 64/19 64/20
**ignored [1]** 13/17
**ignores [1]** 37/3
**ill [1]** 23/12
**ill-advised [1]** 23/12
**illegal [6]** 23/10 23/12 23/13 23/15 29/9 55/3
**Illinois [1]** 52/14
**illustrate [1]** 48/11
**illustrates [1]** 51/7
**image [1]** 8/10
**immediately [4]** 38/21 39/3 60/19 60/23
**immense [1]** 31/21
**impact [2]** 4/18 47/3
**impacted [2]** 24/3 48/21
**importance [1]** 60/4
**important [4]** 23/1 51/3 52/14 53/13
**importantly [1]** 56/9
**impose [1]** 52/22
**imposed [3]** 56/5 60/8 60/10
**imposing [1]** 36/20
**impossible [1]** 55/12
**impoverished [1]** 21/9
**imprisonment [2]** 56/16 61/9
**improving [1]** 48/15
**incarcerated [1]** 47/10

**I**

**incarceration [2]**  47/3 47/20
**incentives [1]**  58/3
**include [2]**  62/25 65/3
**included [1]**  63/22
**including [2]**  4/1 39/14
**income [1]**  61/22
**inconvenience [1]** 35/7
**incorrect [2]**  13/12 58/1
**increase [1]**  35/17
**increased [2]**  10/22 17/10
**increasing [1]**  54/19
**indicated [2]**  58/2 59/21
**indicates [1]**  47/18
**indictment [8]**  13/6 18/19 31/4 31/12 31/25 61/4 61/7 61/12
**indirectly [2]**  39/6 39/14
**individualized [2]** 41/23 55/19
**individuals [1]**  52/10
**inexcusable [1]**  53/11
**inexplicably [1]**  48/25
**infectious [1]**  52/2
**information [7]**  32/1 40/18 47/17 57/14 58/25 59/3 62/21
**inheritance [1]**  61/22
**initial [2]**  8/5 41/13
**injured [1]**  35/5
**inmates [1]**  46/21
**insignificant [1]**  46/16
**inspired [1]**  20/16
**instance [2]**  28/8 51/21
**instead [2]**  28/19 38/22
**institution [2]**  40/6 63/6
**instructions [1]**  63/21
**insufficient [1]**  40/17
**integrity [2]**  35/3 52/6
**intended [6]**  15/8 15/9 15/10 43/3 44/23 45/24
**intense [1]**  22/22
**intentionally [1]**  27/20
**interest [1]**  30/19
**intolerant [1]**  53/8
**invitation [1]**  53/18
**invoices [1]**  14/16
**involved [4]**  34/22 35/7 51/9 51/22
**involves [1]**  56/24
**involving [1]**  56/16
**is [198]**
**issue [8]**  7/1 26/16 27/4 32/23 36/19 36/25 37/12 49/12
**issues [3]**  18/20 34/13

52/18
**it [105]**
**it's [19]**  8/7 12/6 12/6 12/6 14/5 14/13 17/15 20/17 23/1 23/8 25/20 25/21 25/22 26/24 27/9 30/16 60/20 61/2 63/5
**item [2]**  3/10 6/25
**Item No. 2 [1]**  3/10
**items [1]**  40/18
**its [17]**  13/14 14/2 16/10 16/10 25/15 26/14 28/5 30/8 35/2 35/2 36/3 38/2 38/20 40/5 42/19 50/10 59/5
**itself [1]**  37/5

**J**

**Jaycox [1]**  56/12
**job [4]**  19/21 20/21 45/13 48/24
**jobs [1]**  54/4
**joy [1]**  37/23
**judge [6]**  1/4 3/8 6/18 52/1 52/13 53/4
**judges [3]**  20/22 20/23 48/24
**judgment [5]**  61/2 62/25 63/23 64/9 64/23
**judgment's [1]**  61/19
**judgments [1]**  61/23
**judicial [3]**  8/10 23/5 66/8
**jump [1]**  27/25
**jumped [1]**  31/16
**jury [5]**  6/21 42/16 44/5 44/17 57/25
**jury's [1]**  8/12
**just [20]**  12/19 17/12 19/19 19/20 21/13 22/7 27/10 28/22 28/24 29/9 29/10 32/6 32/22 32/25 33/20 42/4 50/24 53/7 55/6 62/18
**justice [2]**  52/18 54/22
**justification [1]**  53/15
**justifies [1]**  40/15
**justify [1]**  54/13
**justifying [1]**  50/14

**K**

**keep [2]**  9/15 50/4
**keeping [2]**  29/5 52/3
**kept [2]**  19/23 19/24
**KIAEY [2]**  2/11 3/23
**kind [5]**  29/16 29/17 29/21 29/21 29/22
**kinds [2]**  42/7 55/14
**knew [4]**  11/18 25/10 27/19 49/10
**know [8]**  17/13 19/18 28/22 32/1 32/24 44/5 60/9 62/19
**known [1]**  34/25

**knows [2]**  16/22 20/3
**Kuehl [1]**  28/12

**L**

**lack [3]**  33/17 59/22 62/9
**language [3]**  28/16 28/17 28/19
**LAPD [1]**  4/16
**large [1]**  50/3
**Largely [1]**  39/21
**Las [1]**  6/15
**last [4]**  13/7 19/11 33/20 55/2
**last-minute [1]**  13/7
**lately [1]**  6/7
**later [4]**  28/15 28/24 34/1 63/20
**latter [1]**  29/21
**law [22]**  2/9 2/10 2/10 2/11 6/24 11/14 13/25 19/10 23/7 24/1 26/20 32/8 33/1 41/4 42/4 42/14 50/23 52/22 53/3 53/8 53/9 55/6
**laws [1]**  52/10
**lawyer [1]**  10/22
**lawyers [2]**  10/12 54/18
**leader [1]**  48/7
**leaders [1]**  25/22
**lean [1]**  27/23
**leaned [1]**  25/10
**learn [2]**  24/17 51/20
**least [3]**  13/15 38/4 49/6
**leave [2]**  4/9 64/17
**lectern [2]**  6/2 22/14
**led [1]**  21/6
**legal [5]**  23/9 29/9 39/23 55/15 60/7
**legally [1]**  58/1
**legitimate [1]**  15/4
**lengthy [1]**  27/4
**lenience [1]**  54/15
**leniency [3]**  26/7 58/4 58/6
**less [4]**  7/13 7/13 45/9 54/8
**lesser [1]**  48/3
**letter [6]**  4/15 4/16 4/17 19/22 20/7 34/19
**letters [12]**  4/14 19/13 19/15 19/18 19/19 19/20 19/21 20/15 47/25 48/10 48/17 50/5
**level [19]**  21/21 26/11 27/6 27/13 28/18 29/1 33/10 33/14 33/24 34/7 35/12 35/14 35/17 38/14 40/15 41/16 45/17 48/12 51/23
**levels [1]**  59/21
**lie [1]**  43/3

**life [4]**  20/24 21/16 22/7 24/21
**like [17]**  13/13 19/11 19/18 20/18 20/21 20/23 21/20 22/12 22/17 23/24 25/5 26/10 26/13 28/11 29/18 31/3 59/15
**likely [2]**  39/17 62/11
**limited [1]**  49/15
**LINDSEY [2]**  2/3 3/14
**Lindsey Greer Dotson [1]**  3/14
**lindsey.dotson [1]**  2/6
**line [2]**  23/11 23/15
**listing [1]**  12/16
**litigation [4]**  9/20 10/3 10/11 13/7
**little [4]**  15/15 23/17 38/6 56/21
**live [2]**  20/4 20/13
**lived [1]**  20/3
**livelihood [2]**  43/20 54/4
**lives [4]**  21/7 24/2 48/15 48/21
**LLP [1]**  2/9
**loans [1]**  18/9
**lobbyist [6]**  28/10 28/13 28/15 28/20 29/1 29/4
**Local [1]**  4/3
**located [1]**  63/10
**Lompoc [1]**  63/2
**long [3]**  7/11 17/25 31/4
**longer [3]**  24/9 36/21 36/24
**Lonich [2]**  18/5 18/20
**look [5]**  14/9 14/12 20/11 21/8 31/15
**Los [8]**  1/16 1/24 2/6 2/17 25/9 43/24 48/9 63/11
**Los Angeles [3]**  25/9 43/24 63/11
**lose [2]**  39/12 54/4
**losing [1]**  9/13
**loss [20]**  11/6 11/16 11/23 12/17 13/8 13/19 13/22 15/2 15/6 15/8 15/9 15/10 16/8 17/10 17/10 18/10 44/1 47/11 48/6 53/23
**lost [2]**  39/9 39/10
**lot [3]**  19/17 30/8 48/24
**lottery [1]**  61/22
**loving [3]**  47/4 48/5 49/24
**low [1]**  62/4
**Lucas [2]**  26/15 36/24

**M**

**made [7]**  13/3 21/2

21/16 27/11 31/7 53/4 62/10

**mail [1]**  44/18
**maintains [1]**  48/12
**majority [2]**  42/11 48/3
**make [8]**  14/18 14/19 23/2 35/10 58/13 60/7 63/3 64/22
**makes [2]**  41/4 45/25
**making [3]**  25/16 41/23 47/9
**man [1]**  7/12
**mandated [2]**  19/3 62/2
**mandatory [1]**  36/24
**many [12]**  4/14 24/6 42/24 46/21 47/7 47/8 47/12 48/17 50/5 51/9 51/11 54/20
**Marilyn [22]**  7/22 8/24 11/2 11/4 11/7 11/24 12/8 12/11 12/15 12/20 12/23 16/5 25/10 25/10 27/8 27/21 28/3 28/9 31/14 31/15 31/16 31/21
**Marilyn Flynn [18]** 7/22 8/24 11/2 11/4 11/7 11/24 12/8 12/15 12/23 16/5 25/10 25/10 27/21 28/3 28/9 31/15 31/16 31/21
**Marilyn Flynn's [4]** 12/11 12/20 27/8 31/14
**MARK [27]**  1/9 3/11 3/21 6/20 8/1 8/15 8/23 9/6 9/24 10/10 11/19 11/22 11/24 12/7 12/13 12/15 16/5 16/18 16/24 18/21 19/12 20/5 20/19 20/25 21/8 21/15 61/3
**Mark Ridley-Thomas [12]**  6/20 8/15 8/23 10/10 11/19 11/24 16/5 16/18 18/21 19/12 20/5 61/3
**Mark Ridley-Thomas's [4]**  11/22 16/24 21/8 21/15
**market [2]**  2/11 28/13
**Marshal [1]**  63/10
**MARTIN [1]**  2/2
**masked [1]**  40/5
**material [1]**  41/9
**materials [1]**  64/4
**matter [7]**  15/17 23/20 25/17 32/7 35/8 52/4 66/7
**may [6]**  23/12 25/3 47/21 49/13 50/10 64/17
**Mayor [1]**  43/24
**me [11]**  3/15 3/22 4/18 8/17 19/22 24/4 24/6

# M

**me... [4]** 24/12 24/22 46/25 50/12
**medical [1]** 46/19
**meet [2]** 15/19 47/9
**meeting [1]** 28/25
**meetings [1]** 51/10
**member [3]** 4/16 43/12 48/22
**members [3]** 24/2 47/4 48/7
**memo [4]** 8/6 9/19 16/11 22/4
**memorandum [2]** 10/8 13/15
**mentioned [2]** 31/1 36/24
**mentor [1]** 48/22
**mentored [1]** 20/16
**mere [1]** 59/1
**merely [1]** 42/12
**message [5]** 29/24 30/21 30/22 32/7 55/7
**MeToo [1]** 43/15
**MICHAEL [2]** 2/4 3/16
**Michael Morse [1]** 3/16
**michael.morse [1]** 2/7
**might [2]** 43/3 62/20
**million [3]** 6/10 6/10 6/11
**millions [1]** 37/9
**MIMA [2]** 2/11 3/23
**Mima Kiaey [1]** 3/23
**minus [1]** 26/2
**minute [1]** 13/7
**minutes [1]** 32/11
**mischaracterization [1]** 39/11
**miss [1]** 47/5
**mistake [5]** 21/3 21/3 21/3 29/10 49/8
**misusing [1]** 55/7
**Mitch [6]** 6/14 7/14 8/24 16/19 31/2 31/11
**Mitch Englander [4]** 6/14 7/14 8/24 31/2
**mitigating [6]** 22/2 45/12 46/12 50/8 50/13 60/1
**mitigation [1]** 5/24
**MLK [2]** 21/20 21/24
**mobile [1]** 4/7
**modest [1]** 50/9
**modicum [1]** 8/8
**mofo.com [2]** 2/13 2/13
**Monday [3]** 1/17 3/1 47/15
**monetized [1]** 28/9
**monetizing [2]** 25/15 53/15
**money [11]** 6/25 16/17 16/23 17/3 17/7 17/8

38/25 39/5 39/9 39/10 39/12
**monies [1]** 61/21
**month [2]** 6/13 50/15
**months [16]** 6/17 7/13 7/17 8/17 21/13 22/22 26/1 26/6 26/9 41/18 42/24 49/9 50/12 61/5 61/6 62/19
**more [17]** 5/11 19/16 24/18 30/24 35/3 46/1 46/9 46/9 46/22 47/6 49/17 51/24 53/6 53/7 53/9 56/9 62/20
**morning [7]** 3/13 3/18 3/19 3/20 3/24 22/17 22/19
**MORRISON [1]** 2/9
**MORSE [2]** 2/4 3/16
**most [15]** 19/22 25/8 30/14 34/16 35/6 44/3 45/19 47/6 47/19 48/9 50/21 54/4 54/8 54/19 57/12
**mother [2]** 21/10 21/13
**motion [6]** 10/4 10/5 28/11 28/14 28/16 28/23
**motions [1]** 13/4
**motive [2]** 57/19 57/20
**move [1]** 31/23
**Movement [1]** 43/15
**moving [2]** 51/9 57/7
**Mr. [2]** 4/18 22/6
**Mr. Parks [1]** 4/18
**Mr. Ridley-Thomas [1]** 22/6
**Ms. [7]** 4/20 5/19 10/17 32/10 32/21 34/3 62/17
**Ms. Amram [6]** 4/20 5/19 10/17 32/21 34/3 62/17
**Ms. Dotson [1]** 32/10
**much [11]** 10/19 16/9 20/14 20/15 20/16 20/16 30/19 38/7 45/9 47/19 54/8
**multiple [2]** 8/4 56/16
**must [7]** 15/21 22/6 53/1 59/17 64/9 64/22 64/23
**my [16]** 22/24 23/22 23/23 23/23 23/25 24/1 24/1 24/1 24/5 24/15 24/16 51/25 54/11 62/5 63/3 63/21
**myself [2]** 22/23 22/25

# N

**Narramore [1]** 58/2
**narrative [1]** 38/25
**nation's [1]** 52/5
**national [1]** 56/10
**natural [3]** 44/2 47/22

54/6
**nature [8]** 42/1 42/11 45/18 46/10 46/11 58/23 60/2 62/9
**nearly [1]** 51/22
**necessarily [1]** 46/7
**necessary [2]** 60/15 65/2
**need [11]** 4/8 5/11 27/16 28/14 33/1 35/10 36/25 42/2 42/8 51/25 52/16
**needed [9]** 18/3 18/7 18/11 20/12 31/18 39/23 40/3 45/4 57/9
**needs [3]** 20/10 30/24 49/5
**negotiations [1]** 51/10
**neighborhood [1]** 21/9
**neither [5]** 31/13 46/24 47/25 55/19 56/18
**nepotistic [1]** 39/21
**net [4]** 13/20 14/10 15/1 15/12
**neutral [2]** 7/15 7/20
**never [2]** 23/24 54/15
**nevertheless [3]** 17/22 45/16 50/5
**new [2]** 33/10 54/12
**New York [1]** 54/12
**news [1]** 35/4
**next [2]** 8/17 20/5
**nine [1]** 21/11
**Ninth [13]** 13/15 15/20 17/14 18/3 18/6 18/6 18/10 19/3 26/15 33/1 36/10 56/12 58/2
**no [56]** 1/8 4/7 4/18 5/3 5/22 7/2 7/7 9/10 9/24 11/21 13/3 14/6 15/3 15/8 15/13 15/18 16/2 16/6 17/2 19/8 23/2 24/9 27/17 28/3 31/8 31/12 32/7 32/7 32/17 33/22 33/24 34/11 35/9 36/6 36/20 36/23 37/1 37/2 37/4 38/6 40/1 45/8 45/23 47/2 48/5 53/15 58/25 60/11 60/12 60/14 62/7 63/13 63/20 65/7 65/8 66/16
**no-time [1]** 13/3
**No. [2]** 3/10 3/10
**nobody [1]** 20/1
**Nods [1]** 5/8
**none [1]** 14/2
**nonjudicial [1]** 54/14
**nonprofit [1]** 16/25
**noon [2]** 63/7 63/21
**normal [1]** 12/25
**normally [1]** 21/14
**North [1]** 2/5
**Northern [1]** 52/13
**not [138]**

**notably [2]** 35/6 57/12
**note [2]** 13/13 46/15
**noted [3]** 45/22 51/1 52/1
**notes [1]** 38/19
**nothing [7]** 8/17 8/18 8/18 9/17 12/6 33/7 51/13
**notice [4]** 32/12 64/8 64/21 64/23
**noting [1]** 49/11
**notion [1]** 54/13
**notwithstanding [1]** 45/16
**novel [2]** 6/23 9/4
**November [5]** 62/23 63/7 63/15 63/17 63/20
**November 13 [2]** 63/17 63/20
**November 6 [3]** 62/23 63/7 63/15
**now [11]** 9/8 12/19 13/8 15/20 17/12 24/6 26/6 43/25 51/18 60/6 60/10
**number [4]** 6/6 18/9 46/10 49/9
**numerous [1]** 48/16

# O

**objection [4]** 33/12 33/24 38/16 62/5
**objections [7]** 7/2 10/6 10/14 32/11 35/11 36/4 60/7
**objects [2]** 33/8 34/11
**obligated [2]** 10/23 12/12
**obligation [1]** 61/24
**obtain [3]** 37/19 39/13 45/10
**obtained [6]** 13/21 14/9 18/22 35/19 35/20 39/2
**obvious [1]** 35/4
**obviously [5]** 9/23 34/16 45/2 50/12 53/5
**occasion [1]** 54/14
**occurred [1]** 51/8
**occurs [1]** 51/22
**off [3]** 4/6 29/9 47/19
**offenders [1]** 52/19
**offense [17]** 26/22 33/14 34/12 35/14 35/17 36/2 36/7 41/16 42/1 42/3 42/12 46/12 50/23 55/11 60/3 62/9 62/15
**offenses [7]** 26/24 42/10 44/14 51/2 55/5 56/8 58/24
**offer [1]** 22/25
**office [7]** 7/12 25/9 43/20 49/5 53/15 61/16

63/24
**officer [7]** 33/13 33/16 40/20 40/21 42/15 57/3 57/4
**officer's [2]** 40/17 55/20
**officers [1]** 54/17
**official [10]** 1/22 28/18 31/19 34/18 34/20 34/24 35/20 51/21 58/19 66/16
**officials [5]** 34/21 34/23 35/2 54/18 58/16
**often [3]** 21/5 21/6 47/11
**oftentimes [1]** 21/22
**old [1]** 21/11
**older [1]** 46/17
**on [105]**
**once [2]** 24/19 26/7
**one [19]** 6/9 9/19 12/19 13/15 14/11 17/2 18/14 23/10 25/8 26/13 29/9 30/25 32/7 32/25 34/25 41/19 48/9 49/1 64/14
**one's [1]** 25/15
**one-off [1]** 29/9
**ones [1]** 58/13
**ongoing [1]** 52/21
**only [19]** 8/22 10/12 13/2 24/8 24/11 28/4 29/4 34/21 36/15 43/15 49/14 50/18 51/17 52/20 55/4 57/18 58/11 59/4 59/14
**oOo [2]** 3/2 65/14
**opportunities [2]** 24/12 54/20
**opportunity [2]** 22/21 54/16
**opposite [1]** 51/14
**optics [1]** 39/21
**or [61]** 3/25 4/4 5/19 5/23 5/24 7/2 9/25 12/6 12/6 14/21 15/14 15/15 15/16 16/10 16/11 17/2 17/3 18/12 18/21 18/25 19/1 21/23 25/17 25/19 25/19 26/17 30/2 31/9 31/12 31/20 32/15 35/18 35/19 35/19 37/2 38/6 39/6 39/14 41/2 42/13 44/15 44/15 46/17 46/24 47/11 48/5 50/14 51/9 51/16 53/7 53/9 53/16 53/17 55/16 56/11 57/4 59/13 63/6 63/9 64/16 64/24
**orchestrated [1]** 29/4
**ordeal [1]** 23/24
**order [6]** 3/9 45/5 60/25 61/16 63/23 64/24
**ordered [7]** 4/4 4/6

## O

ordered... [5] 60/17 60/20 61/23 63/5 63/20
orders [1] 61/19
originates [1] 17/3
originator [1] 31/20
orphaned [1] 21/11
other [28] 4/7 5/20 10/25 12/19 20/20 20/23 23/10 24/2 30/25 34/23 38/1 38/9 38/18 39/22 42/14 46/18 47/4 51/3 53/5 53/17 53/19 54/14 55/25 58/8 58/25 59/7 61/23 64/3
others [3] 48/20 51/2 59/15
otherwise [4] 5/24 41/10 45/7 59/7
our [9] 3/4 8/6 22/4 25/21 52/5 52/7 53/1 53/2 54/18
ourselves [1] 52/16
out [17] 3/21 4/9 8/2 10/10 12/16 14/14 25/16 26/13 28/5 28/7 29/22 31/17 32/25 48/8 49/10 56/12 62/18
outcome [1] 23/5
outlines [1] 14/8
outsiders [1] 18/8
over [12] 8/4 8/4 9/11 9/11 9/11 12/22 19/12 27/19 42/17 42/24 49/9 51/8
overflow [1] 4/1
overruled [1] 38/16
overwhelming [1] 44/7
own [13] 6/25 16/16 16/17 17/8 28/22 30/19 32/2 43/6 44/6 44/15 49/6 54/25 57/14

## P

page [2] 8/5 66/7
pages [1] 14/13
paid [3] 6/16 60/22 60/22
paper [3] 16/20 29/17 36/3
papers [3] 4/13 27/15 30/9
Paradis [7] 6/9 7/13 8/24 31/1 31/4 58/17 58/19
paragraph [2] 56/20 56/24
parents [1] 17/8
park [2] 20/10 20/12
parks [5] 4/16 4/18 20/8 20/9 34/20
part [8] 6/10 7/4 11/13 17/21 18/2 33/3 33/17 40/13

partial [1] 36/21
particular [4] 17/17 19/9 28/11 54/23
particularly [5] 30/13 44/16 45/12 51/2 59/7
parties [4] 4/14 9/21 9/22 35/21
partnership [2] 29/2 29/6
parts [1] 51/9
party [1] 10/1
passed [8] 7/1 15/25 15/25 16/4 17/7 18/23 38/11 45/5
passes [1] 51/20
pastes [1] 28/17
PAT [3] 1/21 66/3 66/16
patcuneo1600 [1] 1/25
Paul [5] 6/9 7/13 8/24 31/1 31/4
Paul Paradis [2] 7/13 31/1
Pauperis [1] 64/18
Pause [3] 6/4 22/16 25/1
pay [6] 10/16 49/20 60/17 60/20 61/18 64/16
payment [7] 35/18 35/19 38/17 38/20 38/23 46/4 61/20
penalized [1] 57/25
penalties [2] 52/19 52/22
pending [1] 6/8
people [15] 4/9 19/13 19/15 19/17 19/19 19/21 20/20 20/22 21/6 21/17 21/22 29/18 30/14 48/24 54/5
percent [2] 30/11 30/20
perception [1] 23/19
perfectly [1] 9/5
perhaps [6] 35/6 51/15 53/6 53/7 53/25 59/6
period [3] 51/8 53/24 61/17
perk [1] 25/19
perks [1] 29/20
permitted [1] 10/13
persists [1] 57/16
person [8] 6/24 9/2 16/16 20/9 20/11 24/18 25/18 49/2
personal [4] 25/12 29/20 30/19 54/23
personally [2] 6/11 44/11
personnel [1] 53/10
persons [1] 47/19
persuasive [1] 32/24
pertaining [1] 61/19

Ph.D [1] 49/9
photograph [1] 4/4
physical [1] 48/5
placed [3] 34/18 57/23 61/10
places [1] 53/20
plague [1] 58/15
Plaintiff [2] 1/7 2/2
planning [1] 49/15
plans [1] 43/23
play [1] 49/20
playing [1] 24/8
plea [11] 11/3 11/7 11/13 12/11 12/25 13/6 13/7 42/13 46/2 57/17 58/3
plead [2] 9/13 13/1
pleaded [2] 58/19 58/21
please [5] 3/9 3/12 4/10 6/3 22/15
pled [7] 11/2 12/2 12/15 13/2 13/6 31/12 31/25
pledge [1] 24/16
point [10] 9/13 12/19 14/6 26/13 31/22 32/3 32/25 41/12 53/2 58/13
pointed [4] 28/5 28/7 49/10 56/12
points [2] 26/3 48/8
police [2] 29/23 29/25
policies [1] 40/5
polite [1] 29/21
political [5] 43/23 44/1 52/2 52/4 52/11
politician [3] 19/14 30/18 43/19
politicians [4] 25/9 30/13 48/9 53/5
population [2] 46/17 49/25
portion [3] 46/16 49/25 65/1
poses [1] 62/4
position [20] 4/13 25/12 25/16 26/15 26/19 27/23 28/6 28/9 30/9 35/11 36/3 36/5 37/12 42/20 43/8 43/12 55/13 59/6 59/10 62/8
positions [3] 25/15 52/10 55/8
possibility [1] 55/7
possible [3] 22/25 37/2 54/13
possibly [1] 63/16
post [8] 9/20 10/3 10/4 10/11 10/13 10/24 26/18 36/23
post-Booker [2] 26/18 36/23
post-conviction [1] 10/24

post-trial [5] 9/20 10/3 10/4 10/11 10/13
posted [1] 65/4
posts [2] 9/21 9/22
potential [3] 43/14 44/9 56/25
potentially [1] 58/11
poverty [1] 21/1
power [6] 6/12 25/12 27/24 30/16 43/9 43/19
powerful [10] 19/17 19/20 19/22 25/8 29/18 29/24 30/14 30/22 32/7 32/8
pre [4] 13/6 31/4 31/12 31/25
pre-indictment [4] 13/6 31/4 31/12 31/25
precedent [1] 13/12
precise [1] 46/10
premedicated [1] 51/4
prepare [1] 64/20
prepared [1] 26/1
preponderance [11] 15/16 15/19 17/13 17/19 19/2 19/4 27/1 27/3 36/5 36/17 38/4
presence [2] 3/4 18/1
present [4] 3/21 5/24 14/20 49/16
presentation [1] 12/20
presented [7] 7/6 11/7 12/11 15/13 15/18 19/8 42/16
presentence [9] 4/12 5/20 10/6 10/14 33/8 33/12 47/18 56/21 64/1
presents [1] 28/21
preserve [2] 8/10 36/19
presiding [2] 1/4 3/8
press [1] 8/18
pressure [3] 7/7 31/21 31/22
Pretrial [1] 61/15
prevail [1] 11/18
previous [1] 49/20
primary [1] 56/9
principles [1] 3/6
prison [6] 7/11 43/5 45/9 47/8 50/18 53/18
Prisons [5] 61/5 63/4 63/6 63/25 64/2
Prisons' [2] 46/16 62/20
private [1] 25/13
pro [2] 44/21 57/8
probation [23] 7/15 7/21 7/23 11/15 11/17 12/23 13/9 25/25 27/9 33/13 33/16 40/16 40/20 40/21 42/15 50/15 53/17 55/16 55/20 57/3 57/4 61/15 63/24

probationary [4] 50/14 51/18 56/4 56/15
problem [4] 11/20 35/3 43/14 52/21
problems [2] 44/10 44/13
Procedure [3] 4/3 10/5 10/6
Procedure 29 [1] 10/5
proceed [1] 25/3
proceeding [2] 4/1 4/8
proceedings [12] 1/14 4/5 6/4 22/16 25/1 32/12 41/7 41/10 48/11 65/1 65/12 66/6
process [6] 7/3 7/4 7/4 8/10 23/6 40/4
professional [1] 54/24
profit [5] 13/22 14/10 15/1 15/12 37/7
profuse [1] 12/24
program [2] 37/15 44/24
progress [1] 29/5
promote [4] 42/4 50/23 52/21 55/5
promoting [1] 52/9
proper [7] 12/10 16/12 23/19 33/12 38/15 45/17 58/6
properly [3] 25/25 52/20 59/17
proposal [1] 7/5
propose [1] 29/2
proposed [9] 11/3 33/10 33/15 33/19 34/2 34/8 34/10 50/15 59/5
prosecuting [1] 53/11
prosecutors [2] 42/14 53/10
protect [3] 42/6 52/11 52/20
protecting [1] 44/6
prove [1] 41/1
proved [1] 43/7
provide [5] 40/12 42/4 45/4 50/24 55/6
provided [11] 26/4 32/1 32/12 38/18 42/15 57/14 58/20 59/8 63/23 64/2 64/14
provides [1] 58/25
providing [1] 43/1
provision [1] 15/8
PRPI [2] 29/2 39/19
public [33] 6/7 19/15 21/19 21/21 21/22 27/24 28/21 29/18 30/20 31/19 34/18 34/20 34/24 35/20 42/6 51/3 51/21 52/4 52/12 52/15 52/18 52/20 52/21 52/23 52/25 53/5 53/15 53/19 53/19

Case 2:21-cr-00485-DSF   Document 414   Filed 08/30/23   Page 76 of 79   Page ID
#:11129

{PLAINTIFF} v.
{DEFENDANT}

{WITNESSNAME}
{DATE}

## P

**public... [4]** 54/13
54/18 58/16 58/19
**public's [3]** 8/9 25/23
35/1
**publicly [1]** 20/15
**punish [1]** 32/6
**punished [2]** 9/12 10/1
**punishment [8]** 42/4
50/24 53/22 53/24 54/9
54/10 54/14 55/6
**punitive [2]** 55/23 56/1
**purely [1]** 57/20
**purpose [3]** 39/7 45/1
55/23
**purposeful [1]** 24/21
**purposes [3]** 50/19
59/19 60/15
**pursuant [6]** 4/2 33/25
35/15 38/20 61/1 66/4
**pursuit [1]** 44/19
**put [2]** 11/2 28/12
**puts [1]** 10/21

## Q

**quantity [1]** 17/25
**question [5]** 10/25
23/17 25/6 45/23 47/2
**questions [2]** 27/5
27/12
**quid [2]** 44/21 57/8
**quid pro quo [2]** 44/21
57/8
**quite [4]** 8/2 9/18 17/15
19/18
**quo [2]** 44/21 57/8
**quote [2]** 8/3 22/4
**quoting [2]** 8/7 52/1

## R

**raise [2]** 47/14 49/18
**raised [1]** 21/11
**RAMSEY [2]** 2/10 3/22
**Ramsey Fisher [1]**
3/22
**ramseyfisher [1]** 2/13
**RANDALL [2]** 2/10
3/23
**range [11]** 30/12 30/21
41/17 41/18 41/20 46/3
46/13 50/11 56/17
59/18 59/18
**rather [3]** 40/24 46/10
56/10
**rationale [1]** 56/21
**reach [1]** 54/16
**read [7]** 4/11 4/13 4/20
5/7 5/11 27/15 48/17
**really [3]** 15/17 25/20
28/1
**reason [6]** 10/25 14/5
18/24 45/8 60/9 63/22
**reasonable [3]** 43/8
44/17 60/14

**reasons [2]** 16/12 59/7
**rebroadcast [1]** 4/4
**receive [5]** 10/10 14/25
33/9 39/9 47/1
**received [13]** 6/16 6/17
14/22 15/22 35/18
35/18 46/18 48/1 48/10
50/5 53/16 59/12 61/21
**recent [2]** 22/5 46/20
**recently [1]** 18/5
**recess [1]** 65/11
**recognize [2]** 21/25
55/15
**recognizes [1]** 30/7
**recommend [3]** 7/18
7/19 33/16
**recommendation [7]**
10/21 11/1 13/3 55/20
58/18 63/1 63/3
**recommendations [2]**
31/2 63/4
**recommended [5]** 6/13
11/10 11/15 27/10 56/5
**record [2]** 4/4 64/14
**recordings [1]** 31/7
**records [2]** 42/9 56/8
**reduction [8]** 9/14
33/10 33/14 33/23 34/1
34/10 59/12 59/24
**reference [3]** 9/20 9/21
49/19
**references [1]** 46/15
**referred [1]** 43/22
**refers [2]** 37/17 38/17
**reflect [4]** 22/22 42/3
50/22 55/4
**reflected [1]** 46/4
**Reform [1]** 61/1
**refunds [1]** 61/22
**refused [3]** 8/3 9/16
9/16
**refuses [1]** 49/25
**regime [1]** 26/18
**regret [1]** 23/21
**regularly [1]** 51/22
**regulations [2]** 61/15
66/8
**reimbursed [1]** 14/15
**reiterated [1]** 58/3
**reject [1]** 56/2
**relate [1]** 19/5
**related [8]** 6/11 17/18
18/16 31/5 34/10 37/7
59/24 64/3
**relationship [1]** 57/1
**relative [1]** 36/1
**release [5]** 41/19 46/20
61/9 61/10 62/14
**relevant [7]** 4/21 35/22
39/11 44/16 58/10
58/11 59/8
**relied [1]** 36/23
**relief [1]** 37/24
**relies [1]** 56/20

**rely [1]** 54/23
**relying [2]** 34/8 59/23
**remain [2]** 62/14 64/4
**remedial [1]** 55/24
**remembering [1]** 3/5
**remind [1]** 3/25
**remorse [1]** 50/17
**remove [1]** 24/13
**renewed [1]** 24/19
**rental [1]** 28/13
**repeatedly [4]** 12/23
27/20 27/20 28/2
**reply [1]** 26/14
**report [16]** 4/12 5/20
10/6 10/14 33/9 33/13
41/8 41/10 47/18 56/21
62/14 63/9 63/20 64/1
64/3 64/6
**reported [2]** 48/10 66/6
**reporter [3]** 1/22 65/2
66/16
**REPORTER'S [1]** 1/14
**representative [1]**
32/16
**representing [2]** 28/10
28/20
**reputation [6]** 30/16
43/21 44/10 44/15
51/17 53/23
**reputation-destroying
[1]** 44/10
**reputational [1]** 54/3
**request [7]** 7/18 7/24
26/2 55/20 62/22 64/20
64/22
**requested [6]** 7/12
7/16 17/14 35/9 38/12
62/16
**requests [1]** 46/20
**required [4]** 10/15
14/19 15/11 17/22
**requirement [1]** 17/19
**requires [2]** 54/22 56/6
**resign [1]** 52/16
**resigned [1]** 43/13
**resolved [1]** 33/1
**respect [7]** 23/3 42/4
50/23 52/9 52/22 54/5
55/5
**respected [1]** 35/1
**respectful [1]** 23/6
**respects [1]** 41/9
**respond [1]** 32/20
**responds [1]** 11/17
**response [10]** 8/6
13/14 14/6 16/10 27/4
32/23 34/12 36/4 36/4
59/9
**responsibility [15]** 8/4
8/9 8/13 8/20 9/10 9/16
9/17 12/24 30/5 31/8
31/24 50/17 57/13
59/13 59/16
**responsible [2]** 18/13

18/22
**rested [1]** 43/21
**restitution [3]** 34/15
35/9 35/10
**restore [1]** 24/14
**result [4]** 7/10 38/13
47/20 51/17
**retaliatory [1]** 58/8
**retroactive [1]** 33/21
**return [2]** 35/19 51/14
**revealed [1]** 39/17
**review [1]** 26/16
**reviewed [1]** 4/21
**reward [1]** 51/6
**rewarded [1]** 49/23
**ride [1]** 20/7
**RIDLEY [121]**
**RIDLEY-THOMAS [12]**
1/9 3/11 3/21 8/1 9/25
12/8 12/13 12/15 16/1
20/19 43/22 51/11
**Ridley-Thomas's [1]**
20/25
**right [7]** 9/23 27/19
27/19 57/25 63/19 64/7
65/9
**rightfully [1]** 24/21
**rights [2]** 10/2 22/24
**rippling [1]** 52/3
**rise [2]** 3/3 65/10
**risk [6]** 37/21 43/5 45/9
51/5 51/15 62/4
**role [2]** 24/9 56/25
**room [2]** 1/23 6/16
**root [1]** 29/22
**Ruiz [1]** 33/25
**Ruiz-Apolonio [1]**
33/25
**rule [4]** 10/4 10/5 52/22
53/3
**rules [5]** 4/2 4/3 10/14
40/5 61/14
**run [2]** 43/23 61/12
**runaround [1]** 20/2
**RYBARCZYK [2]** 2/3
3/15

## S

**Sadly [1]** 54/17
**Saeteurn [1]** 56/13
**said [16]** 8/7 8/11 8/15
8/17 8/17 8/18 9/17
12/23 15/21 17/15 18/6
18/11 19/7 25/14 49/19
54/12
**salary [1]** 40/11
**same [10]** 7/12 12/3
12/3 12/12 27/9 31/11
46/17 54/16 56/11
56/12
**sample [1]** 62/1
**San [1]** 2/12
**sanctions [1]** 55/25
**sat [2]** 8/16 16/22

**save [1]** 37/15
**saw [2]** 27/22 39/1
**say [18]** 5/24 8/4 9/8
9/10 9/11 9/23 9/25
9/25 12/12 20/10 22/12
22/17 23/8 24/5 27/20
28/2 29/3 39/10
**saying [5]** 9/15 11/17
16/6 21/19 28/19
**says [4]** 9/18 16/11
17/17 19/14
**scale [1]** 29/9
**scheme [3]** 6/10 31/20
57/8
**scholarship [1]** 40/10
**school [3]** 37/10 43/9
48/7
**scrutiny [1]** 43/11
**seals [1]** 4/18
**seated [1]** 3/9
**Sebastian [10]** 28/25
38/19 39/4 39/6 39/23
40/12 43/2 43/16 44/8
44/10
**Sebastian
Ridley-Thomas [7]**
28/25 38/19 39/4 39/6
39/23 40/12 44/8
**second [3]** 34/14 60/24
61/16
**Section [8]** 33/10
35/13 35/15 35/16 56/3
59/2 60/16 66/4
**Section 2C1.1 [2]**
35/13 35/15
**Section 3553 [3]** 56/3
59/2 60/16
**Section 4C1.1 [1]**
33/10
**sections [1]** 53/9
**see [3]** 3/25 47/13
48/24
**seedy [1]** 29/16
**seek [3]** 34/1 34/9
59/24
**seem [2]** 18/15 54/7
**seeming [1]** 38/5
**seems [1]** 22/3
**seen [2]** 19/16 20/22
**selected [2]** 58/13 59/4
**self [2]** 34/22 62/6
**self-dealing [1]** 34/22
**self-surrender [1]** 62/6
**send [3]** 29/24 32/6
55/6
**sends [4]** 28/15 28/18
30/21 30/22
**sent [1]** 39/3
**sentence [39]** 6/13
6/17 10/11 10/22 12/22
22/12 30/1 32/6 36/1
41/5 42/3 42/7 42/8
46/3 47/22 49/21 50/14
50/15 50/18 50/22

## S

**sentence... [19]** 51/18 51/25 53/17 54/1 55/4 55/16 56/4 56/7 56/15 56/15 56/22 58/7 59/5 60/6 60/7 60/10 60/13 62/15 64/8

**sentenced [3]** 7/23 47/7 58/17

**sentences [4]** 31/1 52/11 52/16 55/14

**sentencing [40]** 1/19 4/11 8/6 9/19 10/8 10/20 11/1 11/3 11/5 11/10 11/12 11/20 11/22 11/25 12/2 12/20 13/13 13/15 13/18 13/24 16/11 22/4 25/15 26/15 27/9 28/5 30/9 33/11 35/11 36/4 41/11 42/20 46/6 50/20 50/22 59/10 59/19 61/1 63/24 64/2

**separate [3]** 28/8 28/8 34/13

**serious [5]** 25/20 46/22 46/25 50/16 52/15

**seriousness [3]** 42/3 50/23 55/5

**servant [1]** 19/15

**servants [5]** 21/19 21/23 52/25 53/5 53/19

**serve [7]** 24/13 31/21 45/14 49/5 52/11 55/8 59/6

**served [4]** 21/17 30/14 50/2 61/8

**serves [1]** 30/19

**service [13]** 21/7 21/21 22/1 24/10 24/20 27/24 29/19 30/10 50/6 50/7 51/17 53/25 62/14

**services [4]** 44/18 45/19 58/15 61/16

**serving [2]** 43/11 47/22

**session [1]** 3/7

**set [2]** 4/11 12/3

**several [1]** 47/23

**sexual [2]** 39/16 43/11

**shakedown [2]** 37/18 46/1

**shall [16]** 60/17 60/20 60/21 60/22 60/24 61/9 61/14 61/18 61/21 61/25 63/9 63/22 63/23 64/1 64/4 64/5

**sham [1]** 39/7

**shame [2]** 20/14 53/21

**shape [2]** 31/9 31/12

**she [23]** 13/1 13/2 13/3 19/24 20/1 31/17 31/17 31/19 31/19 31/22 31/23 37/21 37/22

37/22 37/24 37/24 42/25 43/5 45/3 45/4 45/7 45/9 57/9

**She's [3]** 31/24 31/25 31/25

**Sheila [1]** 28/12

**Sheila Kuehl [1]** 28/12

**shockingly [1]** 9/19

**short [1]** 28/13

**short-term [1]** 28/13

**should [25]** 10/10 10/19 10/20 10/22 10/25 11/18 12/17 13/8 15/15 21/23 21/23 23/23 33/9 33/13 34/15 36/16 40/12 46/25 49/12 54/14 55/24 56/3 59/14 60/10 65/1

**show [2]** 16/3 50/5

**showing [1]** 14/19

**shown [1]** 50/17

**sides [2]** 7/10 45/20

**significant [13]** 18/20 32/5 33/16 37/21 46/22 46/24 49/15 50/18 51/25 52/19 53/18 55/4 57/11

**significantly [1]** 48/3

**similar [8]** 31/9 42/9 42/10 51/2 54/20 55/11 56/8 56/8

**similarly [2]** 31/13 32/3

**simply [6]** 37/3 39/24 40/2 47/22 53/14 57/6

**Since [1]** 26/14

**sincerely [1]** 24/8

**single [3]** 7/7 8/15 57/18

**sir [2]** 64/11 64/13

**situated [2]** 31/13 32/3

**situation [7]** 7/15 7/20 13/5 14/8 16/16 18/14 19/6

**six [5]** 7/11 8/1 9/9 25/7 26/6

**sixth [1]** 36/15

**skepticism [1]** 25/21

**skipped [1]** 7/4

**slap [1]** 30/23

**sliding [1]** 29/8

**so [28]** 7/9 7/25 8/19 9/15 10/9 14/4 14/11 14/18 14/24 15/14 15/18 16/6 16/14 16/25 17/7 18/10 18/24 24/5 38/7 39/18 41/3 41/6 41/7 54/8 55/13 57/23 58/10 59/3

**social [4]** 37/10 37/15 43/9 49/9

**society [2]** 52/3 53/7

**soliciting [1]** 57/8

**some [14]** 11/13 14/5 16/9 29/8 39/15 39/22

45/25 49/18 50/9 51/21 51/22 52/17 53/22 53/23

**somebody [7]** 27/18 31/4 31/6 31/11 31/24 31/25 31/25

**somehow [2]** 17/4 39/16

**someone [2]** 4/8 13/5

**something [2]** 27/16 57/9

**somewhat [2]** 46/12 54/24

**somewhere [1]** 23/9

**son [12]** 27/25 28/7 28/25 39/14 39/15 40/4 43/2 43/10 45/15 47/11 49/6 57/21

**son's [1]** 44/15

**sons [1]** 24/1

**sophisticated [2]** 29/17 29/22

**sorry [1]** 24/5

**sort [2]** 11/13 25/19

**sorts [1]** 19/21

**source [1]** 40/5

**Southern [1]** 54/12

**special [4]** 3/17 41/21 60/18 61/18

**specialize [1]** 53/10

**specifically [2]** 13/20 14/8

**spectrum [1]** 23/16

**spell [1]** 8/2

**spells [1]** 14/14

**spent [3]** 14/25 38/7 45/8

**spite [1]** 27/10

**Spring [1]** 2/5

**squarely [1]** 14/5

**staff [1]** 38/9

**staffers [1]** 7/5

**stand [1]** 29/7

**standard [23]** 10/24 15/19 17/13 17/22 18/4 18/12 19/1 19/2 19/4 19/9 26/11 26/17 26/20 26/25 27/2 27/3 27/6 35/25 36/5 36/16 36/17 36/20 38/24

**stands [1]** 3/6

**start [3]** 25/5 26/10 59/17

**starting [1]** 41/12

**state [4]** 3/12 41/9 43/12 60/6

**stated [3]** 13/24 37/5 57/14

**statement [2]** 53/4 63/22

**statements [1]** 42/13

**states [21]** 1/1 1/6 2/2 2/4 2/5 3/6 3/8 3/11 3/14 13/13 13/18 17/24

18/2 41/25 60/15 60/18 60/21 61/15 63/10 66/4 66/9

**statistics [2]** 59/8 59/11

**stature [2]** 30/16 43/20

**statute [2]** 9/5 62/2

**stay [1]** 30/16

**stenographically [1]** 66/6

**Step [1]** 46/21

**stigmatizes [1]** 52/24

**still [6]** 6/7 12/5 20/14 26/9 30/3 53/5

**story [4]** 20/24 21/14 21/15 22/1

**Street [5]** 1/22 1/23 2/5 2/11 63/11

**strict [3]** 39/4 52/11 52/22

**submit [1]** 14/16

**submitted [4]** 4/15 4/15 5/21 46/19

**substance [1]** 62/4

**substantial [7]** 37/7 37/16 37/25 42/17 51/8 55/22 58/20

**such [4]** 52/23 61/12 61/19 63/8

**sudden [1]** 28/24

**suffer [1]** 47/21

**suffered [2]** 44/3 48/5

**suffers [2]** 34/21 35/2

**sufficiency [1]** 27/13

**sufficient [7]** 53/21 53/24 54/10 55/25 59/1 59/3 60/14

**sufficiently [1]** 43/4

**suggest [5]** 22/3 29/7 36/15 53/23 57/4

**suggested [1]** 53/23

**suggestion [1]** 57/24

**suited [1]** 58/13

**summarized [1]** 42/19

**Sunday [1]** 20/11

**supervised [2]** 41/18 61/10

**supervision [1]** 61/17

**supervisor [2]** 16/1 28/11

**Supervisors [2]** 7/3 38/9

**support [10]** 26/2 27/6 43/2 43/4 45/13 45/15 48/12 51/14 56/10 59/5

**supported [5]** 20/15 37/12 42/20 42/23 51/12

**supporters [1]** 53/22

**supportive [1]** 4/14

**supposed [4]** 11/11 11/11 14/15 21/20

**Supreme [1]** 22/5

**sure [1]** 45/3

**surely [1]** 58/13

**surface [1]** 58/15

**surrender [5]** 62/6 62/12 62/16 63/5 65/5

**surreptitious [1]** 40/4

**suspended [1]** 62/3

## T

**table [4]** 3/15 3/16 3/22 8/16

**take [5]** 10/20 15/21 20/24 26/7 39/9

**taken [2]** 55/25 64/5

**taking [3]** 26/20 37/21 41/14

**talk [2]** 4/8 15/14

**talked [1]** 20/17

**talking [3]** 4/7 12/5 20/15

**talks [1]** 14/17

**technically [1]** 58/9

**Telehealth [19]** 11/21 11/23 12/5 13/10 14/12 15/24 16/3 16/7 18/15 26/23 27/7 37/4 38/6 38/15 40/9 42/23 44/23 44/24 45/21

**tempted [1]** 55/2

**term [5]** 28/13 61/5 61/6 61/10 61/11

**terms [6]** 18/21 38/12 45/6 48/20 61/12 61/13

**test [1]** 17/16

**testimony [5]** 14/21 27/22 37/13 42/18 46/18

**testing [1]** 62/2

**Texts [1]** 51/9

**than [15]** 5/20 11/24 19/16 40/24 46/10 47/6 47/19 48/3 51/25 53/17 54/8 56/10 60/14 62/21 63/20

**thank [17]** 3/23 6/5 10/18 22/9 22/10 22/20 24/23 24/24 25/2 27/17 32/9 32/18 32/19 33/6 63/13 63/18 65/9

**that [310]**

**that's [17]** 11/18 11/20 16/19 16/20 19/5 19/14 20/4 21/19 25/23 27/7 29/16 30/13 30/15 30/15 50/12 62/22 62/24

**their [23]** 4/24 6/25 8/2 8/5 8/5 9/19 10/1 12/19 16/16 16/17 20/24 24/13 29/18 29/19 34/22 35/3 38/9 44/3 47/13 48/21 54/4 55/8 58/13

**them [24]** 4/21 5/2 5/7 5/12 5/14 5/17 6/7 6/9

## T

**them... [16]** 19/18 20/16 20/16 20/16 21/1 21/2 21/19 24/8 24/10 24/13 26/24 47/14 49/1 53/20 54/5 58/10

**themselves [1]** 29/25

**then [13]** 11/15 11/18 15/7 16/11 16/25 17/17 20/4 20/9 28/17 28/24 29/17 34/7 43/23

**there [45]** 4/7 6/6 8/16 9/2 9/23 11/14 11/21 11/24 13/25 14/6 15/3 15/8 16/2 17/2 17/9 17/20 18/11 18/20 19/16 22/11 23/17 24/10 29/14 31/6 32/15 34/11 34/13 34/14 34/19 36/6 37/1 37/4 37/6 39/5 40/1 40/17 44/6 45/7 45/23 47/2 51/11 53/14 56/21 57/11 62/16

**there's [6]** 14/16 23/11 29/15 29/15 33/22 37/2

**therefore [3]** 36/17 40/14 41/1

**these [12]** 31/13 35/14 40/18 41/9 44/14 45/1 46/11 47/8 48/11 48/12 54/6 58/24

**they [37]** 5/16 7/18 7/18 8/2 8/4 8/7 8/11 9/10 9/11 9/20 9/21 9/25 10/10 11/8 11/10 11/11 11/12 11/18 13/16 13/17 14/17 14/19 14/24 14/25 15/18 20/25 21/1 21/2 21/5 21/6 21/23 25/24 32/2 42/19 54/7 54/9 59/2

**they're [2]** 14/19 30/2

**thing [7]** 8/22 12/13 19/11 26/13 30/25 31/11 45/3

**things [8]** 9/19 10/4 10/12 32/25 43/1 48/25 49/3 54/6

**think [5]** 6/9 6/20 8/19 10/19 25/17

**thinking [1]** 28/22

**third [4]** 9/21 9/22 10/1 63/10

**thirty [1]** 19/13

**this [97]**

**THOMAS [99]**

**Thomas' [1]** 56/14

**Thomas's [22]** 11/22 16/24 20/25 21/8 21/15 33/17 34/9 37/23 38/5 40/8 43/23 45/25 47/2

47/18 49/21 51/7 54/7 57/20 59/10 59/22 59/23 63/15

**thomas.rybarczyk [1]** 2/7

**those [30]** 4/1 5/4 9/24 11/5 11/10 12/10 12/16 12/18 20/22 22/1 23/22 24/9 24/16 26/7 31/3 31/3 31/18 40/14 40/23 42/20 44/12 46/23 47/1 49/16 50/18 54/21 55/7 58/5 58/5 59/5

**though [4]** 45/2 46/7 54/7 55/12

**thought [1]** 45/7

**thousand [4]** 11/6 12/10 16/12 16/17

**thousands [1]** 47/7

**threat [2]** 43/15 43/16

**three [6]** 9/13 10/3 28/15 41/19 61/10 61/11

**three-point [1]** 9/13

**through [6]** 7/2 22/7 23/24 31/23 39/25 42/17

**throughout [3]** 25/14 27/21 52/5

**tied [1]** 43/20

**time [19]** 4/11 4/20 5/11 7/11 10/9 13/3 20/21 20/24 32/3 34/24 35/6 38/7 44/12 45/9 51/9 53/18 54/19 63/9 65/4

**timeline [1]** 62/20

**times [5]** 6/15 8/5 17/15 31/20 51/11

**Title [1]** 66/4

**today [9]** 6/19 7/9 10/7 22/6 22/6 24/16 29/7 31/1 33/23

**together [1]** 55/25

**told [1]** 28/13

**Tom [1]** 3/15

**Tom Rybarczyk [1]** 3/15

**too [2]** 55/1 59/18

**took [4]** 6/9 6/11 6/14 21/15

**total [4]** 15/3 16/7 41/16 60/21

**totaling [1]** 6/15

**totality [1]** 17/15

**tragedy [1]** 48/2

**transcript [4]** 1/14 64/14 66/5 66/7

**trauma [1]** 20/25

**traumatically [1]** 24/3

**Treadwell [1]** 41/2

**treated [1]** 46/23

**tremendous [1]** 48/18

**trial [19]** 8/22 8/25 9/7

9/9 9/20 10/3 10/4 10/11 10/13 12/1 12/16 16/23 30/4 40/21 42/17 49/10 57/3 57/25 58/8

**tried [1]** 39/18

**trouble [2]** 31/23 37/22

**troubling [1]** 46/1

**true [6]** 22/23 42/24 44/2 45/1 49/24 66/5

**truly [2]** 23/20 50/6

**trust [6]** 24/11 25/23 34/17 35/2 53/19 57/23

**trying [2]** 18/17 19/25

**turn [2]** 4/6 13/8

**twelve [1]** 42/17

**Twitter [2]** 9/21 9/22

**two [14]** 6/15 7/10 9/19 9/20 12/18 26/2 29/14 32/25 33/10 33/24 34/7 34/13 59/21 62/19

**two-level [3]** 33/10 33/24 34/7

**type [3]** 6/19 29/12 29/13

**typed [1]** 10/10

**types [1]** 29/14

**typical [3]** 16/25 44/21 48/1

## U

**U.S [1]** 36/11

**U.S. [1]** 36/22

**U.S. v [1]** 36/22

**ultimate [1]** 50/21

**ultimately [1]** 60/1

**unable [2]** 64/13 64/16

**unanimously [3]** 7/1 15/25 18/23

**uncertain [2]** 44/2 47/17

**unconstitutional [1]** 58/4

**uncovering [1]** 53/11

**undaunted [1]** 24/20

**under [22]** 10/4 10/5 10/13 11/6 13/12 13/19 14/19 15/2 15/7 15/8 15/20 16/8 32/25 35/12 35/15 40/25 41/2 41/6 43/10 46/20 49/13 61/13

**underlying [1]** 18/19

**undermined [1]** 8/9

**undermines [2]** 25/22 52/25

**understand [3]** 5/2 5/17 64/11

**understandable [1]** 9/6

**undisputed [1]** 6/25

**unequivocally [2]** 6/21 58/6

**unethical [1]** 55/3

**unfairly [1]** 52/24

**unfortunately [1]** 55/2

**uniformity [2]** 56/10 56/11

**unique [7]** 45/18 46/8 52/2 53/14 54/24 59/20 60/1

**UNITED [24]** 1/1 1/6 2/2 2/4 2/5 3/6 3/8 3/10 3/14 13/13 13/18 18/1 35/5 38/22 39/3 40/8 41/25 60/15 60/18 60/21 61/15 63/9 66/4 66/9

**units [1]** 53/9

**unlawfulness [1]** 23/18

**unless [3]** 27/15 32/4 42/25

**Unlike [2]** 42/11 52/17

**unlikely [2]** 55/10 55/12

**unpublished [1]** 36/22

**unquestionably [2]** 40/2 45/3

**unsuccessful [1]** 39/20

**unusual [4]** 7/9 18/14 44/21 45/20

**unwarranted [3]** 42/8 56/7 57/2

**up [9]** 5/8 20/1 20/1 21/1 21/9 39/19 40/3 47/14 62/21

**updated [1]** 29/5

**urgency [1]** 52/5

**us [5]** 3/15 3/16 24/19 30/14 48/4

**USC [17]** 14/14 14/20 14/22 14/24 16/24 18/22 31/23 35/5 37/16 37/21 38/20 39/1 39/7 39/20 39/25 43/9 57/10

**USC's [2]** 37/15 40/5

**usdoj.gov [3]** 2/6 2/7 2/7

**use [6]** 15/8 17/18 18/17 18/25 27/23 29/18

**used [9]** 11/5 17/4 25/11 36/12 36/16 37/17 39/1 43/8 45/14

**uses [1]** 19/9

**using [3]** 13/10 15/3 15/5

**usually [1]** 51/4

## V

**Valensia [2]** 36/11 36/15

**valid [2]** 36/21 54/3

**Valley [1]** 17/23

**value [19]** 13/10 26/23 27/7 35/17 35/19 37/1 37/2 37/5 37/16 37/25 38/3 38/6 38/24 40/1

40/2 40/14 41/1 45/21 46/5

**variance [15]** 30/3 30/4 30/11 30/20 33/17 33/25 34/7 47/1 47/24 48/23 49/11 49/17 50/8 50/10 60/5

**various [1]** 35/6

**Varsity [1]** 58/9

**vary [2]** 12/7 59/21

**vast [1]** 42/11

**vastly [1]** 56/22

**Vegas [1]** 6/15

**verbatim [1]** 28/17

**verdict [2]** 8/12 50/1

**versus [2]** 12/2 17/13

**very [18]** 4/14 6/19 6/21 7/10 7/11 10/23 13/16 20/19 20/19 20/20 21/9 23/1 23/19 24/22 29/22 48/22 48/24 48/25

**vetted [1]** 7/5

**victim [6]** 31/15 32/15 32/16 34/11 34/14 34/15

**victimized [1]** 34/16

**victims [3]** 32/11 32/12 41/21

**videotape [1]** 9/2

**view [2]** 22/7 35/1

**views [1]** 22/6

**vigilant [1]** 53/9

**violated [1]** 40/5

**visiting [1]** 20/8

**vociferous [1]** 57/21

**vote [5]** 16/1 25/17 40/9 44/23 45/24

**voted [1]** 33/21

## W

**walking [1]** 4/9

**Walter [1]** 52/1

**want [12]** 3/25 4/8 4/9 5/19 5/24 13/8 14/18 22/20 23/2 23/4 32/20 32/25

**wanted [1]** 57/9

**was [99]**

**wasn't [5]** 19/19 19/20 29/3 31/19 31/19

**Water [1]** 6/12

**way [18]** 4/5 11/16 12/10 17/2 23/2 24/16 25/24 28/3 29/19 31/8 31/9 31/12 34/10 37/2 39/22 43/1 52/20 59/24

**ways [9]** 14/14 16/9 24/12 35/5 35/6 38/22 39/3 40/8 48/16

**we [29]** 7/9 7/10 7/15 7/20 7/25 9/9 10/3 10/12 10/14 10/22 16/14 17/6 18/14 19/6

{PLAINTIFF} v. {DEFENDANT}

{WITNESSNAME} {DATE}

## W

**we... [15]** 19/8 21/25 22/4 22/8 25/6 25/8 28/14 28/22 42/22 42/24 43/7 51/20 52/16 62/22 63/15
**we'd [1]** 62/19
**we'll [1]** 15/14
**we're [3]** 6/19 12/5 28/20
**weak [1]** 9/1
**week [3]** 33/21 51/20 63/16
**weight [1]** 52/6
**well [11]** 4/14 6/16 13/16 21/19 23/20 24/2 34/25 35/1 37/21 47/12 50/3
**well-known [1]** 34/25
**well-respected [1]** 35/1
**went [5]** 8/25 9/8 12/1 17/8 30/4
**were [20]** 7/5 10/13 11/20 14/23 14/25 28/22 33/23 34/19 37/10 38/7 39/17 40/18 42/16 43/20 44/7 44/9 48/2 51/11 59/1 65/12
**West [2]** 1/23 63/11
**WESTERN [1]** 1/3
**what [36]** 5/20 6/20 6/21 8/23 9/18 11/19 14/9 14/22 14/22 14/24 14/24 14/25 15/11 16/19 16/20 19/9 19/20 20/4 20/17 21/15 21/19 21/22 21/25 23/9 25/14 27/9 29/23 35/16 35/23 37/17 50/3 50/4 59/8 62/19 62/21 62/22
**whatever [4]** 6/20 12/7 16/4 45/4
**whatsoever [8]** 8/14 8/21 9/24 14/6 15/3 15/18 16/2 19/8
**when [24]** 7/12 9/17 10/21 11/2 11/6 11/15 12/2 12/11 12/14 15/4 16/20 18/22 21/8 22/5 23/4 25/10 28/10 28/22 31/16 34/17 34/21 35/25 36/6 37/24
**where [11]** 9/2 15/5 17/7 19/4 23/16 23/17 26/21 39/15 40/3 53/3 55/13
**whether [17]** 15/14 15/15 17/3 18/12 18/21 18/25 21/23 23/14 26/17 30/2 34/14 34/15 35/16 36/12 44/5 44/14 49/12

**which [30]** 3/6 6/11 6/24 6/25 7/4 7/6 7/15 7/20 13/5 13/18 14/14 15/5 15/12 16/11 16/16 17/17 17/20 17/21 18/2 18/5 18/8 18/19 22/23 36/11 40/13 40/24 43/21 48/17 58/5 60/18
**while [5]** 23/14 43/11 47/9 47/21 57/19
**white [7]** 9/18 10/21 13/16 14/4 15/20 30/22 51/3
**white-collar [2]** 30/22 51/3
**who [48]** 3/21 3/25 6/14 7/5 7/12 7/22 12/1 12/2 19/17 19/19 19/23 20/9 20/13 20/17 20/20 21/6 21/10 21/10 23/23 24/6 24/6 24/21 27/19 29/18 30/4 30/14 31/4 31/8 31/11 31/24 31/25 31/25 32/16 42/9 43/10 47/4 48/4 48/25 52/1 52/23 54/5 54/12 54/15 56/8 58/5 58/7 59/12 59/15
**who's [1]** 20/3
**whole [2]** 22/7 23/25
**whose [3]** 24/2 43/19 47/19
**why [9]** 7/25 8/19 9/15 10/25 16/12 25/6 25/23 29/25 60/9
**wife [2]** 23/23 47/4
**will [22]** 23/5 24/11 24/16 26/4 33/19 34/1 34/7 47/3 47/4 47/19 50/18 52/7 55/4 55/12 59/21 60/6 60/6 62/11 63/3 64/14 64/20 65/4
**willing [5]** 43/5 53/6 53/6 57/22 62/25
**willingly [1]** 31/16
**winnings [1]** 61/22
**wire [1]** 44/19
**wishes [1]** 32/16
**within [2]** 64/9 64/22
**without [5]** 7/3 39/19 39/24 44/24 49/15
**witness [3]** 7/7 14/21 27/22
**woman [1]** 19/23
**won't [2]** 55/2 58/10
**word [1]** 8/15
**words [2]** 15/10 51/25
**work [6]** 15/1 15/5 37/10 37/15 43/9 52/25
**world [1]** 29/14
**worries [1]** 31/22
**worse [1]** 8/9
**worth [2]** 8/7 30/11
**would [40]** 6/2 9/6

11/19 13/13 13/23 14/11 14/20 15/22 15/25 16/4 16/12 18/15 18/16 19/11 20/7 22/11 22/14 23/17 28/23 32/5 33/1 33/22 35/25 36/15 37/14 37/20 37/22 39/3 39/5 40/6 41/6 43/1 43/2 45/7 45/13 51/16 51/17 53/18 55/13 62/24
**wrist [1]** 30/23
**write [1]** 19/15
**writing [2]** 5/21 20/14
**wrong [7]** 27/19 27/19 40/2 40/22 49/10 51/19 57/6
**wrongdoing [3]** 8/14 8/21 32/2
**wrote [3]** 10/9 19/13 52/16
**www.patcuneo.com [1]** 1/25

## Y

**year [3]** 13/2 27/21 47/8
**years [16]** 7/11 8/1 9/9 12/22 21/5 21/7 21/11 23/23 24/6 25/7 41/19 48/2 51/16 56/16 61/10 61/11
**Yes [9]** 4/23 4/25 5/6 5/10 6/1 22/13 25/4 32/14 34/4
**yesterday [1]** 4/17
**yet [1]** 58/17
**York [1]** 54/12
**you [73]**
**you're [3]** 63/20 64/13 64/24
**you've [1]** 5/21
**your [58]** 3/12 3/13 3/19 3/20 4/23 4/25 5/3 5/6 5/13 5/14 5/16 5/22 6/1 6/5 7/19 11/8 12/20 16/15 20/19 22/13 22/17 23/1 23/8 23/21 24/15 24/23 25/2 25/16 25/17 25/17 25/19 27/15 27/17 27/18 29/11 30/25 32/4 32/17 32/22 33/7 34/4 34/6 60/11 60/12 62/7 62/13 62/15 62/18 62/24 63/13 63/14 64/7 64/8 64/12 64/19 64/21 65/7 65/8

## Z

**zero [3]** 8/12 8/20 26/2

**Pat Cuneo CSR 1600, Official Reporter**

**(13) we... - zero**